## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| K&D, LLC t/a CORK, | |
| *Plaintiff*, | |
| v. | Civil Action No. 17-731 (RJL) |
| TRUMP OLD POST OFFICE, LLC, | **ORAL ARGUMENT REQUESTED** |
| and | |
| DONALD J. TRUMP, *individually, and in his personal capacity*, | |
| *Defendants*. | |

## DEFENDANT DONALD J. TRUMP'S MOTION TO DISMISS

As authorized by Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for the reasons set forth in the accompanying Statement of Points and Authorities, Defendant Donald J. Trump respectfully moves to dismiss, with prejudice, the claim asserted against him in this lawsuit.

Dated: May 10, 2017

Respectfully submitted,

/s/ Jason R. Scherr

Eric W. Sitarchuk*
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
T. 215.963.5000
eric.sitarchuk@morganlewis.com

Allyson N. Ho (DC Bar No. 477589)
MORGAN LEWIS & BOCKIUS LLP
1717 Main Street, Suite 3200
Dallas, TX 75201
T. 214.466.4000
allyson.ho@morganlewis.com

Fred F. Fielding (DC Bar No. 99296)
Jason R. Scherr (DC Bar No. 466645)
Michael E. Kenneally (DC Bar No. 1025767)*
MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T. 202.739.3000
fred.fielding@morganlewis.com
jr.scherr@morganlewis.com
michael.kenneally@morganlewis.com

**Counsel for Defendant Donald J. Trump**

*U.S. District Court application pending*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| K&D, LLC t/a CORK, | |
| *Plaintiff*, | |
| v. | Civil Action No. 17-731 (RJL) |
| TRUMP OLD POST OFFICE, LLC, | **ORAL ARGUMENT REQUESTED** |
| and | |
| DONALD J. TRUMP, *individually, and in his personal capacity*, | |
| *Defendants*. | |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT DONALD J. TRUMP'S MOTION TO DISMISS**

**MORGAN, LEWIS & BOCKIUS LLP**

**TABLE OF CONTENTS**

**Page**

**INTRODUCTION**................................................................................................ 1

**COMPLAINT'S ALLEGATIONS**...................................................................... 2

**ARGUMENT** ..................................................................................................... 3

      I.     Federal Law Forecloses Plaintiff's Claim............................................. 3

           A.     Plaintiff's Claim Is Barred by Absolute Presidential Immunity. ............... 3

           B.     Plaintiff's Claim Is Preempted Under the Supremacy Clause of the United States Constitution. ....................................................................... 7

      II.    The Complaint Fails to State a Claim Under D.C. Law. ....................................... 9

**CONCLUSION** ................................................................................................... 13

# TABLE OF CITATIONS

**Page(s)**

CASES

*Al-Aulaqi v. Panetta*,
    35 F. Supp. 3d 56 (D.D.C. 2014) ........................................................................12

*B & W Mgmt., Inc. v. Tasea Inv. Co.*,
    451 A.2d 879 (D.C. 1982) ..................................................................................10

*Beckett v. Air Line Pilots Ass'n*,
    995 F.2d 280 (D.C. Cir. 1993) ............................................................................12

*Berryman v. Merit Prop. Mgmt., Inc.*,
    62 Cal. Rptr. 3d 177 (Cal. Ct. App. 2007) .........................................................12

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
    824 F.3d 1156 (9th Cir. 2016) ............................................................................12

*Camarda v. Certified Fin. Planner Bd. of Standards, Inc.*,
    — F. App'x —, 2016 WL 6915546 (D.C. Cir. Oct. 4, 2016) ..............................10

*Clinton v. Jones*,
    520 U.S. 681 (1997) ..........................................................................................5, 8

*CSY Liquidating Corp. v. Harris Tr. & Sav. Bank*,
    162 F.3d 929 (7th Cir. 1998) ..............................................................................11

*Doe v. Stephens*,
    851 F.2d 1457 (D.C. Cir. 1988) ............................................................................8

*Don't Tear It Down, Inc. v. Pa. Ave. Dev. Corp.*,
    642 F.2d 527 (D.C. Cir. 1980) ..............................................................................8

*\*Econ. Research Servs., Inc. v. Resolution Econ., LLC*,
    208 F. Supp. 3d 219 (D.D.C. 2016) ..................................................................9, 10

*Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*,
    944 A.2d 1055 (D.C. 2008) .............................................................................11, 12

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992) ..............................................................................................7

*Hancock v. Train*,
    426 U.S. 167 (1976) ..............................................................................................8

# TABLE OF CITATIONS
(continued)

**Page(s)**

*Jefferson Cty. v. Acker*,
    527 U.S. 423 (1999)......................................................................................8

*Johnson v. Maryland*,
    254 U.S. 51 (1920)....................................................................................8, 9

*McCulloch v. Maryland*,
    17 U.S. 316 (1819)......................................................................................8

*Mississippi v. Johnson*,
    71 U.S. 475 (1866)......................................................................................7

*Newdow v. Bush*,
    355 F. Supp. 2d 265 (D.D.C. 2005)........................................................5, 7

*Nixon v. Fitzgerald*,
    457 U.S. 731 (1982)............................................................................4, 5, 6, 7

*Ray v. Proxmire*,
    581 F.2d 998 (D.C. Cir. 1978)...............................................................9, 11

*Sperry v. Florida ex rel. Fla. Bar*,
    373 U.S. 379 (1963)......................................................................................9

*U.S. Term Limits, Inc. v. Thornton*,
    514 U.S. 779 (1995)......................................................................................9

*Wood v. Strickland*,
    420 U.S. 308 (1975)......................................................................................6

**CONSTITUTIONAL PROVISIONS**

*U.S. Const. art. VI, cl. 2 .......................................................................1, 3, 7, 8

**OTHER AUTHORITIES**

Erwin Chemerinsky, *Constitutional Law* § 4.4 (5th ed. 2015) .....................................6

*GSA Releases Statement on Old Post Office Lease*, GSA.gov (Mar. 23, 2017),
    https://www.gsa.gov/portal/content/157810 ...........................................12

2 *McCormick on Evidence* § 330 (7th ed. 2016) .........................................12

## INTRODUCTION

The premise of this lawsuit is that D.C. common law prohibits the President of the United States from owning an interest in a hotel, precisely *because* he is President of the United States. And the relief sought in this lawsuit is an order directing the President to rearrange his financial holdings or resign the Presidency.   Neither D.C. law nor the Constitution permits this unprecedented assertion of power over the President.  On the contrary, the Complaint faces three insuperable obstacles.

*First*, Supreme Court precedent establishes that the President is immune from claims based on the President's Office.  The Complaint here faults the President for specific acts he allegedly took in his official role.  It alleges that he will misuse his Office to benefit those who spend money at the hotel.  It claims that his inauguration rendered previously lawful conduct unlawful.  And in each instance, it seeks to impose personal liability premised on the fact that he is President.  The doctrine of absolute immunity forecloses liability in these circumstances.

*Second*, the Complaint's sole claim—for unfair competition—is preempted under the Supremacy Clause of the United States Constitution.  D.C. common law may not declare conduct unlawful *because* it is performed by the President, for that is a transparent attempt to directly regulate the Presidency and the requirements for holding that Office.  No state may regulate the President *as President*—and neither may the District.

*Third*, the Complaint fails to state a claim under D.C. unfair competition law.  As a result, the Court may dismiss the Complaint without reaching the two federal constitutional questions discussed above.   Under D.C. law, only certain enumerated acts can constitute unfair competition.  The Complaint fails to allege any such conduct.  Furthermore, binding authority rejects Plaintiff's theory that holding a position of political prominence or power can give rise to an unfair competition claim.  And courts also reject Plaintiff's theory that a supposed breach of a

1

contract can support an unfair competition claim if the claimant is neither a party to nor intended beneficiary of that contract.

The Complaint should be dismissed with prejudice.

## COMPLAINT'S ALLEGATIONS

Donald J. Trump was sworn in as President of the United States on January 20, 2017. Compl. ¶ 31.  Since that date—and precisely because of his new position as the head of the federal government—Plaintiff alleges that President Trump has been in violation of the law of the District of Columbia.  *See id.* ¶¶ 2, 31.

According to Plaintiff, President Trump's inauguration rendered unlawful his beneficial ownership interests in co-Defendant Trump Old Post Office LLC, which opened Trump International Hotel and its restaurant and bars (collectively, "the Hotel") in the District "[o]n or about September 12, 2016." *Id.* ¶¶ 12-13.

The Complaint alleges that Plaintiff, which operates a restaurant and bar in the District, has been competing for business with the Hotel since it opened.  *Id.* ¶¶ 3, 16.  Plaintiff does not complain about the President's ownership interest in the Hotel before January 2017.  *Id.* ¶ 31. Instead, upon the President's inauguration, the Complaint alleges, the President's ownership interest became an unlawful advantage for the Hotel that qualifies as unfair competition under D.C. law.  *Id.*

The Complaint relies on two theories of unfair competition liability, both premised on President Trump's holding Presidential Office.  The first theory is that, by taking Office, the President violated a provision in the lease between the federal government's General Services

2

Administration (GSA) and the Hotel.  *Id.* ¶¶ 2, 8-11, 35-39.[1]  The second theory broadly asserts that the Hotel possesses an unfair advantage in attracting business because of the President's visibility and political power.  *Id.* ¶¶ 2, 18-23, 29, 33-34, 40.  Under both theories, Plaintiff objects to specific alleged actions or anticipated actions by the President.  *See id.* ¶¶ 20, 29, 36.

The Complaint requests only injunctive relief, asserting that Plaintiff will not be able to prove its losses with sufficient specificity for a damages award.  *Id.* ¶ 41.  It asks the Court to order the extraordinary relief of (a) closing the Hotel for the duration of the Trump Presidency; (b) "promptly and fully" selling the Hotel to a buyer outside the Trump family; or (c) ordering President Trump to resign his position as the duly elected President of the United States.  *Id.* ¶ 42.

## ARGUMENT

Two distinct federal constitutional doctrines foreclose Plaintiff's unfair competition claim.  First, absolute presidential immunity precludes personal liability based on the President's Office.  Second, the Constitution's Supremacy Clause prohibits any local government, including the District of Columbia, from directly regulating any federal officer, and the President most of all.  But the Court need not take up any weighty constitutional questions to resolve this case, because Plaintiff's unfair competition claim also fails as a matter of well-settled D.C. tort law.

I.    **Federal Law Forecloses Plaintiff's Claim.**

A.    **Plaintiff's Claim Is Barred by Absolute Presidential Immunity.**

The doctrine of absolute presidential immunity protects the Office of the President of the United States by enabling the occupant of that Office to govern without threat of personal civil

---

[1] The provision states in relevant part that "[n]o . . . elected official of the Government of the United States . . . shall be admitted to any share or part of this Lease, or to any benefit that may arise therefrom."  Compl. ¶ 10.

liability stemming from his role as President.  As the Supreme Court explained in *Nixon v. Fitzgerald*, 457 U.S. 731 (1982), the doctrine ensures that the President can focus on carrying out the obligations of his Office without the distraction of virtually limitless litigation whose costs he would personally bear.  That doctrine forecloses this lawsuit.

In *Fitzgerald*, the Court explained that absolute presidential immunity is warranted by long historical tradition and functional considerations grounded in the President's "unique position in the constitutional scheme."  *Id.* at 749.  Historically, several of the leading lights at the Nation's founding (and in the decades thereafter) insisted that the President must be immune from constant judicial scrutiny so he can concentrate on the task of governing.  *Id.* at 750 n.31. The passage of time has only strengthened these concerns, as the President possesses "supervisory and policy responsibilities of utmost discretion and sensitivity" concerning "matters likely to arouse the most intense feeling."  *Id.* at 750, 752 (quotation marks omitted).  The President's prominence makes him "an easily identifiable target," yet the public interest demands that he be able "to deal fearlessly and impartially with the duties of his office."  *Id.* at 752, 753 (quotation marks omitted).  Presidential immunity guards against "this personal vulnerability" of the President, *id.* at 753, with respect not only to the "particular functions" the President performs, but also to his official responsibilities more generally, *id.* at 755-56.

Thus in *Fitzgerald*, the Supreme Court held President Nixon absolutely immune from potential liability arising from his firing of a government whistleblower.  *Id.* at 734-41, 756-57. Pointedly, the Supreme Court rejected the argument that President Nixon was not entitled to immunity because, according to the whistleblower, the President's decision to fire him violated a federal statute and thus fell outside the lawful bounds of the President's Office.  The Supreme Court determined that the whistleblower's firing fell "within the outer perimeter of [the

President's] authority"—namely, oversight of the executive branch.  *Id.* at 757.  For that reason, the President was absolutely immune from personal liability based on the firing.  *Id.*

This case implicates the same concerns that warranted absolute presidential immunity in *Fitzgerald*.[2]  Plaintiff is attempting to premise personal liability of President Trump on his occupancy of the Office of President of the United States.  The Complaint disavows "any legal basis to complain about" the President's interests in the Hotel before his inauguration.  Compl. ¶ 31.  Instead, it expressly alleges that the President's holdings are unlawful precisely *because* he is the President and *because* of what he does in that capacity.

To that end, the Complaint takes issue with numerous alleged acts plainly within the ambit of the President's official duties, just as in *Fitzgerald*.  These alleged acts include President Trump's conduct during the inaugural parade, and a discussion between the President and a member of a coordinate branch of government.  Compl. ¶ 20; *cf. Newdow v. Bush*, 355 F. Supp. 2d 265, 282 (D.D.C. 2005) ("The Inauguration . . . does not reasonably appear to be outside the President's official duties[.]").  And just as the plaintiff in *Fitzgerald* raised concerns about the President's overall supervision of the executive branch, 457 U.S. at 757, so too does the Complaint in this case question the President's overall supervision of the GSA, which entered into the lease with Defendants, Compl. ¶ 36; *see also id.* ¶¶ 7-9.  More generally, the

---

[2] The doctrine of absolute presidential immunity addressed in *Fitzgerald* is different from the temporary presidential immunity addressed in *Clinton v. Jones*, 520 U.S. 681 (1997).  In *Jones*, President Clinton argued that he was temporarily immune for the duration of his tenure in office from claims regarding conduct that predated his Presidency.  The doctrine of temporary presidential immunity addressed in *Jones* is not relevant here because this case does not involve any potential liability for pre-presidential conduct or conduct otherwise "unrelated to any of [the President's] official duties."  *Id.* at 686; *see* Compl. ¶ 31.  Even so, it is worth noting that the *Jones* decision was based on factual predictions that later proved wildly inaccurate—including that it was unlikely that the case would occupy much of President Clinton's time or that "a deluge of . . . litigation [would] ever engulf the Presidency."  520 U.S. at 702.  *But cf. id.* at 722 (Breyer, J., concurring in judgment) ("I am less sanguine.").

Complaint suggests that the Hotel's success is driven by an alleged (but largely unspecified) misuse of presidential power, *id.* ¶¶ 18, 20, and the President's supposed willingness to give "influence or advantage" to Hotel customers, *id.* ¶ 29.

Beyond these allegations, the Complaint's theory of liability is premised on the very fact that Donald J. Trump occupies the Office of President of the United States. *See id.* ¶ 31. That in itself is a sufficient basis for immunity given the concerns that justify the doctrine in the first place. Just as the President should not have to fear that individuals will hold him personally liable for what he ultimately decides to *do* as President, neither should he have to fear personal liability simply because he *is* the President. But that is what the Complaint seeks. It asserts that President Trump is personally liable for conduct that was admittedly not tortious when he engaged in it *before* he became President, but now allegedly is tortious *because* he is President. Compl. ¶ 31. The concerns animating absolute presidential immunity are at their apex in these circumstances.

It makes no difference that the relief sought in this case is an injunction rather than damages.[3] To be sure, the Supreme Court has said outside the presidential immunity context that a government official's "immunity from damages does not ordinarily bar equitable relief," *Wood v. Strickland*, 420 U.S. 308, 314 n.6 (1975). But the President is no ordinary government official. The Supreme "Court has held that a president may be sued *neither* for injunctions *nor* for money damages for conduct while in office." Erwin Chemerinsky, *Constitutional Law* § 4.4, at 378 (5th ed. 2015) (emphasis added). Out of respect for the singular nature of the office, the Court long ago explained that it "has no jurisdiction of a bill to enjoin the President in the

---

[3] The plaintiff in *Fitzgerald* sought damages for his allegedly unlawful termination. 457 U.S. at 739.

performance of his official duties." *Mississippi v. Johnson*, 71 U.S. 475, 501 (1866); *see also Franklin v. Massachusetts*, 505 U.S. 788, 802-03 (1992) (plurality opinion); *id.* at 827-28 (Scalia, J., concurring in part and in judgment). So far as Defendants are aware, "there has *never* been an injunction against the President issued and sustained by the federal courts." *Newdow*, 355 F. Supp. 2d at 282. This case should not be the first.

In fact, carving out injunctive relief from presidential immunity would be particularly insupportable here. Plaintiff seeks an injunction that would order the President of the United States to either resign the Office or, in lieu of that, comply with court commands regarding the President's investments. Such an injunction could result in enormous personal financial loss for the President—likely much greater than compensatory damages—whether the injunction entailed a forced fire sale or a complete cessation of operations. When injunctive relief is personally costly in this way, the President and his private resources are no less exposed to "personal vulnerability" than if the court ordered payment of a specific sum. *See Fitzgerald*, 457 U.S. at 753. It would make no sense to allow plaintiffs to circumvent absolute presidential immunity simply by requesting such an injunction.

## B.    Plaintiff's Claim Is Preempted Under the Supremacy Clause of the United States Constitution.

The Constitution makes federal law "the supreme Law of the Land," and "the Judges in every State [are] bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The Complaint fails to state a valid claim for relief because the relief Plaintiff seeks through D.C. unfair competition law would contravene federal supremacy.

The Constitution's Supremacy Clause ensures that states may not directly regulate the federal government or its instruments, instead reserving that power for the nation as a whole.

*See McCulloch v. Maryland*, 17 U.S. 316, 427-29 (1819); *Hancock v. Train*, 426 U.S. 167, 178-79 (1976).   And the Supremacy Clause does not permit the government of the District of Columbia to exercise any greater power to directly regulate the federal government than the states possess.   *See Doe v. Stephens*, 851 F.2d 1457, 1465 (D.C. Cir. 1988) (extending this line of Supreme Court precedent to District efforts to regulate the federal government); *Don't Tear It Down, Inc. v. Pa. Ave. Dev. Corp.*, 642 F.2d 527, 534-35 (D.C. Cir. 1980) (same).

As a consequence, neither states nor the District may impose rules that specifically target federal officers or employees and attempt to limit their abilities to carry out their federal duties. Instead, states and the District may enforce "*general* rules that might affect incidentally the mode of carrying out [a federal] employment—as, for instance, a statute or ordinance regulating the mode of turning at the corners of streets."   *Johnson v. Maryland*, 254 U.S. 51, 56 (1920) (emphasis added).   What they may not do, however, is require that federal officials "desist from performance until they satisfy a state officer" or otherwise "require[] qualifications in addition to those that the [federal] Government has pronounced sufficient."   *Id.* at 57; *see also Jefferson Cty. v. Acker*, 527 U.S. 423, 440-41 (1999) ("Alabama, of course, cannot make it unlawful to carry out the duties of a federal office without local permission[.]"); *cf. Jones*, 520 U.S. at 691 n.13 (noting potential Supremacy Clause concerns about state control over the President).

If this lawsuit succeeds, however, the District will have done precisely what the Supremacy Clause forbids—and with respect to not just any federal official, but the President himself.   The Complaint is transparent about this objective when it specifically requests injunctive relief directing the President to either resign or face the choice of shuttering or selling the Hotel.   Compl. ¶ 42.   That would be a profound infringement on federal supremacy, and much worse than local practices that the Supreme Court has already prohibited.   For example,

the Supreme Court has held that the state of Maryland may not restrict a federal postal employee's ability to complete his mail route.  *See Johnson*, 254 U.S. at 55-57.  The Supreme Court has similarly held that the state of Florida may not restrict a U.S. Patent Office practitioner's ability to prepare Patent Office applications in Florida without passing the state bar.  *Sperry v. Florida ex rel. Fla. Bar*, 373 U.S. 379, 385 (1963).  It should go without saying that the District may not condition the President's ability to serve in the Office to which he was elected on whether he arranges his personal finances in satisfaction of alleged requirements of D.C. common law.

Plaintiff's theory is especially hard to sustain after the Supreme Court's landmark decision in *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995).  There the Supreme Court struck down a state constitutional amendment imposing term limits on the state's Representatives and Senators.  *Id.* at 783.  While the Justices sharply disagreed over states' power to impose qualifications on their *own* members of Congress, they all agreed that states lack any power to add requirements to the Presidency.  *See id.* at 803-04; *id.* at 861 (Thomas, J., dissenting).  A victory for Plaintiff in this case would effectively overrule the Court's unanimous view in *U.S. Term Limits* by imposing a qualification upon the President—*i.e.*, that he must rearrange his investments or else resign the Office—that neither D.C. nor any state has the power to prescribe.

## II.    The Complaint Fails to State a Claim Under D.C. Law.

This Court, however, need not reach the constitutional immunity and supremacy questions presented here because the Complaint fails to state a claim under D.C. unfair competition law.  In the District, "unfair competition is a 'limited' tort given our society's encouragement of 'aggressive economic competition.'"  *Econ. Research Servs., Inc. v. Resolution Econ., LLC*, 208 F. Supp. 3d 219, 231 (D.D.C. 2016) (quoting *Ray v. Proxmire*, 581 F.2d 998, 1002 (D.C. Cir. 1978) (per curiam)).  As a result, unfair competition in the District "is

not defined in terms of specific elements, but by various acts that would constitute the tort if they resulted in damages." *Id.* (quotation marks omitted).  These enumerated acts are:

- defamation

- disparagement of a competitor's goods or business methods

- intimidation of customers or employees

- interference with access to the business

- threats of groundless suits

- commercial bribery

- inducing employees to sabotage

- false advertising, and

- deceptive packaging likely to mislead customers into believing goods are those of a competitor.

*Id.* (citing *B & W Mgmt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879, 881 n.3 (D.C. 1982)); *accord Camarda v. Certified Fin. Planner Bd. of Standards, Inc.*, — F. App'x —, 2016 WL 6915546, at *3 (D.C. Cir. Oct. 4, 2016) (per curiam).  Because the Complaint does not plead facts that come within any of these categories, Plaintiff's unfair competition claim fails under D.C. law for that reason alone.  *See*, *e.g.*, *Camarda*, 2016 WL 6915546, at *3.[4]

Moreover, even if Plaintiff were relieved of its obligation to allege a wrong within these enumerated categories, the Complaint would still fail as a matter of law because each theory of unfair competition on which it is premised has been expressly rejected by the courts.

---

[4] In addition to these enumerated acts, conduct might also qualify as unfair competition if a defendant's subjective motive was "solely to destroy a rival."  *Econ. Research*, 208 F. Supp. 3d at 231 (quotation marks omitted).  If a defendant has "legitimate business motivations," however, this potential avenue toward liability is closed.  *Id.*  Plaintiff's Complaint does not and cannot allege that Defendants acted with the purpose, let alone the sole purpose, of inflicting injury on plaintiff.

First, the theory that a political figure's prominence or power gives the Hotel an unfair advantage in attracting customers, Compl. ¶¶ 2, 18-23, 29, 33-34, 40, was rejected long ago by the D.C. Circuit in *Ray v. Proxmire*, 581 F.2d 998.   In that case, the operator of a tour and hospitality service sued a competitor who was married to a U.S. Senator, alleging that she and the Senator were engaged in unfair competition.   *Id.* at 999-1000.   Under the plaintiff's theory, the defendant-competitor had used "the prestige and contacts enjoyed by a senator's wife . . . to gain competitive advantages."   *Id.* at 1002.   Those alleged advantages included special access to the vice-presidential mansion, State Department entertaining rooms, and the Capitol—not to mention access to the families of government officials.   *Id.* at 1003.   The D.C. Circuit rejected that theory on the grounds that "use of one's status in society is not itself illegal" and "financial success does not become unlawful simply because it is aided by prominence."   *Id.*   Hence, even accepting the truth of Plaintiff's (false) allegations, as a matter of law they cannot support an unfair competition claim.

Second, the Complaint's theory that breach of the GSA lease constitutes unfair competition founders on the bedrock rule that strangers to a contract may not impose liability for the contract's breach unless they are intended beneficiaries.   *See, e.g.*, *Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1064 (D.C. 2008).   They may not do so directly, under a breach of contract theory, nor may they do so indirectly by re-casting such a claim in the guise of some tort, such as breach of trust, conversion, misappropriation, breach of fiduciary duty, fraud, non-disclosure or negligence.   *Id.* at 1070.   Courts have similarly held that such claims may not proceed as tortious interference claims.   *E.g.*, *CSY Liquidating Corp. v. Harris Tr. & Sav. Bank*, 162 F.3d 929, 932-33 (7th Cir. 1998).   Unfair competition is not a loophole, either—on the contrary, even courts applying a much more open-ended version of

11

unfair competition have rejected attempts to circumvent this rule using unfair competition, because that "would completely destroy the principle that a third party cannot sue on a contract to which he or she is merely an incidental beneficiary."  *E.g.*, *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1161 (9th Cir. 2016) (applying California law) (quotation marks omitted); *Berryman v. Merit Prop. Mgmt., Inc.*, 62 Cal. Rptr. 3d 177, 185 (Cal. Ct. App. 2007).

Further, it is clear that Plaintiff is not an intended beneficiary of the GSA lease.  It is a "basic contract principle that third party beneficiaries of a Government contract are generally assumed to be merely *incidental* beneficiaries, and may not enforce the contract absent clear intent to the contrary."  *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 288 (D.C. Cir. 1993); *Fort Lincoln*, 944 A.2d at 1065.  This clear-intent requirement makes eminent sense in the government contracting context; otherwise innumerable members of the public would have the ability to interfere in the government's contractual relationships by asserting a breach even when the government believes, correctly, that no breach has occurred—as in fact happened in this very case.  *See GSA Releases Statement on Old Post Office Lease*, GSA.gov (Mar. 23, 2017), https://www.gsa.gov/portal/content/157810 ("[T]he GSA contracting officer determined that the Trump Old Post Office, LLC is in full compliance with Section 37.19 of the lease.").[5]  Plaintiff bears the burden here of proving the required clear intent to confer intended beneficiary status, *Fort Lincoln*, 944 A.2d at 1065, and nothing in the Complaint comes close to doing so.  The Complaint should be dismissed for that reason, too.

---

[5] The GSA contracting officer's letter explaining this determination is subject to judicial notice as an official public record and so may be considered on a motion to dismiss.  *E.g.*, *Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 67-68 (D.D.C. 2014); *see also* 2 McCormick on Evidence § 330 (7th ed. 2016) ("[G]overnment . . . websites . . . are among the most commonly relied upon sources.").  To be clear, this Court does not *need* to take judicial notice of the GSA's determination to dismiss plaintiff's Complaint on any grounds discussed in this memorandum. Nor does the Court need to interpret the Lease's provisions to resolve the present motion.

**CONCLUSION**

For all these reasons, the Complaint should be dismissed with prejudice.


Dated: May 10, 2017                          Respectfully submitted,

                                             /s/ Jason R. Scherr

                                             Eric W. Sitarchuk*
                                             MORGAN LEWIS & BOCKIUS LLP
                                             1701 Market Street
                                             Philadelphia, PA 19103
                                             T. 215.963.5000
                                             eric.sitarchuk@morganlewis.com

                                             Allyson N. Ho (DC Bar No. 477589)
                                             MORGAN LEWIS & BOCKIUS LLP
                                             1717 Main Street, Suite 3200
                                             Dallas, TX 75201
                                             T. 214.466.4000
                                             allyson.ho@morganlewis.com

                                             Fred F. Fielding (DC Bar No. 99296)
                                             Jason R. Scherr (DC Bar No. 466645)
                                             Michael E. Kenneally (DC Bar No. 1025767)*
                                             MORGAN LEWIS & BOCKIUS LLP
                                             1111 Pennsylvania Avenue, NW
                                             Washington, DC 20004
                                             T. 202.739.3000
                                             fred.fielding@morganlewis.com
                                             jr.scherr@morganlewis.com
                                             michael.kenneally@morganlewis.com

                                             **Counsel for Defendant Donald J. Trump**

                                             *U.S. District Court application pending*

13

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on this 10th day of May, 2017, copies of the foregoing Defendant Donald J. Trump's Motion to Dismiss and Statement of Points and Authorities in Support of Defendant Donald J. Trump's Motion to Dismiss were served on counsel of record through this Court's ECF filing system.


/s/ Jason R. Scherr
Jason R. Scherr