## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| K&D, LLC t/a CORK,<br><br>    Plaintiff,<br><br> v.<br><br>TRUMP OLD POST OFFICE LLC; and<br>DONALD J. TRUMP,<br><br>    Defendants. | Case No. 1:17-cv-00731-RJL<br><br>Hon. Richard J. Leon<br><br><br>**ORAL ARGUMENT REQUESTED** |

### DEFENDANT TRUMP OLD POST OFFICE LLC'S MOTION TO DISMISS

Defendant Trump Old Post Office, LLC ("OPO") respectfully moves this Court to dismiss Plaintiff K&D, LLC t/a Cork's Complaint against OPO. In support of this Motion, OPO files its Statement of Points and Authorities in Support contemporaneously herewith and also expressly adopts and incorporates the arguments made by Co-Defendant President Donald J. Trump ("President Trump") in his Motion to Dismiss and Statement of Points and Authorities in Support.

WHEREFORE, for all of the reasons set forth in OPO's and President Trump's Motions to Dismiss and Statements of Points and Authorities in Support, OPO respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice. A proposed order is attached to this Motion for the Court's consideration.

Respectfully submitted, this the 10th day of May, 2017.

Respectfully submitted,

*/s/ Rebecca Woods*

Rebecca Woods (D.C. Bar No. 468495)
rwoods@seyfarth.com
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, DC  20004
Telephone:  (202) 463-2400
Facsimile:  (202) 641-9200

Esther Slater McDonald (D.C. Bar No. 495034)
emcdonald@seyfarth.com
Stephanie A. Stewart (Georgia Bar No. 483581,
*pro hac vice application to be submitted*)
sastewart@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, Georgia 30309
Telephone:  (404) 885-1500
Facsimile:   (404) 892-7056

*Counsel for Defendant Trump Old Post Office,
LLC*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| K&D, LLC t/a CORK, | |
| Plaintiff, | |
| v. | Case No. 1:17-cv-00731-RJL |
| TRUMP OLD POST OFFICE LLC; and DONALD J. TRUMP, | Hon. Richard J. Leon |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

## STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
## TRUMP OLD POST OFFICE LLC'S MOTION TO DISMISS

# TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 3

    1.    OPO's Lease With the GSA ..................................................................................... 3

    2.    The GSA Determined that OPO Is in Full Compliance with the Lease ................. 4

    3.    The Complaint's Allegations ................................................................................... 6

LEGAL STANDARD ............................................................................................................... 7

ARGUMENT .......................................................................................................................... 7

    I.    The Conduct Complained of Is Not an "Unlawful Act" Under the District of Columbia's Narrow Unfair Competition Law. ........................... 8

    II.    Cork Cannot Sue in Tort to Enforce the GSA Lease. ............................... 10

        A.    Cork Is Not a Party to the GSA Lease. ......................................... 10

        B.    Cork Is Not an Intended Third-Party Beneficiary of the GSA Lease. ................................................................................. 11

        C.    Cork Cannot Convert a Breach of Contract Claim Into a Tort Claim. .................................................................................. 13

    III.    Competition Aided by Prominence Is Not Legally Cognizable as Unfair Competition Under D.C. Law. ....................................................... 14

CONCLUSION ...................................................................................................................... 16

38958706v.4

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abhe & Svoboda, Inc. v. Chao,*
 508 F.3d 1052 (D.C. Cir. 2007) ............................................................................7

*Al-Aulaqi v. Panetta,*
 35 F. Supp. 3d 56 (D.D.C. 2014) .........................................................................4

*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) .............................................................................................7

*B & W Mgmt., Inc. v. Tasea Inv. Co.,*
 451 A.2d 879 (D.C. 1982) ................................................................................9, 10

*Beckett v. Air Line Pilots Ass'n,*
 995 F.2d 280 (D.C. Cir. 1993) ...........................................................................12

*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007) .............................................................................................7

*Bowhead Information Tech. v. Catapult Tech.,*
 377 F. Supp. 2d 166 (D.D.C. 2005) ...............................................................11, 12

*Bus. Equip. Ctr., Ltd. v. DeJur-Amsco Corp.,*
 465 F. Supp. 775 (D.D.C. 1978) ..........................................................................8

*Camarda v. Certified Fin. Planner Bd. of Standards, Inc.,*
 — F. App'x —, No. 15-7080, 2016 WL 6915546 (D.C. Cir. Oct. 4, 2016) ..........................9

*DAG Enterprises, Inc. v. Exxon Mobil Corp.,*
 No. CV 00-0182 (CKK), 2001 WL 34778782 (D.D.C. Sept. 30, 2001) .................................9

*E.E.O.C v. St. Francis Xavier Parochial Sch.,*
 117 F.3d 621 (D.C. Cir. 1997) .............................................................................3

*Econ. Research Servs., Inc. v. Resolution Econ., LLC,*
 — F. Supp. 3d —, No. CV 15-1282 (RJL), 2016 WL 5335666 (D.D.C. Sept.
 22, 2016) (Leon, J.) ..........................................................................................8, 10

*Edwards v. Aurora Loan Servs., LLC,*
 791 F. Supp. 2d 144 (D.D.C. 2011) ....................................................................12

*Furash & Co., Inc. v. McClave,*
 130 F. Supp. 2d 48 (D.D.C. 2001) .......................................................................8

*Jahanbein v. The Ndidi Condo. Unit Owners Ass'n, Inc.,*
    85 A.3d 824 (D.C. 2014) ..................................................................................11

*Kaempe v. Myers,*
    367 F.3d 958 (D.C. Cir. 2004) .........................................................................13

*Kowal v. MCI Commc'ns Corp.,*
    16 F.3d 1271 (D.C. Cir. 1994) ............................................................................7

*LanceSoft, Inc. v. U.S. Citizenship & Immigration Servs.,*
    755 F. Supp. 2d 188 (D.D.C. 2010) ....................................................................7

*Marshall Cnty. Health Care Auth. v. Shalala,*
    988 F.2d 1221 (D.C. Cir. 1993) ..........................................................................7

*Mintz v. FDIC,*
    729 F.Supp.2d 276 (D.D.C. 2010) ......................................................................7

*Peart v. Latham & Watkins,*
    985 F. Supp. 2d 72 (D.D.C. 2013) ......................................................................4

*Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.,*
    998 F.2d 1192 (3rd Cir. 1993) ............................................................................4

*\*Ray v. Proxmire,*
    581 F.2d 998 (D.C. Cir. 1978) ................................................2, 8, 9, 14, 15, 16

*Richards v. Duke Univ.,*
    480 F. Supp. 2d 222 (D.D.C. 2007) ....................................................................7

*Rodriguez v. Lab. Corp. of AmericaHoldings,*
    13 F. Supp. 3d 121 (D.D.C. 2014) ....................................................................13

*Scanwell Labs., Inc. v. Thomas,*
    521 F.2d 941 (D.C. Cir. 1975) ............................................................................8

*Unidisco, Inc. v. Schattner,*
    824 F.2d 965 (Fed. Cir. 1987) ............................................................................8

*Ward v. D.C. Dep't of Youth Rehab. Servs.,*
    768 F. Supp. 2d 117 (D.D.C. 2011) ....................................................................3

*Washington Canoe Club v. D.C. Zoning Comm'n,*
    889 A.2d 995 (D.C. 2005) ................................................................................10

**Other Authorities**

Callmann on Unfair Competition, Trademarks and Monopolies § 16:46, Standing
    to Sue (4th ed., 2014) .......................................................................................11

38958706v.4

Fed. R. Civ. P. 12(b)(6) ................................................................................................3, 7

GSA's website at https://www.gsa.gov/portal/content/305477 .......................................3

http://www.endtrumphotelunfaircompetition.com ...........................................................6

http://www.press.org/events/press-conference-announce-filing-lawsuit-against-
    donald-j- trump-trump-old-post-office-ll..................................................................6

https://www.gsa.gov/portal/content/305477 ....................................................................4

U.S. General Services Administration, Public Buildings Service, National Capital
    Region, available at: https://www.fbo.gov/spg/GSA/PBS/WPZ/NR-
    73002105/listing.html .............................................................................................3

\* Authorities chiefly relied upon are marked with an asterisk.

Defendant Trump Old Post Office LLC ("OPO"), which operates the Trump International Hotel Washington, D.C. (the "Hotel"), submits this statement of points and authorities in support of its motion to dismiss the complaint of Plaintiff K&D, LLC t/a Cork ("Cork" or "Plaintiff") with prejudice for failure to state a claim.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Rather than seeking redress of a genuine commercial dispute, Plaintiff Cork, owner of a Washington, D.C. wine bar, attempts to use this Court as an instrument to obtain publicity and advance a political agenda. These motivations are apparent in the press conference Cork's principals and counsel held at the National Press Club to announce the suit, and on the face of the complaint which asks this Court to order the duly-elected President of the United States to *resign* as President because Cork speculates it may lose business.

Cork's complaint is legally meritless and must be dismissed. Cork alleges a single claim for unfair competition under the common law of the District of Columbia. Cork's principal allegation is that, by Donald J. Trump becoming President, OPO breached a provision in its ground lease with the U.S. General Services Administration ("GSA") for the Old Post Office building, and as a result, somehow gained "unfair" competitive advantage against Cork's wine bar. The complaint, however, fails to state a valid claim upon which relief may be granted for numerous reasons, including the following:

*First*, Cork fails to allege that OPO has engaged in any specific unlawful act that could support a legally-cognizable claim for unfair competition under District of Columbia law. The tort of unfair competition is a narrow one, and District of Columbia law prescribes only limited grounds upon which the claim may rest. Each of those grounds requires an unlawful act. A

mere breach of a commercial lease restriction (as Cork falsely alleges) has never been found to constitute an unlawful act under the tort of unfair competition.

*Second*, even assuming, *arguendo*, OPO was in breach of the lease (and it is not), Cork's claim fails because it lacks standing to insert itself into the contractual relations between OPO and the GSA. The GSA has conclusively determined that OPO has not breached the lease and issued an estoppel certificate confirming that OPO is in full compliance. A lease restriction, such as the provision in the GSA lease, inures only to the benefit of the party to whom the obligation runs. Thus, even if OPO had breached the GSA lease (and it did not), it would not be answerable for such breach to anyone but the GSA. Alleged "competitors," such as Cork, who are not party to the lease, have no right to enforce a lease restriction even if they are incidentally beneficiaries of the restriction. And, in any event, a stranger to a contract cannot bring a tort claim to address an alleged breach of contract.

*Finally*, as Cork cannot rely on the GSA lease, its claim boils down to nothing more than a mere gripe that it is somehow "unfair" (in the popular, not legal, sense of the word) for OPO to gain the business of customers who may voluntarily patronize the Hotel because of President Trump's name, prominence, and office. The law in the District of Columbia is clear that such allegation is subject to dismissal. As the U.S. Court of Appeals for the D.C. Circuit has recognized, "financial success does not become unlawful simply because it is aided by prominence; nor could it be, without locking the famous out of the economy." *Ray v. Proxmire*, 581 F.2d 998, 1003 (D.C. Cir. 1978). A business's use of an individual's status in society, fame, or even ability to "open doors" simply does not constitute unfair competition. *Id*. Therefore, Cork's allegation that it is "unfair" for customers to patronize the Hotel because of the

2

President's position or because the Hotel bears the name "Trump" is not actionable, and the complaint must be dismissed for failure to state a claim.

In sum, Cork fails to state a valid claim against OPO. Accordingly, OPO respectfully requests that the Court dismiss the complaint in its entirety.

## FACTUAL BACKGROUND

### 1.    OPO's Lease With the GSA

This lawsuit concerns OPO's lease of the historic property located at 1100 Pennsylvania Avenue NW, Washington, D.C., more commonly known as the Old Post Office Building. *See* Compl., ¶ 7.

In March 2011, the U.S. General Services Administration issued a Request for Proposals seeking a developer to restore, rehabilitate, preserve, manage, and operate the Old Post Office building.[1] OPO submitted a bid to redevelop the property as a luxury hotel. In February 2012, the GSA selected OPO as the preferred developer for the project. *See* Compl., ¶ 7.

On August 5, 2013, OPO entered into a 60-year ground lease with the GSA for the Old Post Office building, the operative lease.[2] *See* Declaration of Rebecca Woods ("Woods Decl."), Exh. A, pp. 1, 3; *see* Compl., ¶ 9.

---

[1] Request for Proposals, Redevelopment of Old Post Office, Washington, D.C., March 24, 2011, U.S. General Services Administration, Public Buildings Service, National Capital Region, available at: https://www.fbo.gov/spg/GSA/PBS/WPZ/NR-73002105/listing.html.

[2] Relevant excerpts of the August 5, 2013 lease agreement ("GSA lease") are attached as Exhibit "A" to the Declaration of Rebecca Woods. The entire GSA lease is available on the GSA's website at https://www.gsa.gov/portal/content/305477. Under Rule 12(b)(6), the Court may consider documents incorporated by reference in the complaint or upon which the complaint necessarily relies even if the document is not produced by the plaintiff but by the defendant in a motion to dismiss. *See Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011); *see also E.E.O.C v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997) (court can consider documents referenced in complaint on motion to dismiss). The Court may consider such documents without converting the motion to dismiss into one for
*(footnote continued on next page)*

On July 23, 2014, OPO broke ground on redevelopment of the Old Post Office building. In September 2016, two years ahead of schedule, it opened Trump International Hotel Washington, D.C. to the public.[3]  *See* Woods Decl., Exh. B, p. 1; Compl., ¶ 12.

**2.       The GSA Determined that OPO Is in Full Compliance with the Lease**

On January 20, 2017, Donald J. Trump was inaugurated as President of the United States and officially became the 45th U.S. President. Compl., ¶ 31.

Following President Trump's assumption of office, and prompted by questions raised by outside groups, the GSA contacted OPO by letter and requested its position on the potential application of a provision in the GSA lease, Section 37.19.  Woods Decl., Exh. B, GSA's February 10, 2017 letter to OPO attached as exhibit 1.A.  Section 37.19 of the lease provides:

> No member or delegate to Congress, or elected official of the Government of the United States or the Government of the District of Columbia, shall be admitted to any share or part of this Lease, or to any benefit that may arise therefrom;

---

*(footnote continued from previous page)*
summary judgment.  *See Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 67-68 (D.D.C. 2014).  Cork incorporates the GSA lease by reference as a central document to its claim.  *See* Compl., ¶¶ 2, 9-11, 35-42.  Thus, this Court may consider the GSA lease in ruling on this motion to dismiss.

[3] Additional facts regarding the GSA lease are contained in a March 23, 2017 GSA determination letter ("March 23 Letter"), attached as Exhibit "B" to the Declaration of Rebecca Woods.  Again, the Court may consider relevant, judicially noticeable documents, including letters from government agencies, at the motion to dismiss stage without converting the motion to one for summary judgment.  *See Al-Aulaqi*, 35 F. Supp. 3d at 68 (taking judicial notice of letter from Attorney General in ruling on motion to dismiss); *Peart v. Latham & Watkins*, 985 F. Supp. 2d 72, 81 (D.D.C. 2013) (taking judicial notice of letters from D.C. Office of Human Rights in ruling on motion to dismiss).  Further, "judicial notice may be taken of public records and government documents available from reliable sources." *Al-Aulaqi*, 35 F. Supp. 3d at 67. The March 23 Letter—an official document of a government agency—was provided to OPO by the GSA—a reliable source—and is available to the public on the GSA's FOIA website at https://www.gsa.gov/portal/content/305477.  Thus, the Court may appropriately take judicial notice of the March 23 Letter.  *See Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1197 (3rd Cir. 1993) ("Courts have defined a public record, for purposes of what properly may be considered on a motion to dismiss, to include … letter decisions of government agencies.").  OPO has attached the redacted FOIA version of the March 23 Letter, available to the public on the GSA's website.

provided, however, that this provision shall not be construed as extending to any Person who may be a shareholder or other beneficial owner of any publicly held corporation or other entity, if this Lease is for the general benefit of such corporation or other entity.

Woods Decl., Exh. A, p. 7.

In response, OPO outlined for the GSA the compelling reasons, based upon well-settled legal principles, why it is in full compliance with Section 37.19. *See generally* Woods Decl., Exh. B, OPO's February 17, 2017 letter to GSA attached as exhibit 1.B and OPO's March 20, 2017 letter to GSA attached as exhibit 1.C.[4]

On March 23, 2017, after conducting a detailed review, the GSA informed OPO by letter of its conclusion that OPO has not breached its lease and is in "full compliance." Woods Decl., Exh. B, pp. 1, 8. The GSA's Contracting Officer stated: "Based on my review of the Lease, discussions with Tenant, and documents submitted by Tenant, I have determined that Tenant is in *full compliance* with Section 37.19 and, accordingly, the Lease is *valid and in full force and effect*." *Id.*, p. 1 (emphases added). The GSA also issued OPO a Landlord's Estoppel Certificate, which states the following: "With respect to Section 37.19 of the Lease, Landlord hereby finds that Tenant is in *full compliance* with Section 37.19 and, accordingly, the Lease is valid and in full force and effect as of the date hereof. ... Landlord acknowledges that this Estoppel Certificate and the statements therein may be *conclusively relied upon by Tenant*." *Id.*, Estoppel Certificate attached as exhibit 1 (emphases added). Thus, the GSA and OPO have

---

[4] The restriction in Section 37.19 does not apply because its plain terms refer to a future event—the "admitting" of an elected official to the lease. Woods Decl., Exh. B, OPO's February 17, 2017 and March 20, 2017 letters to GSA. Donald J. Trump was a private citizen when "admitted" to the lease and was never "admitted" as President; he was already a beneficial owner of the tenant OPO. *See id.* In addition, the restriction contains an exception for any person who is a beneficial owner of an entity where the lease is for the general benefit of such entity. This exception clearly applies to President Trump who, at most, is a beneficial owner of OPO. *See id.*

mutually and conclusively determined that Donald J. Trump's assumption of the Office of the President does not constitute a breach of lease Section 37.19. *Id.* at pp. 1, 8.

### 3.    The Complaint's Allegations

Plaintiff Cork operates a restaurant and bar in Washington, D.C. called Cork Wine Bar. Compl., ¶ 3. Cork filed this action on March 8, 2017 in the Superior Court for the District of Columbia, naming as defendants both OPO and President Donald J. Trump.[5] Defendants removed this action to U.S. District Court. Dkt. Nos. No. 1, 2. The complaint alleges a single claim for unfair competition under District of Columbia common law. *See* Compl., ¶¶ 1, 30-42.

The specific nature of the alleged "unfair competition" set forth in Cork's complaint is vague. Charitably read, however, the complaint appears to allege two theories. First, Cork appears to claim that, by Donald J. Trump becoming U.S. President, OPO breached Section 37.19 of the GSA lease, thereby gaining commercial advantage over the Hotel's competitors, and creating "unfair competition." *See* Compl., ¶¶ 2, 31-35. Second, Cork appears to allege that more customers are choosing to patronize the Hotel because of President Trump's office and prominence and customers' "perception" that doing so would be somehow advantageous in any dealings with the U.S. government, which Cork vaguely speculates may give OPO's food and beverage venues an "unfair" advantage over Cork. *See* Compl., ¶¶ 18-19, 22-23, 29. Under this theory, Cork appears to allege it is "unfair" for OPO to even operate a hotel bearing the name "Trump" while Mr. Trump is President. *See* Compl., ¶¶ 20(c), 34.

---

[5] Revealing of Cork's political motivation for this lawsuit, Cork's principals publicized the lawsuit at a press conference before reporters at the National Press Club on March 9, 2017. *See* http://www.press.org/events/press-conference-announce-filing-lawsuit-against-donald-j-trump-trump-old-post-office-llc. Cork and its counsel have also sought publicity for the lawsuit through a website, http://www.endtrumphotelunfaircompetition.com. Such conduct further demonstrates that this case is about politics and publicity, not a legitimate commercial dispute.

6

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint that fails to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[C]onclusory statements" and "naked assertion[s]" are properly ignored in this analysis. *Id.* While the court accepts well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Id.* at 678-79; *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nor must it "accept asserted inferences or conclusory allegations that are unsupported by facts set forth in plaintiff's complaint." *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 235 (D.D.C. 2007); *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1225 (D.C. Cir. 1993). Factual allegations must raise more than a speculative right to relief. *Twombly*, 550 U.S. at 555-56.

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice. *See Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007); *LanceSoft, Inc. v. U.S. Citizenship & Immigration Servs.*, 755 F. Supp. 2d 188, 191-92 (D.D.C. 2010); *Mintz v. FDIC*, 729 F.Supp.2d 276, 277 (D.D.C. 2010) (judicial notice of statement contained in an SEC filing).

## ARGUMENT

Cork's complaint purports to state a single claim for unfair competition under the District of Columbia's common law. Compl., ¶¶ 1, 40. The complaint, however, fails to state a valid claim upon which relief may be granted and must be dismissed under Rule 12(b)(6).

7

I.     **The Conduct Complained of Is Not an "Unlawful Act" Under the District of Columbia's Narrow Unfair Competition Law.**

Cork's allegation that OPO breached Section 37.19 of the GSA lease by President Trump assuming the Office of the President cannot constitute a legally-cognizable basis for an unfair competition claim under District of Columbia law.

To encourage aggressive economic competition, District of Columbia law provides that the tort of unfair competition is narrow and "limited in scope." *See Econ. Research Servs., Inc. v. Resolution Econ., LLC*, — F. Supp. 3d —, No. CV 15-1282 (RJL), 2016 WL 5335666, at *6 (D.D.C. Sept. 22, 2016) (Leon, J.) (noting that "unfair competition is a 'limited' tort given our society's encouragement of 'aggressive economic competition.'"); *Ray v. Proxmire*, 581 F.2d 998, 1002 (D.C. Cir. 1978) (unfair competition is a "limited" tort in D.C.); *see also Scanwell Labs., Inc. v. Thomas*, 521 F.2d 941, 949 (D.C. Cir. 1975) (recognizing that tort of unfair competition in D.C. must be "limited in scope in a free market economy based on free and open competition for business").

Accordingly, unfair competition claims under the common law of the District of Columbia have been limited to three categories: (1) passing off one's goods as those of another, (2) engaging in activities designed solely to destroy a rival, and (3) using methods themselves independently illegal. *Ray v. Proxmire*, 581 F.2d at 1002; *see also Unidisco, Inc. v. Schattner*, 824 F.2d 965, 968 (Fed. Cir. 1987). The tort is not defined in terms of specific elements, but by the description of various recognized *unlawful acts* that would constitute the tort if they resulted in damage. *Bus. Equip. Ctr., Ltd. v. DeJur-Amsco Corp.*, 465 F. Supp. 775, 788 (D.D.C. 1978); *Furash & Co., Inc. v. McClave*, 130 F. Supp. 2d 48, 57 (D.D.C. 2001). The recognized unlawful acts that may support a claim for unfair competition at common law in the District of Columbia are the following: "defamation, disparagement of a competitor's goods or business methods,

8

intimidation of customers or employees, interference with access to the business, threats of groundless suits, commercial bribery, inducing employees to sabotage, [and] false advertising or deceptive packaging likely to mislead customers into believing goods are those of a competitor." *B & W Mgmt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879, 881 n.3 (D.C. 1982) (citing William Prosser, Handbook of the Law of Torts 956–57 (4th ed. 1971)); *Camarda v. Certified Fin. Planner Bd. of Standards, Inc.*, — F. App'x —, No. 15-7080, 2016 WL 6915546, at *3 (D.C. Cir. Oct. 4, 2016).

Here, Cork's claim fails because the allegation that OPO breached a commercial lease restriction does not conceivably fit within *any* of the unlawful acts recognized as actionable under D.C. law. *See Ray v. Proxmire*, 581 at 1002. None of Cork's allegations regarding OPO's supposed breach of Section 37.19 constitute a recognized wrongful business practice. Indeed, no authority in D.C. holds that breaching a commercial lease, or continuing to do business after such breach, can form the basis for a claim for relief for unfair competition.

Further, as outlined above, an unfair competition claim must be tethered to some tortious conduct, for example defaming a competitor's business or infringing on its intellectual property. But here, Cork's complaint contains no allegation that OPO engaged in specific unlawful conduct, such as defamation, disparagement, infringement, intimidation, bribery, sabotage, false advertising, or any similar kind of tort or crime. Rather, what emerges from the complaint is a picture of regular competition between businesses, in which Cork speculates it may lose customers to a newer, more popular venue. An alleged breach of the GSA lease simply does not rise to the level of actionable, tortious unfair competition.

Where, as here, a plaintiff fails to allege a defendant has engaged in one of the unlawful acts recognized under D.C. unfair competition law, the claim is not legally cognizable and must be dismissed at the pleading stage. *See, e.g., DAG Enterprises, Inc. v. Exxon Mobil Corp.*, No.

38958706v.4

CV 00-0182 (CKK), 2001 WL 34778782, at *3 (D.D.C. Sept. 30, 2001) (dismissing claim because "[a] refusal to deal is not of these acts" constituting unfair competition under D.C. law); *B & W Mgmt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879, 881 n.3 (D.C. 1982) (dismissing unfair competition claim alleging that defendant unfairly used its land in a way that interfered with a competitor's business because such allegation does not constitute a recognized act of unfair competition under D.C. law); *Econ. Research Servs., Inc. v. Resolution Econ., LLC*, — F. Supp. 3d —, No. CV 15-1282 (RJL), 2016 WL 5335666, at *6 (D.D.C. Sept. 22, 2016) (dismissing complaint where plaintiff made no "allegations of one or more of the recognized acts [of unfair competition]").

Accordingly, the Court should dismiss Cork's complaint for failure to state a claim because Cork's allegation that OPO breached the GSA lease cannot support an unfair competition claim under District of Columbia law.

## II.      Cork Cannot Sue in Tort to Enforce the GSA Lease.

Assuming, *arguendo*, that a breach of a commercial lease could support a legally-cognizable claim for unfair competition in the District of Columbia (which it cannot), and assuming OPO *did* breach the GSA lease (which the GSA determined it did not), Cork's unfair competition claim nonetheless fails for the independent reasons that Cork has no right or standing to assert such a claim because it is not a party to, or an intended beneficiary of, the GSA lease.  Further still, even if Cork had standing to make a claim, it would be for breach of contract, not a tort claim.

### A.      Cork Is Not a Party to the GSA Lease.

It is a well-founded principal of contract law that strangers to a contract generally cannot sue to enforce the contract's terms. *See Washington Canoe Club v. D.C. Zoning Comm'n*, 889 A.2d 995, 1002, n.5 (D.C. 2005) (citing *Marranzano v. Riggs Nat'l Bank of Washington D.C.*,

10

184 F.2d 349, 350 (D.C. Cir. 1950)).  Moreover, where a contract between two parties—such as a commercial lease—contains a restriction on one of the parties, "the restriction imposed inures only to the benefit of the party *to whom the obligation runs*.  Even though a covenantor may derive a competitive advantage by breach, he will not be answerable for failure to observe his contractual commitment to anyone but *the party to whom he is directly obligated*."  Callmann on Unfair Competition, Trademarks and Monopolies § 16:46, Standing to Sue (4th ed., 2014) (emphasis added).

Here, only OPO and the GSA—*not* Cork—are parties to the lease.  The restrictions imposed by Section 37.19 of the lease inure to the benefit of the GSA and no other entity.  Thus, if OPO had breached the GSA lease (which it did not), it is not answerable for such breach to anyone but the GSA.  Alleged "competitors," such as Cork, who are not party to the lease, have no right to enforce a lease restriction even if they are incidentally vicarious beneficiaries of the restriction. *See* Callmann, § 16:46.

### B.    Cork Is Not an Intended Third-Party Beneficiary of the GSA Lease.

In addition, Cork's allegation regarding breach of the GSA lease fails because Cork is not an intended third-party beneficiary of the lease.

In order for a plaintiff to sue for breach of a contract to which it is not a party, the plaintiff must demonstrate that it is an intended third-party beneficiary, as evidenced by the intent of the contract. *See Bowhead Information Tech. v. Catapult Tech.*, 377 F. Supp. 2d 166, 171 (D.D.C. 2005).  Courts must read the contract "as a whole" to determine whether the third party's benefit under the contract is intended or only incidental.  *See Jahanbein v. The Ndidi Condo. Unit Owners Ass'n, Inc.*, 85 A.3d 824, 831 (D.C. 2014) (citing *Western Union Tel. Co. v. Massman Const. Co.*, 402 A.2d 1275, 1277 (D.C.1979)).  Further, "the parties to a contract must directly and unequivocally intend to benefit a third-party to be considered an intended

11

beneficiary … [and t]he parties' mere knowledge or awareness that a contract may benefit a third-party is insufficient, without more, to demonstrate an intent to confer a benefit on the third party." *Bowhead Information Tech.*, 377 F. Supp. 2d at 171 (internal citations omitted).

Here, Cork unquestionably is not an intended third-party beneficiary of the GSA lease. *First*, far from evidencing a "direct[] and unequivocal[]" intent to benefit Cork or protect it from competition, the GSA lease is designed to do the opposite—it *requires* OPO to operate a luxury hotel and restaurant in *direct competition* with any other similar venues in the District of Columbia.[6] A lease that contemplates, and indeed, expressly creates increased competition among local restaurant venues cannot be "directly and unequivocally" designed for the benefit of an alleged restaurant competitor such as Cork.

*Second*, it is a "basic contract principle that third party beneficiaries of a Government contract are generally assumed to be merely *incidental* beneficiaries, and may not enforce the contract absent clear intent to the contrary." *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 288 (D.C. Cir. 1993). "Government contracts by their nature benefit the public, but only in rare circumstances will courts deem individual members of the public to be intended beneficiaries empowered to enforce those contracts in court." *Edwards v. Aurora Loan Servs., LLC*, 791 F. Supp. 2d 144, 151 (D.D.C. 2011) (dismissing complaint because plaintiff could not show precise language in a government contract demonstrating a "clear intent" to allow third parties to sue for breach of the contract).

---

[6] *See* Woods Decl., Exh. A, p. 2, GSA lease at § 1.1 defining "Hotel" as a hotel that "shall include . . . at least one signature restaurant and may include . . . restaurants, specialty retail, various food service, beverage service and retail venues"; *see also id.* at § 6.4 (requiring OPO to continuously occupy and operate the premises as a first-class hotel).

Here, Cork cannot show any provision in the GSA lease demonstrating a clear intent to permit Cork to sue in court to enforce the lease. Rather, Cork is (at best) an indirect beneficiary who benefits, if at all, on a merely incidental basis. Cork therefore has no right to enforce the lease.

In short, because OPO and the GSA did not enter into the GSA lease for Cork's benefit, Cork has no right to enforce the lease and has not stated a valid claim for relief.

### C.   Cork Cannot Convert a Breach of Contract Claim Into a Tort Claim.

Further, even assuming, *arguendo*, Cork was an intended third-party beneficiary of the GSA lease (and it was not), its claim against OPO would be one for breach of contract—not the tort of unfair competition. Counsel for OPO is aware of no case law that permits a plaintiff to "recast" a breach of contract claim into the tort of unfair competition. Indeed, to allow Cork's unfair competition claim to proceed would require this Court to invent a new tort theory of liability, not recognized under D.C. law, that permits businesses to sue in tort to enforce the terms of contracts to which they are not party—even where the parties themselves agree there has been no breach. This would invite a tidal wave of litigation as businesses find opportunities to meddle in their competitors' affairs by claiming their competitors have not lived up to their various contractual obligations.[7] Such a claim is not founded under the law.

---

[7] This is precisely what Cork attempts to do. The GSA and OPO have conclusively determined there has been no breach of the lease between them. Woods Decl., Exh. B, pp. 1, 8, exhibit 1. This fact alone should foreclose Cork's unfair competition claim. The GSA's determination is properly subject to judicial notice. While a court is ordinarily required to accept a plaintiff's well-pled factual allegations as true at the pleading stage, the Court need not "accept as true the complaint's factual allegations insofar as they contradict … matters subject to judicial notice." *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) (citation omitted) (affirming dismissal of tort claim where complaint's allegations were contradicted by judicially noticeable documents); *see also Rodriguez v. Lab. Corp. of AmericaHoldings*, 13 F. Supp. 3d 121, 127, 133 (D.D.C. 2014) (dismissing claims where plaintiff's allegations of breach of duty were *(footnote continued on next page)*

38958706v.4

III.    **Competition Aided by Prominence Is Not Legally Cognizable as Unfair Competition Under D.C. Law.**

Without a basis to rely on the GSA lease, Cork complains that OPO has committed the tort of unfair competition because it is somehow "unfair" for OPO to benefit competitively from President Trump's name and stature. Cork alleges that (a) more customers are choosing to patronize OPO because of customers' "perception" that it would be advantageous in any dealings with the U.S. government to do so, and (b) it is "unfair" for OPO to operate a hotel bearing the name "Trump" while Mr. Trump is in office due to the President's prominence and position. *See* Compl., ¶¶ 20(c), 34.   The law in the District of Columbia is clear such allegations are not actionable.

In *Ray v. Proxmire*, 581 F.2d 998 (D.C. Cir. 1978), the U.S. Court of Appeals for the D.C. Circuit affirmed the dismissal of the plaintiff Ray's unfair competition claim under D.C. common law.  The complaint alleged, among other things, that a tour and hospitality service run by defendant Ellen Proxmire, the wife of a sitting United States senator, William Proxmire, unfairly traded on the prestige and contacts she developed as a senator's wife. *Ray v. Proxmire*, 581 at 1002-03.   The plaintiff further alleged that Proxmire gained customers by using her influence to provide access to public property, including the vice-presidential mansion, and opportunities to meet wives of governmental officials that other tour companies, such as Ray's, could not offer.  *Id*.  The plaintiff alleged that Proxmire's business success was due to her fame and ability to "open doors."  *Id*.

---

*(footnote continued from previous page)*
contradicted).   Because OPO and the GSA agree OPO is in full compliance with the lease, the Court can reject Cork's contrary, threadbare allegation and dismiss the complaint.

38958706v.4

The trial court dismissed Ray's unfair competition claim, and the D.C. Circuit affirmed the dismissal. The D.C. Circuit noted that, in order to encourage "aggressive economic competition," the tort of unfair competition is necessarily a limited one, constrained to recognized categories of unlawful competitive behavior. *Id.* at 1002. The court held that a judge's role "is limited to redress of *legally-cognizable wrongdoing*, and financial success does not become unlawful simply because it is aided by prominence; nor could it be, without locking the famous out of the economy." *Id.* at 1003 (emphasis added). The court further held "simple use of one's status in society" for commercial gain is *not* illegal. *Id.* In addition, the court recognized that many customers and others "will still treat celebrities specially," and notable individuals and those with connections to government "should not be exiled from the business world" just because their status and position might lead others to grant unique opportunities. *Id.* Finally, in dismissing Ray's complaint, the court concluded that even "using political influence to use public property for private gain" cannot provide a basis for a private unfair competition lawsuit. *Id.* at 1003.

The *Ray v. Proxmire* case is controlling authority and requires dismissal of Cork's unfair competition claim. As in *Ray*, Cork alleges it is "unfair" that OPO may gain the business of customers who may patronize the Hotel because of President Trump's name, prominence, and office. As the D.C. Circuit concluded in *Ray*, however, an individual's status in society, fame, or even ability to "open doors" are not wrongful acts and cannot sustain a claim under the limited tort of unfair competition. *Id.*

Indeed, Cork's allegations of "unfairness" stemming from President Trump's notoriety could be leveled against any politician, Hollywood actor, professional athlete, or other person of influence involved with a business. Such allegations would have applied equally to President

15

Trump when he was only a prominent businessman with the hit television show *The Apprentice* on NBC. And, the mere possibility that customers will patronize a business to (misguidedly) attempt to "curry favor," ingratiate themselves to a celebrity, or "rub shoulders" with influential people does not mean that *the business* has engaged in tortious unfair competition. As in *Ray*, such allegations must be dismissed.

There is no distinction in the law of unfair competition between political celebrity and nonpolitical celebrity. To the extent Cork seeks to claim such a distinction based on the President's status as a federal official, such claims fail on immunity and preemption grounds as argued by codefendant. OPO incorporates by reference herein the immunity and preemption bases for dismissal made by the President.

Accordingly, Cork's allegation that it is "unfair" for customers to patronize the Hotel because of the President's position or because the Hotel bears the name "Trump" is not actionable, and the complaint must be dismissed for failure to state a claim.

## CONCLUSION

For the reasons set forth above, OPO respectfully requests that the Court dismiss the complaint with prejudice in its entirety.

38958706v.4

Date: May 10, 2017

Respectfully submitted,

/s/ Rebecca Woods

Rebecca Woods (D.C. Bar No. 468495)
rwoods@seyfarth.com
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, DC  20004
Telephone:  (202) 463-2400
Facsimile:  (202) 641-9200

Esther Slater McDonald (D.C. Bar No. 495034)
emcdonald@seyfarth.com
Stephanie A. Stewart (Georgia Bar No. 483581,
*pro hac vice application to be submitted*)
sastewart@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, Georgia 30309
Telephone:  (404) 885-1500
Facsimile:   (404) 892-7056

*Counsel for Defendant Trump Old Post Office, LLC*

17

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of May, 2017, a copy of the foregoing **DEFENDANT TRUMP OLD POST OFFICE LLC'S MOTION TO DISMISS AND STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT TRUMP OLD POST OFFICE LLC'S MOTION TO DISMISS** with the Clerk of the Court for the United States District Court for the District of Columbia using the CM/ECF system, which will send notice and accomplish service of such filing to the following registered CM/ECF users:

> Scott H. Rome
> Andrew J. Kline
> Christopher LaFon
> THE VERITAS LAW FIRM
> 1235 19th Street, N.W., Suite 320
> Washington, DC 20036
> srome@theveritaslawfirm.com
>
> Mark S. Zaid
> Bradley P. Moss
> MARK S. ZAID, P.C.
> 1250 Connecticut Avenue, NW
> Suite 200
> Washington, DC 20036
> mark@markzaid.com
>
> Alan B. Morrison
> Steven L. Schooner
> GEORGE WASHINGTON UNIVERSITY LAW SCHOOL
> 2000 H Street, NW
> Washington, DC 20052
> abmorrison@law.gwu.edu
> sschooner@law.gwu.edu
>
> *Counsel for Plaintiff*
>
> Jason R. Scherr
> Michael E. Kenneally
> MORGAN, LEWIS & BOCKIUS LLP
> 1111 Pennsylvania Avenue, NW
> Washington, DC 20004
> Telephone: 202.373.6709
> jr.scherr@morganlewis.com
> michael.kenneally@morganlewis.com

18

38958706v.4

Eric W. Sitarchuk
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
eric.sitarchuk@morganlewis.com

Allyson N. Ho
MORGAN, LEWIS & BOCKIUS LLP
1717 Main Street
Suite 3200
Dallas, TX 75201
allyson.ho@morganlewis.com

*Counsel for Defendant Donald J. Trump*

By: */s/ Rebecca Woods*
     Rebecca Woods

19