UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **K&D, LLC t/a CORK,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 17-731 (RJL) |
| **TRUMP OLD POST OFFICE, LLC** | * | |
| et al. | * | |
| Defendants. | * | |
| * * * * * * * * * * * * * | | |

### PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
### IN SUPPORT OF MOTION TO REMAND CASE TO D.C. SUPERIOR COURT

### (ORAL ARGUMENT REQUESTED)

This is an action originally filed in D.C. Superior Court by plaintiff K&D, LLC, which owns and operates Cork Wine Bar ("Cork") in Washington, D.C. The Complaint, which only seeks injunctive relief, is based entirely on a single cause of action of unfair competition under District of Columbia law. The principal defendant is Trump Old Post Office, LLC ("OPO"), which owns and operates the Trump International Hotel in the District of Columbia and the restaurant and catering services operated therein (the "Hotel").

Defendant Donald J. Trump ("Trump"), who has been sued solely in his individual rather than in his official capacity, is and has been since January 20, 2017, the President of the United States. Through various legal entities he has a 100% ownership interest in the OPO, and hence the Hotel. He has publicly promised that, for the duration of his time as President, he will remove himself from the management of the Hotel and not receive any economic benefits until after he leaves the Office of President.

Defendant Trump has removed this action to federal court based on the Officer Removal Statute, 28 U.S.C. § 1442(a)(1). But as demonstrated below, that statute requires a removing

defendant to assert a colorable federal defense, which defendant Trump cannot do.  That is because: (1) the essence of Cork's claim is that, in order to avoid the unfair competition that arose once defendant Trump became President, defendant Trump had to remove the source of that unfair competition *before* he took the oath of office on January 20, 2017, which was prior to the time that any defense of official immunity could arise; and (2) if the Complaint is read to include actions that defendant Trump has taken since he became President, they are actions taken solely in his personal capacity, and official immunity does not extend to acts that have nothing to do with his duties as President.

Defendant OPO joined defendant Trump's Notice of Removal and relies on additional grounds.  Its main argument is that, although Cork has chosen to rely solely on non-federal grounds in its Complaint – the law of unfair competition in the District of Columbia – the Complaint should nonetheless to be properly read to arise under federal law pursuant to 28 U.S.C. § 1331, and hence it is removable for that reason.

The grounds offered by defendant OPO are also without merit.  Under the well-pleaded complaint rule, a plaintiff may choose to plead a state cause of action to the exclusion of available federal claims, which is what Cork did here. Moreover, the exception for state law claims that have been totally preempted applies only in areas such as the federal labor laws, where there is a federal cause of action, unlike this case where there is no arguable federal law basis for Cork's Complaint. Nor does the fact that Cork supports its claim by citing to a portion of the lease between the federal General Services Administration ("GSA") and defendant OPO change the result. As the Supreme Court recently ruled, it is the state law basis of the claim, not a citation to possible violations of federal law, that controls, let alone a citation to a contract

between a federal agency and a private entity. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning, 136 S. Ct. 1562, ___ U.S. ___ (2016).

## STATEMENT OF THE CASE

This case was filed in the Superior Court for the District of Columbia on March 8, 2017. Defendants were served on March 20 and 21, 2017, and their times to answer or move with respect to the Complaint was extended by agreement to May 10, 2017. Defendant Trump filed a Notice of Removal to this Court on April 19, 2017, under 28 U.S.C. § 1442(a)(1), which can be invoked when an officer of the United States seeks removal because a complaint involves a claim "relating to any act [of the Officer] under color of such office." The law on federal officer removal is clear that it is available only when a defendant can raise a defense that his conduct is protected by a colorable claim that it is authorized by federal law. Mesa v. California, 489 U.S. 121, 133 (1989).  Defendant OPO filed its Notice of Removal on April 20, 2017, contending that plaintiff's claim arise under federal law, with jurisdiction based on 28 U.S.C. § 1331.

Because the issue before the Court on this motion is whether this case may remain in federal court, the factual allegations of the Complaint must be accepted as true, and the legal basis of Cork's claim must likewise be assumed. Briefly stated, Cork alleges that the Hotel, owned and/or operated by defendants, has, since January 20, 2017, been engaging in unfair competition against Cork, which has deprived Cork of business and will continue to do so. As noted, the sole asserted basis of the Complaint is the law of the District of Columbia on unfair competition. Cork cites no federal law of any kind, but it does reference, as evidentiary support, section 37.19 of the lease entered into between defendant OPO and GSA which provides:

> No member or delegate to Congress, or elected official of the Government of the United States or the Government of the District of Columbia, shall be admitted to any share or part of this Lease, or to any benefit that may arise therefrom; provided, however, that this provisions shall not be construed as extending to any

>Person who may be a shareholder or other beneficial owner of any publicly held corporation or other entity, if this Lease is for the general benefit of such corporation or other entity.

Cork, however, does not assert a claim based on the lease, such as one might pursue as a third party beneficiary of a contract. Rather, the Complaint quotes section 37.19, which applies to various elected officials, including defendant Trump, Members of Congress, the Mayor and Members of the Council of the District of Columbia, and even its non-voting elected Delegate, Eleanor Holmes Norton. This provision bars all of the identified officials from receiving "any benefit" from the lease, which includes payments to be received in the future as well as present. The rationale behind the ban, plaintiff contends, is to prevent the leaseholder from gaining an unfair advantage vis-a-vis its competitors by being able to attract customers seeking to curry favor with the elected official.  Put another way, if Mayor Muriel Bowser became a part owner of the leasehold, Cork would have the same claim against OPO and the Mayor as it does in this case against defendant Trump.

The Complaint notably does not contain any allegation that defendant Trump took any official action against it in his capacity as President, whether authorized by law or otherwise. His Notice of Removal, however, asserts that the Complaint "alleges that President Trump has taken several actions *in his official capacity* that in the plaintiff's view 'promote the Hotel to maximize its exposure and income-producing potential' rather than 'avoid exploiting [his] public office for personal gain" Notice of Removal, ¶12, citing Complaint ¶20 (emphasis added). Aside from the fact that the language quoted by defendant Trump is from ¶21 of the Complaint, not ¶20, the phrase "in his official capacity" does not appear in the Complaint, either in those words or in any other way.

4

Paragraph 21 of the Complaint does no more than state that defendant Trump has continued to promote his Hotel after he became President, as have the others mentioned in that paragraph. Defendant Trump's inclusion of the italicized phrase appears to advocate a position that everything he does as President is in his official capacity. As demonstrated below, however, that is not the law.[1]

## ARGUMENT

### CORK'S MOTION TO REMAND SHOULD BE GRANTED.

**A. The Officer Removal Statute Is Inapplicable Here**

Section 1442(a) of title 28, the federal officer removal provision, provides as follows:

(a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

(2) A property holder whose title is derived from any such officer, where such action or prosecution affects the validity of any law of the United States.

(3) Any officer of the courts of the United States, for any act under color of office or in the performance of his duties;

(4) Any officer of either House of Congress, for any act in the discharge of his official duty under an order of such House.

Eliminating the unnecessary words from subsection (a)(1), which is the part relied on by defendant Trump in support of removal, it can be paraphrased as follows:

---

[1] On May 10, 2017, both defendants filed Motions to Dismiss. In light of the filing of this Motion to Remand, which would, if granted, strip the Court of jurisdiction, Cork will be filing a separate Motion to Stay briefing of the defendants' motions until such time as this Motion is decided.

5

> A civil action in a State court against the President may be removed by him to the district court, if there is a claim relating to any act of the President under color of his office.

Although only subsection (1) is at issue in this case, the Supreme Court has looked to the key operative language in the other subsections to confirm that the interests Congress sought to protect under section 1442 as a whole are to assure that federal officers in all three branches, who claim that their conduct is protected under federal law, are able to litigate those federal defenses in federal court, if they so choose. Mesa, 489 U.S. at 129-30.[2] The federal officer removal statute is an exception to the rule, discussed *infra,* that jurisdiction under section 1331 is only available if a plaintiff relies on federal law as a basis for his complaint, but not if federal law is at issue because of a federal affirmative defense. However, Mesa holds that even under section 1442, "federal officer removal must be predicated on the allegation of a colorable federal defense." Id. at 129. That requirement is not met in this case for two reasons.

First, the gravamen of Cork's unfair competition claim is that once defendant Trump became President Trump, he and his Hotel were engaging in unfair competition. Therefore, the wrongful act of defendant Trump is that, prior to January 20, 2017, he failed to disentangle himself from the Hotel and therefore he will continue to receive financial and other benefits from the Hotel earned during the period of his Presidency, even if they are not paid to him until he is no longer in office. Thus, it is defendant Trump's pre-Presidential inaction that is the source of the claim against him. Since that occurred before he became President, and before he obtained whatever

---

[2] The federal nexus in subsection (2) is the reliance on "any law of the United States." In subsection (3), an officer of the courts of the United States must also act "under color of office or in the performance of his duties [under federal law]." And in subsection (4) the same approach for an officer of either House of Congress is embodied in the phrase "in the discharge of his official duty under an order of such House."

federal officer defense/immunity he has as President, he has no "colorable federal defense" which is required for section 1442 removal.

Second, as Mesa makes clear, not every colorable defense is a colorable *federal* defense simply because it is raised by a federal officer. In Mesa, Postal Service employees were charged with criminal conduct relating to the manner in which they drove their vehicles while on duty. They sought removal on the ground that as federal officers – without more – they were entitled under section 1442 to have the criminal charges against them, which were based entirely on California law, decided in federal, not state court. They made this argument even though they had no defense that federal law gave them any special protection not available to any other defendant facing the same charges. Because those defendants had no federal defense, the Court rejected their attempt to remove the case under subsection 1442(a)(1). "In sum, an unbroken line of this Court's decisions extending back nearly a century and a quarter have understood all the various incarnations of the federal officer removal statute to require the averment of a federal defense." 489 U.S. at 133-34.

Defendant Trump's Removal Notice cites Nixon v. Fitzgerald, 457 U.S. 73l (1982), but there is no doubt that the claim there – former President Nixon's decision to discharge the plaintiff from his job with the Air Force as an "unlawful retaliation for his truthful testimony before a congressional Committee" – was within the scope of the President's authority over the Air Force, even if the reasons for the discharge were unlawful. Id. at 736 (citing statutory authority over Air Force). The Court granted the ex-President broad immunity, but only "from damages liability for acts within the 'outer perimeter' of his official responsibility." Id. at 756. To be sure, as the Court ruled in Jefferson County, Ala v. Acker, 527 U.S. 423, 431 (1999), a federal defendant need not win his case on a federal defense to be entitled to removal, but the defense must at least

be colorable. As Cork demonstrates, defendant Trump has no colorable federal defense because all of his conduct since January 20, 2017 that is related to the Hotel has been in his personal rather than official capacity.[3]

In this respect, Cork's case is like <u>Mesa</u> where any defenses that the drivers of the postal vehicles had there were either factual or based on state, not federal law. However, defendant Trump appears to read <u>Fitzgerald</u> so broadly as to encompass everything President Trump did or might do between now and the moment he is no longer President. While there is language in <u>Fitzgerald</u> that points out both the broad reach of Presidential power and the fact that he is on duty twenty-four hours a day, seven days a week, 365 days a year (or 366 in leap years), the overriding rationale of the justification for Presidential immunity relates to assuring that the President carries out his official duties, without fear of personal monetary liability, for decisions that might turn out to be mistaken or even unlawful. For those decisions, there are other means of challenging them, unlike suits like this one, for which this is Cork's only remedy.

Furthermore, as Chief Justice Burger emphasized in his concurring opinion in <u>Fitzgerald</u>, "[t]he immunity is limited to civil damages claims. Moreover, a President, like Members of Congress, judges, prosecutors, or congressional aides – all having absolute immunity – are not immune for acts outside official duties." <u>Id</u>. 457 U.S. at 759.  That opinion focused on the separation of powers basis for the immunity, a rationale that has no bearing on the purely private acts of federal officials of all branches of government. See also <u>Forrester v. White</u>, 484 U.S. 219, 230 (1988) (rejecting absolute immunity defense in claim of unlawful sex discrimination by

---

[3] Although Cork seeks only injunctive, not monetary relief, it does not distinguish <u>Fitzgerald</u> on that ground since the costs of a loss by defendant Trump here would affect him in his personal, not official capacity, in contrast, for example, to the President's loss in <u>Youngstown Sheet & Tube v. Sawyer</u>, 343 U.S. 579 (1952), in which his official powers were diminished.

8

judge who fired subordinate court employee); Zarcone v. Perry, 572 F.2d 52, 53-54 (2d Cir. 1978) (no immunity for judge who ordered street vendor, who sold judge coffee the judge disliked, to be brought in handcuffs to chambers by Sheriff).

One essential fact that undermines defendant Trump's claim of official immunity for his conduct at issue in this case is that, prior to his Inauguration, he took steps to sever all of his relations with the Hotel and all of his other business enterprises. See Morgan Lewis White Paper, January 11, 2017 (Section II detailing plans of defendant Trump to separate his businesses from his official duties as President) attached as Exhibit A. Whether he succeeded is not part of this case, except that his promise to do so eliminates any argument that, whatever post-Inauguration actions regarding the Hotel he may have taken (or failed to take), they cannot, by the representations of the law firm representing him in this case, be the basis of a claim of official immunity. In effect, defendant Trump himself has recognized, and is clear from the very text of his law firm's White Paper, that any actions on behalf of the Hotel he may take while he is President are in his personal and not official capacity. Indeed, even without defendant Trump's promise, because the Hotel is a private not a federal entity, there cannot be *any* acts of defendant Trump or those in his Administration that would constitute official acts to promote the business interests of the Hotel, even though it is owned by the President of the United States. Moreover, defendant Trump has not pointed to any action taken by him in his official capacity, whether cited in Cork's Complaint or not, that would serve to justify, as a matter of federal law, the unfair competition from the Hotel that has caused the injuries.[4]

---

[4] Paragraph 20(b) of the Complaint cites to the fact that defendant Trump exited his car outside the Hotel during the post-inaugural parade to support Cork's claim that defendant, his family, and his associates continue to promote the Hotel after January 20, 2017. In order to avoid any argument that this conduct was part of the President's official duties, plaintiff will amend its

But even if defendant Trump had not recognized the difference between personal and official actions, the notion that, because the President is available 24/7, could mean that every one of his actions for the duration of his Presidency is entitled to official immunity would produce absurd results, both as a legal defense and, more relevant for this Motion, as a colorable federal defense and hence be a basis for removal. Consider the following examples of removal to federal court if defendant Trump's broad claim of federal immunity as a basis were sustained:

(1) Melania Trump files for divorce in New York. "You are never home in NY taking care of Baron, but spending all your time being President in Washington";

(2) President Trump is playing golf at the Army Navy Club with the Ambassador from Japan, and fails to pay attention to the person crossing the fairway, hits his shot, striking the person in the head, and is then sued on grounds of negligence;

(3) President Trump invites a tailor to come to the White House and measure him for a hand-made tuxedo that he will wear only for state dinners. After the tuxedo arrives, the President is displeased with the work and refuses to pay, whereupon the tailor sues him in Superior Court;

(4) President Trump files his 2017 New York States income tax return, which includes his presidential salary and other taxable income, but his accountants make some mistakes and the State claims he owes them $10,000, plus interest & penalties for negligence. When he refuses to pay, and after exhausting all avenues required by N.Y. law, the State files suit in the appropriate state court seeking payment of the amount owed; and

(5) President Trump refuses to pay the lawyers who are defending him in this case. After the case is concluded, they sue him and he claims absolute immunity.

If defendant Trump's Notice of Removal, based on section 1442(a)(1), is proper here, then removal would be permissible in each of these five examples, despite the total lack of a colorable federal defense.

---

Complaint at the appropriate time and thereby preclude reliance on this fact to support its unfair competition claim.

There is a final constitutional reason to read section 1442 as the Supreme Court has read it and that Cork urges it be read here. Article III courts are of limited jurisdiction. In this case, and for purposes of section 1442, it must be conceded that Cork raises no "arising under" federal claim under 28 U.S.C. § 1331, and there is no claim that there is diversity of citizenship between the parties so that 28 U.S.C. § 1332 could confer subject matter jurisdiction. The only basis for removal is a colorable federal defense, without which, as the Supreme Court recognized in Mesa, there would a serious question of whether there was a constitutional basis under Article III that would permit removal of a case that could not be originally filed in federal court. 489 U.S. at 136.  Accordingly, the doctrine of constitutional avoidance, see TVA v. Ashwander, 297 U.S. 288 (1936), provides a further reason not to accept the open-ended reading of section 1442(a)(1) urged by defendant Trump.

### B. Because Plaintiff's Claim Does Not Arise under Federal Law, 28 U.S.C. § 1331 Does Not Provide a Basis for Removal.

Turning now to defendant OPO's removal, absent diversity of citizenship, a defendant may remove a claim filed in state court, which expressly relies on state law, as Cork does here, in only two circumstances. First, where Congress has preempted an entire field of law, such as under federal labor laws, the only claims are federal claims and hence federal question removal is proper. See e.g., Metropolitan Life Ins. Co. v Taylor, 481 U.S. 58 (1987) (upholding removal based on preemptive effect of § 502(a)(1)(B) of Employee Retirement Income Security Act of 1974); Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557 (1968) (upholding removal based on preemptive effect of § 301 of Labor Management Relations Act of 1974). In those situations, because there is no remaining state law claim to assert, the case is either removable because it arises under federal law, or it must be dismissed because there is no state law claim that is not preempted. In such cases, Congress has generally provided a federal remedy, to the exclusion of

11

state remedies, even if the federal remedy does not entitle a particular plaintiff to prevail. In this case, however, there is no arguable federal remedy applicable to the facts of Cork's unfair competition claim, and so this basis for removal is not available for defendants.

Second, the alternative basis for defendant OPO's Notice of Removal recognizes that in most cases a plaintiff may elect to rely solely on state law, but that the courts may nonetheless conclude that, despite the label, the plaintiff's claim is based on federal law because only by proving a violation of federal law can the plaintiff prevail. It is this prong that defendant OPO seeks to invoke. Defendant OPO's discussion of the applicable legal principles under this prong are substantially correct, see OPO Notice ¶¶6,8, but their application to the facts of this case is in error.

The Supreme Court last term decided a case that demonstrates the error of defendant OPO's efforts at removal. In Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning, 136 S. Ct. 1562, ___ U.S. ___ (2016), the Court rejected the attempt by the defendant to use the plaintiffs' citation of federal law as part of his state law complaint to transform the case into one arising under federal law and make it removable. The plaintiff's claim was based on the illegality of defendant's naked short sales, and relied exclusively on New Jersey law. Id. at 1566-67. The complaint:

> referred explicitly to [SEC] Regulation SHO, both describing the purposes of that rule and cataloguing past accusations against Merrill Lynch for flouting its requirements. And the complaint also couched its description of the short selling at issue here in terms suggesting that Merrill Lynch had again violated that [federal] regulation, in addition to infringing New Jersey law.

Id. at 1566-67 (citations to record omitted).

Defendant there removed the case to federal court by relying on both section 1331 and section 27 of the Securities Exchange Act. Plaintiffs' motion to remand was denied, but the

Third Circuit reversed, and the Supreme Court upheld the remand order. In the Supreme Court, the defendant did not rely on "arising under" removal jurisdiction under section 1331, but instead argued, unsuccessfully, that section 27's exclusive jurisdiction was broader than removal relying on section 1331. The Court concluded that the standards were the same and found removal to be improper under the section 1331 standard.

Just like this case, the plaintiffs in Merrill Lynch based their claim solely on state law. They did cite SEC regulations in support of the claim, but that citation did not alter the outcome so as to provide a basis for removal. In this case there is even less reason to conclude that Cork's claim arises under federal law because Cork does not rely on any federal statute or regulation. Instead, it cites a provision in a lease that defendant OPO and its owner defendant Trump signed with GSA, which forbids defendant Trump and all other federal and District of Columbia elected officials from receiving any benefits from the Hotel while holding their elected offices. That lease is not federal law, or for that matter law of any kind. Rather, it is cited by Cork, in support of its unfair competition claim, as an acknowledgment by defendants that elected officials covered by section 37.19 are engaging in unfair competition if they receive any benefits from the Hotel. Just as plaintiffs in Merrill Lynch cited SEC short sale regulations in support of their claim that defendant's conduct violated New Jersey law, so here Cork cites section 37.19 in support of their District of Columbia law claim of unfair competition. Thus, even if the GSA lease constituted federal law (as opposed to an obligation created *under* federal law), the holding in Merrill Lynch establishes that removal on that basis is not available.

A significant portion of defendant OP's Notice of Removal seeks to conjure up a parade of horribles if removal is not upheld, ranging from embroiling the Superior Court in effectively

overseeing the operation of the Hotel lease with GSA, to ordering the President to resign. There are three sets of reasons why those concerns are irrelevant to this Motion.

First, nothing that Cork seeks in this lawsuit will require any court to decide how operations under the lease will or will not be conducted. That is a matter for the parties to that lease. Nothing in the GSA lease authorizes defendant OPO to violate any laws of the District of Columbia and/or orders of courts with jurisdiction over it, including the laws relating to unfair competition and court orders based on those laws. Similarly, the relief that Cork actually seeks in its Complaint does not suggest that any court can order any President of the United States to resign: the Complaint simply states the fact that, if defendant Trump chose to resign, Cork would no longer have a valid claim for injunctive relief.

Second, insofar as the lease with GSA is concerned, GSA is not a party to this lawsuit because Cork has not asserted a claim against it. Whatever the outcome of this lawsuit, defendants and GSA will have to work out their continuing obligations under the lease, with no role for Cork or this Court or the Superior Court, in that matter. And third, if the problems that defendant OPO conjures up were real problems, which they are not, they would have to be resolved by whichever court had the case, and respectfully this Court has no more experience in issues of federal contract law than does the Superior Court because neither court has jurisdiction over those cases.  <u>See, e.g</u>., The Contract Disputes Act of 1978, 41 U.S.C. Section 7100, et seq. (vesting jurisdiction to interpret government contracts in the U.S. Court of Federal Claims and agency boards of contract appeals).  Thus, the only question now before this Court is whether this case may remain in federal court, and not what relief Cork may be entitled to have if it prevails on the merits of its unfair competition claim under District of Columbia law.

There is one final reason why all doubts should be resolved against removal of this case. If this Court sustains the removal, and the case is resolved on the merits either way, the propriety of the removal will remain open, even if the case reaches the Supreme Court. Indeed, that is precisely the posture of Franchise Tax Board of CA v. Construction Laborers Vacation Trust, 463 U.S. 1 (1983), cited by defendant OPO. In that case a tax claim was filed by the Tax Board in state court, and the defendant removed on the ground that ERISA precluded the state from imposing the tax at issue. The Motion to Remand was denied, and the Tax Board lost on the merits, but it prevailed on the removal issue in the Supreme Court. As a result, the parties had to start all over in state court.

In this case, where Cork is seeking only injunctive relief, a ruling on appeal that removal was improper would be more harmful to Cork than if this case sought money damages. Moreover, because Cork's claim is based solely on the laws of the District of Columbia, with no arguable federal defense available, the Courts of the District of Columbia are best positioned to decide the proper application of the law of unfair competition as applied to these facts. For all these reasons, all doubts should be resolved in favor of granting this Motion to Remand and avoid a possible repeat of the outcome in Franchise Tax Board.

**CONCLUSION**

For the foregoing reasons, Cork's Motion to Remand this case should be granted.

**Date: May 18, 2017**

Respectfully submitted,

| /s/ | /s/ |
|---|---|
| Scott H. Rome (D.C. Bar #476677) | Mark S. Zaid (D.C. Bar #440532) |
| (*co-lead counsel*) | (*co-lead counsel*) |
| Christopher LaFon (D.C. Bar #483740) | Bradley P. Moss (D.C. Bar #975905) |
| *(admission pending)* | MARK S. ZAID, P.C. |
| THE VERITAS LAW FIRM | 1250 Connecticut Avenue, N.W. |
| 1225 19th Street, N.W. | Suite 200 |
| Suite 320 | Washington, D.C. 20036 |
| Washington, D.C. 20036 | (202) 454-2809 |
| (202) 686-7600 | Mark@MarkZaid.com |
| srome@theveritaslawfirm.com | |

/s/

Alan B. Morrison (D.C. Bar #073114)
Lerner Family Associate Dean for
Public Interest and Public Service Law
GEORGE WASHINGTON
UNIVERSITY LAW SCHOOL
2000 H Street, N.W.
Washington, D.C. 20052
(202) 994-7120
abmorrison@law.gwu.edu

*Counsel for Plaintiff K&D, LLC, t/a Cork*