IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| K&D, LLC t/a CORK,<br><br>   *Plaintiff*,<br><br> v.<br><br>TRUMP OLD POST OFFICE, LLC,<br><br> and<br><br>DONALD J. TRUMP, *individually, and in his personal capacity*,<br><br>   *Defendants*. | Civil Action No. 17-731 (RJL)<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT DONALD J. TRUMP'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

  As Supreme Court precedent makes clear, the federal officer removal statute is broad and must be interpreted liberally. A federal officer defendant, even if sued in an individual capacity, is thus entitled to have the claims against him heard in federal court if (1) he has a colorable federal defense and (2) the suit has some connection to his federal office. *See, e.g.*, *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999). An argument is "colorable" if it is not made in bad faith nor "wholly insubstantial and frivolous." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 n.10 (2006). President Trump's federal defenses in this suit are not only "colorable," but conclusive, and the allegations of the Complaint cannot be read as *unrelated* to the President's office. No more is required.

  President Trump raised two federal defenses in his notice of removal. Each independently suffices for § 1442 removal, although Plaintiff addresses only one of them. According to Plaintiff, presidential immunity does not apply because the acts giving rise to Plaintiff's claim supposedly have nothing to do with the President's official responsibilities.

1

Remand Mem. 2 (Dkt. 12-2). But Plaintiff misunderstands the immunity doctrine and hides from the Complaint's allegations, which President Trump has already shown justify absolute presidential immunity. Trump Mot. to Dismiss Mem. 3-7 (Dkt. 8). In any event, for purposes of this remand motion, the question is not whether presidential immunity will bar Plaintiff's claim. Rather, the question is only whether the defense is so certain to be rejected that no reasonable court would even consider it. President Trump's absolute immunity defense is nothing of the sort, and Plaintiff cannot seriously claim otherwise.

Apart from presidential immunity, President Trump has raised a second colorable defense under the Supremacy Clause, a defense that Plaintiff fails to mention, much less address. The Supreme Court has specifically upheld federal officer removal based on such a defense, on facts far less compelling than those here. *See Acker*, 527 U.S. at 431-33. Without *any* argument from Plaintiff, there is no basis to conclude that President Trump's Supremacy Clause defense—that D.C. common law may not directly regulate the President of the United States as such—is less than colorable, and no basis to deny the President a federal forum in which to address it.

## ARGUMENT

**I.    The Complaint More Than Justifies Removal Under the Federal Officer Statute.**

The Supreme Court has long instructed that the federal officer removal statute, 28 U.S.C. § 1442, must "be liberally construed to give full effect to [its] purposes." *Colorado v. Symes*, 286 U.S. 510, 517 (1932). One of the statute's "most important" purposes "is to have the validity of the defense of official immunity tried in a federal court." *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). "The officer need not win his case before he can have it removed," nor may Congress's aim of affording federal officers a federal forum to test federal defenses "be frustrated by a narrow, grudging interpretation" of the statute. *Id.*; *accord Acker*, 527 U.S. at

431.  Otherwise "the merits" of a case "would be subsumed within the jurisdictional question of removal."  *Acker*, 527 U.S. at 447 (Scalia, J., concurring in part and dissenting in part).

In *Acker*, the Supreme Court identified two requirements for federal officer removal:  the officer (1) must raise a colorable federal defense and (2) show a "nexus" or "causal connection" "between the charged conduct and asserted official authority."  *Id.* at 431 (majority opinion) (quoting *Willingham*, 395 U.S. at 409).  Although Plaintiff blurs the two requirements, they are distinct and serve different purposes.  President Trump readily satisfies both.

### A. President Trump Asserts Two Colorable Federal Defenses.

The colorable federal defense requirement ensures that the jurisdiction granted by the federal officer removal statute does not exceed constitutional limits.  Article III extends the federal judicial power, in relevant part, to cases "arising under" federal law.  U.S. Const. art. III, § 2, cl. 1.  Unlike cases where a plaintiff raises a federal claim under 28 U.S.C. § 1331, in cases removed to federal court under § 1442, the federal defenses raised "in the officer's removal petition . . . constitute[] the federal law under which the action against the federal officer arises for Art. III purposes."  *Mesa v. California*, 489 U.S. 121, 136 (1989).  For Article III purposes, the difference between federal question jurisdiction under § 1331 and federal officer jurisdiction under § 1442 is whether the federal question is presented by the plaintiff (§ 1331 claim) or the defendant (§ 1442 defense).

In evaluating whether a federal claim is "colorable" under § 1331, the Supreme Court has long held that a plaintiff's claim "is not colorable . . . if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'"  *Arbaugh*, 546 U.S. at 513 n.10.  The same standard applies here:  "Because § 1442 allows the assertion of a colorable federal defense to serve the function typically reserved for the assertion of a colorable federal claim, it follows that a non-colorable federal defense is a defense that is immaterial and

3

made solely for the purpose of obtaining jurisdiction or that is wholly insubstantial and frivolous." *Zeringue v. Crane Co.*, 846 F.3d 785, 790 (5th Cir. 2017).

Instead of considering President Trump's two federal defenses under the correct "colorable" standard, Plaintiff relies almost exclusively on the *Mesa* case. Remand Mem. 7-8. But that reliance is misplaced. In *Mesa*, the federal officer defendants did not assert *any* federal defense, and instead argued that they did not need to. 489 U.S. at 134. The *Mesa* decision therefore does not explain what constitutes a colorable defense; it holds only that a colorable defense is normally necessary. *Id.* at 139.

Unlike the *Mesa* defendants, President Trump *has* raised a federal defense. In fact, he has raised two of them. Under any reasonable standard those two distinct federal defenses are "colorable," and Plaintiff makes no showing to the contrary.

    **i.**  **Presidential Immunity**

Citing *Nixon v. Fitzgerald*, 457 U.S. 731 (1982), President Trump's removal notice invoked the defense of absolute presidential immunity. Notice of Removal ¶¶ 22-23 (Dkt. 1). In *Fitzgerald*, the Supreme Court explained that absolute presidential immunity is justified by the President's "unique position in the constitutional scheme," 457 U.S. at 749, and because his prominence makes him "an easily identifiable target," *id.* at 753. Immunity is necessary to protect the President from the distractions that his "personal vulnerability" to litigation would otherwise cause, "to the detriment of not only the President and his office but also the Nation that the Presidency was designed to serve." *Id.*

In articulating the scope of this immunity, the Court refused to adopt the narrow approach favored by the plaintiff in that case and again by Plaintiff here. Plaintiff contends that the allegedly wrongful conduct in this case is insufficiently connected to how "the President carries out his official duties," and invokes the *Fitzgerald* concurrence and cases involving judicial

4

immunity. Remand Mem. 8-9.[1]  Although other officials' personal immunities may well "extend only to acts in performance of particular functions of [their] office," 457 U.S. at 755, the *Fitzgerald* majority recognized a wider field for absolute presidential immunity "[i]n view of the special nature of the President's constitutional office and functions," *id.* at 756.[2]  It would often be difficult, the Court recognized, "to determine which of the President's innumerable 'functions' encompassed a particular action." *Id.*  For that reason, the Court held that the President's absolute immunity should not merely encompass enumerated acts within a strict reading of official obligations, but should also extend to "the 'outer perimeter' of his official responsibility." *Id.*

*Fitzgerald*'s "outer perimeter" test readily reaches the allegations here.  In *Fitzgerald*, the Supreme Court held that the test was satisfied even though the President was alleged to have violated a federal statute restricting his powers over the Executive Branch, out of a desire to fire a government employee who had caused political embarrassment to his administration. *See id.* at 734, 756-57.  The Court concluded that the President's allegedly self-interested motives were

---

[1] Although Plaintiff mentions the *Fitzgerald* concurrence's assertion that absolute presidential immunity is restricted to damages claims, Plaintiff expressly agrees with President Trump that the immunity analysis in this case is not affected by Plaintiff's tactical decision to seek injunctive relief, because "the costs of a loss by defendant Trump here would affect him in his personal . . . capacity."  Remand Mem. 8 n.3.  Because there is no disagreement on this point, President Trump will not repeat here the arguments already made in his motion to dismiss.  Trump Mot. to Dismiss Mem. 6-7.

[2] For this reason, Plaintiff's citations of cases involving judicial immunity are inapposite. Judicial immunity, unlike presidential immunity, *is* limited to acts in performance of particular functions of the defendant's office. *See Forrester v. White*, 484 U.S. 219, 227 (1988) (judicial immunity limited to "judicial acts"); *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) (judicial immunity limited to judges' actions "in their judicial functions").  Even the *Fitzgerald* concurrence, which Plaintiff relies on even though it is not controlling, recognizes important differences between presidential and judicial immunity. *Fitzgerald*, 457 U.S. at 761 n.4 (Burger, C.J., concurring) (criticizing the dissent for treating "Presidents, prosecutors, judges, congressional aides, and other officials . . . as if the scope of their authority were identical").

5

irrelevant. *Id.* at 756. That reasoning applies with equal force to the allegations here and likewise forecloses any argument by Plaintiff that immunity is unavailable because the President is allegedly "exploiting public office for private gain." Compl. ¶ 20.

Two cases after *Fitzgerald* further confirm that this Complaint's allegations fall within the outer perimeter of presidential responsibility. First, this Court has held that "[t]he Inauguration . . . does not reasonably appear to be outside the President's official duties." *Newdow v. Bush*, 355 F. Supp. 2d 265, 282 (D.D.C. 2005). That is why Plaintiff is forced to gloss over the Complaint's allegations about presidential acts during the Inauguration. Compl. ¶ 20(b); *see* Remand Mem. 9 n.4.

Second, the Supreme Court's decision in *Clinton v. Jones*, 520 U.S. 681 (1997), confirms that the Complaint also presents colorable instances of conduct within the outer perimeter of the President's responsibilities when it alleges that the President and "various White House staff and/or advisors" have promoted the Hotel. Compl. ¶ 20. Even while rejecting a claim of temporary presidential immunity for acts that predated President Clinton's election and did not relate to any of his official duties, the Court in *Jones* recognized that allegations of defamatory comments by the President's agents "arguably may involve conduct within the outer perimeter of the President's official responsibilities." 520 U.S. at 686. Under that broad conception of what is arguably within the outer perimeter of presidential responsibility, the Complaint's allegations about a meeting between the President and a member of a coordinate branch of government must qualify as well. *See* Compl. ¶ 20(d).

A number of additional allegations in the Complaint likewise fall within that outer perimeter. The Complaint alleges that patronizing the Hotel is perceived to lead to favorable results in the patrons' "dealings with President Donald J. Trump and other agencies of the United

6

States Government." *Id.* ¶ 18. It further asserts that "lobbyists, foreign governments, and governmental contractors" may patronize the Hotel "in order to gain influence or advantage." *Id.* ¶ 29. None of that could happen without implicating *official* decisions within President Trump's Executive Branch.

More generally, the Complaint's entire theory of liability depends on the act by which the President assumed Office: the Complaint expressly disavows any claim about competition from the Hotel "prior to January 20, 2017, when Defendant Donald J. Trump began serving as President." *Id.* ¶ 31. Although Plaintiff now attempts to reverse course by telling the Court that the alleged wrongful act *did* occur "prior to January 20, 2017," Remand Mem. 6, Plaintiff continues to acknowledge that the alleged unfair competition began only after the Inauguration, "once defendant Trump became President Trump," *id.* As Plaintiff does not dispute that the competition would be perfectly lawful if President Trump had not taken Office, no tort could have been complete before Inauguration Day. Even setting aside the Complaint's litany of specific alleged acts within the outer perimeter of presidential authority, the upshot of Plaintiff's overall theory is that President Trump taking the Presidential Oath was a necessary ingredient of this lawsuit's claim. Surely even Plaintiff would acknowledge that *that* constitutes a presidential act.

But even if Plaintiff's claim did not depend on these *specific acts* within the outer perimeter of President authority, presidential immunity would still bar the claim because it depends on the President's *status* as President. As *Fitzgerald* explained, immunity allows the President to take action without fear that individuals will seek to hold him personally liable for those choices. 457 U.S. at 752. The same rationale supports immunity that allows the President to *become* President without fear that individuals will seek to hold him personally liable for

7

conduct that was indisputably lawful when he was a private citizen—especially when the alleged unlawfulness depends on courts' willingness to expand a common law tort, *see* Trump Mot. to Dismiss Mem. 9-12.  Otherwise, local tort law could force the President to choose between facing personal liability or giving up the Presidency.  And it is no accident that this lawsuit seeks that very result: an injunction ordering either a sale or shuttering of the Hotel or the President's resignation from Office.  Compl. ¶ 42.

Instead of addressing these arguments, Plaintiff fights a straw man, claiming that this understanding of *Fitzgerald* would "encompass everything President Trump did or might do between now and the moment he is no longer President."  Remand Mem. 8.  That is not President Trump's argument.  He argues only that *Fitzgerald*'s absolute immunity doctrine applies when a necessary ingredient for the plaintiff's theory of liability is an act within the outer perimeter of presidential responsibility or the President's very status as President.[3]

Plaintiff is free to challenge the application of presidential immunity in opposition to President Trump's motion to dismiss.  But because the Complaint, on its face, alleges that liability flows from the President's acts and status as President, and the President asserts absolute immunity, the federal officer removal statute's "colorability" requirement is more than satisfied.

---

[3] Plaintiff's parade of horribles misses the mark for the same reason.  *See* Remand Mem. 10.  Several, if not all, of these examples involve assertions of liability of different types that would *not* depend on the President's occupancy of the Office of the President and could arise whatever job he might hold.  Absolute presidential immunity applies only in cases for which liability is premised on presidential status or acts within the outer perimeter of presidential responsibility.  Still, the Supreme Court has somewhat obliquely hinted at the possibility that the President may always have the right to remove cases out of state court.  *See Jones*, 520 U.S. at 691 & n.13 (citing § 1442 and noting that "any direct control by a state court over the President . . . may implicate concerns" under the Supremacy Clause, U.S. Const. art. VI, cl. 2).  It is unnecessary, however, to broach that question here given the clear dependence of Plaintiff's claim on President Trump's alleged presidential actions and status.

### ii.     Supremacy Clause Preemption

President Trump's notice of removal identified a second defense independently sufficient to support jurisdiction: the Constitution prohibits states and localities from making it "unlawful" for federal officers to engage in their federal occupation without satisfying local legal requirements. Notice of Removal ¶¶ 21, 23 (quoting *Acker*, 527 U.S. at 432). Plaintiff advances no argument against this defense, nor could it. Just as the Supremacy Clause justified removal in the *Acker* case, which Plaintiff barely gives a passing mention, Remand Mem. 7-8, it defeats remand here.

In *Acker*, Alabama had given its municipalities authority to impose certain "license or privilege" taxes, and Jefferson County used this authority to impose "a license or privilege tax on persons engaged in any vocation, occupation, calling or profession in [the] County" who were not already obligated to pay a license or privilege tax to Jefferson County or Alabama. 527 U.S. at 428. The county's ordinance expressly "declare[d] it 'unlawful . . . to engage in' a covered occupation without paying the tax." *Id.* Two federal judges refused to pay this tax, and the county brought collection suits against them in local small claims court. *Id.* at 429. The judges removed the cases to federal district court under § 1442. *Id.*

The Supreme Court held that removal was proper even though it ultimately disagreed with the judges' defense on its merits. Underscoring the breadth of the statute, the Court unanimously found the defense colorable. *Id.* at 431. According to the Court, "[t]he essence of the judges' colorable defense [was] that Jefferson County's Ordinance expressly declare[d] it 'unlawful' for them to 'engage in [their] occupation' without paying the tax, and thus subject[ed] them to an impermissible licensing scheme." *Id.* at 432 (citation omitted). As many of the Supreme Court's cases hold, the Constitution's Supremacy Clause, U.S. Const. art. VI, cl. 2, prohibits states and localities from directly regulating the federal government and its

9

instrumentalities in that way absent express congressional approval. *E.g.*, *Hancock v. Train*, 426 U.S. 167, 178-79 (1976); *Sperry v. Florida ex rel. Fla. Bar*, 373 U.S. 379, 385 (1963); *Johnson v. Maryland*, 254 U.S. 51, 56-57 (1920); *see also Jones*, 520 U.S. at 691 n.13 ("'[A]bsent explicit congressional consent no state may command federal officials . . . to take action in derogation of their . . . federal responsibilities.'" (quoting Laurence H. Tribe, *American Constitutional Law* 513 (2d ed. 1988))). *See generally* Laurence H. Tribe, *American Constitutional Law* § 6-33, at 1220-25 & n.4 (3d ed. 2000) (discussing this doctrine under the rubric of "federal preemption" or "intergovernmental immunity").[4]

This case presents the same constitutional problem. On Plaintiff's view of D.C. law, it is unlawful for the President to occupy his Office unless he rearranges his business holdings in a way that comports with the requirements allegedly imposed by D.C.'s common law of unfair competition. That is again why the Complaint disavows "any legal basis to complain about" the President's pre-Inauguration holdings, Compl. ¶ 31, why the Complaint requests an injunction ordering a sale or shuttering of the Hotel or the President's resignation from Office, *id.* ¶ 42, and why even now Plaintiff concedes that it "would no longer have a valid claim for injunctive relief" if the President were not in Office, Remand Mem. 14. The Complaint's contention that President Trump's Presidency is unlawful according to local legal requirements presents no less a colorable defense than in *Acker*.

In fact, this case presents a much stronger defense than the one that justified removal in *Acker*. While the Supreme Court recognized that a state, "of course, cannot make it unlawful to carry out the duties of a federal office without local permission," *Acker*, 527 U.S. at 440-41, it

---

[4] The D.C. Circuit has held that the Supremacy Clause imposes the same restrictions on the District of Columbia. *See Doe v. Stephens*, 851 F.2d 1457, 1465 (D.C. Cir. 1988); *Don't Tear It Down, Inc. v. Pa. Ave. Dev. Corp.*, 642 F.2d 527, 534-35 (D.C. Cir. 1980).

also recognized that the Constitution permits incidental and indirect state and local tax burdens on federal employees, so long as they do not discriminate against federal employees, *id.* at 436-37.  More to the point, Congress had passed a statute expressly consenting to nondiscriminatory local taxation of federal employees' pay.  *Id.* at 437 (citing 4 U.S.C. § 111).  And in practical operation, Jefferson County's tax actually "serve[d] a revenue-raising, not a regulatory, purpose," making its "unlawful . . . to engage in" language, at worst, an "incautious" overstatement.  *Id.* at 440.

None of these features helps Plaintiff.  Here there is no congressional consent, and Plaintiff's conception of D.C. law would serve a clear regulatory purpose (were it actually D.C. law) by actually prescribing conditions that a President must satisfy to lawfully hold that Office.  But it is beyond dispute that states and other local governments lack any authority "to establish qualifications for the office of President."  *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 861 (1995) (Thomas, J., dissenting); *accord id.* at 803-04 (majority opinion).

Once again, President Trump has raised not just a colorable defense, but a meritorious one.  *See* Trump Mot. to Dismiss Mem. 7-9.

### B.   This Case Bears a Sufficient Nexus to President Trump's Federal Office

While *Acker*'s first requirement for removal—the colorable defense requirement—derives from the constitutional minimum for "arising under" jurisdiction, U.S. Const. art. III, § 2, cl. 1, its second "nexus" or "causal connection" requirement derives from the specific language of § 1442.  At the time of *Acker*, the statute required that the suit be "*for* a[n] act under color of office."  527 U.S. at 431 (quoting 28 U.S.C. § 1442(a)(3)).  The dissenters objected to removal on the ground that in light of this language the collection lawsuit lacked a sufficient nexus to the defendants' federal office: the suit was "for" refusal to pay a tax, in the dissent's view, not "for" exercising a federal office.  *Id.* at 444-45 (Scalia, J., concurring in part and dissenting in part).

But the *Acker* majority rejected the dissent's restrictive interpretation of the statute's "for a[n] act under color of office" phrase. *Id.* at 432-33 (majority opinion). The majority determined that it should "credit the judges' theory of the case for purposes of both elements of [the] jurisdictional inquiry"—the "colorable" element and the "nexus" element—and concluded that the judges' holding of federal office provided a sufficient nexus because that was part of "[t]he circumstances that gave rise to the tax liability." *Id.* at 432-33. Because the circumstances giving rise to this lawsuit include the President's entering Office (*see* Compl. ¶ 31), the majority's approach in *Acker* likewise supports a sufficient nexus in this case.

Since *Acker*, moreover, Congress has taken steps to make the nexus requirement even more generous to federal officers. It passed the Removal Clarification Act of 2011, Pub. L. 112-51, 125 Stat. 545, inserting the words "or relating to" into the statute. Now § 1442(a)(1) merely requires that lawsuit be "for *or relating to* any act under color of [the defendant's] office." (emphasis added). Federal appellate courts have noted that this change broadens the statute's right of removal even beyond the broad right recognized in *Acker*. *In re Commw.'s Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 470-72 (3d Cir. 2015); *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1144 & n.8 (11th Cir. 2017); *Zeringue*, 846 F.3d at 793. And they also note the Supreme Court's recognition, in another setting, that "[t]he ordinary meaning of ['relating to'] is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992). Hence it is now "sufficient for there to be a 'connection' or 'association' between the act in question and the federal office."

*Commw.'s Motion*, 790 F.3d at 471; *accord Caver*, 845 F.3d at 1144; *see also Zeringue*, 846 F.3d at 793.[5]

Here again, Plaintiff makes no effort to show that President Trump's removal falls short of the governing standard, nor could it. As discussed above, the Complaint alleges numerous acts under color of Presidential Office and makes clear that this suit and Plaintiff's claim "relat[e] to" those acts by making them part of the Complaint's basis for imposing liability. And the Complaint acknowledges that the President's alleged conduct would not be actionable *but for* his being President. Compl. ¶ 31; *see also* Remand Mem. 6, 14. These allegations unquestionably show a "'connection' or 'association'" between this suit and the President's Office. *Commw.'s Motion*, 790 F.3d at 471.

## II. Plaintiff's Retreat from the Complaint's Allegations Cannot Defeat Removal.

Given that the Complaint's (baseless) allegations easily clear the low bar for federal officer removal, it is perhaps not surprising that Plaintiff tries to flee from those allegations in seeking remand. For example, having alleged specific acts by the President to try to support its unfair competition claim, Compl. ¶ 20(b), Plaintiff now renounces those allegations to oppose removal, Remand Mem. 9 n.4. Having alleged that "lobbyists, foreign governments, and governmental contractors" may "gain influence or advantage" by patronizing the Hotel, Compl. ¶ 29, Plaintiff now says this Court should presume President Trump will not use his Office to benefit Hotel patrons, Remand Mem. 9. And having alleged that it "does not object to, nor . . . assert any legal basis to complain about," Defendants' pre-Inauguration business arrangements,

---

[5] The 2011 Act's legislative history further underscores the breadth of the current version of the statute: the purpose of the amendment was "to ensure that any individual drawn into a State legal proceeding based on that individual's status as a Federal officer has the right to remove the proceeding to a U.S. district court for adjudication." H.R. Rep. No. 112-17, pt. 1 (2011), reprinted in 2011 U.S.C.C.A.N. 420, 420.

13

Compl. ¶ 31, Plaintiff now claims the President's supposedly wrongful act occurred before he became President and bears little connection to his Presidency, Remand Mem. 6—even though the relief the Complaint seeks potentially includes the President's *resignation*, Compl. ¶ 42.

The Court should reject Plaintiff's efforts to beat a hasty retreat from its Complaint. Plaintiff's post-removal assertions cannot erase the Complaint's various allegations that President Trump and his White House staff are using the Office of the Presidency to benefit the Hotel and its patrons. *See id.* ¶¶ 2, 18, 20, 29. If those allegations supported this Court's jurisdiction when President Trump filed his notice of removal, the Court cannot lose jurisdiction based on what the Plaintiff says in seeking remand—and that includes promises to file an amended complaint. *E.g.*, *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 265 (5th Cir. 1995) ("[R]emoval jurisdiction should be determined on the basis of the state court complaint at the time of removal, and . . . a plaintiff cannot defeat removal by amending it."); *Jamison v. Wiley*, 14 F.3d 222, 239 (4th Cir. 1994) ("[T]he jurisdiction of the federal courts over a properly removed action will not be defeated by later developments in the suit." (citation omitted)); *see also* 16 *Moore's Federal Practice* § 107.151[2][c] (2017) ("Removability is ordinarily determined as of the date the notice of removal is filed."). No other rule would make sense when removal is based on the federal officer's defense and the federal officer has nothing but the complaint's allegations from which to predict his defense.

Nor may Plaintiff avoid its own allegations by observing that the President (or his attorneys) disputes them. *See* Remand Mem. 9. "It was settled long ago that the federal officer, in order to secure removal, need not admit that he actually committed the charged offenses." *Willingham*, 395 U.S. at 408. On the contrary, affording federal-officer defendants "the

14

opportunity to present their version of the facts to a federal, not a state, court . . . is exactly what the removal statute was designed to accomplish." *Id.* at 409.

## CONCLUSION

For all these reasons, Plaintiff's motion to remand should be denied.

Dated: June 1, 2017                           Respectfully submitted,

/s/ Jason R. Scherr

Eric W. Sitarchuk*
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
T. 215.963.5000
eric.sitarchuk@morganlewis.com

Allyson N. Ho (DC Bar No. 477589)
MORGAN LEWIS & BOCKIUS LLP
1717 Main Street, Suite 3200
Dallas, TX 75201
T. 214.466.4000
allyson.ho@morganlewis.com

Fred F. Fielding (DC Bar No. 99296)
Jason R. Scherr (DC Bar No. 466645)
Michael E. Kenneally (DC Bar No. 1025767)*
MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T. 202.739.3000
fred.fielding@morganlewis.com
jr.scherr@morganlewis.com
michael.kenneally@morganlewis.com

**Counsel for Defendant Donald J. Trump**

*U.S. District Court application pending*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on this 1st day of June, 2017, a copy of the foregoing Memorandum of Points and Authorities was served on counsel of record through this Court's ECF filing system.

/s/ Jason R. Scherr
Jason R. Scherr
