**UNITED STATE DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **K&D, LLC t/a CORK,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 17-731 (RJL) |
| **TRUMP OLD POST OFFICE, LLC** | * | |
| **et al.** | * | |
| Defendants. | * | |
| *       *       *       *       *       *       * | | |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFF'S MOTION TO REMAND CASE TO D.C. SUPERIOR COURT**

**(ORAL ARGUMENT REQUESTED)**

This Reply Memorandum, in support of Plaintiff's Motion to Remand the case to the D.C. Superior Court, responds first to the Opposition filed by defendant Donald Trump and then to the separate Opposition filed by Defendant Trump Old Post Office ("OPO").

The heart of the difference between Defendant Trump and Plaintiff on his removal under Section 1442(a)(1) is the meaning and application of a single word: "act." The operative language allows the President (and other federal officers) to remove a case from state court when that person is sued "for or relating to any act under color of such office." Plaintiff's Complaint, however, does not seek to impose liability on Defendant Trump for any "act" that he has undertaken since he became President. Indeed, as Plaintiff shows below, the Complaint neither alleges, nor does Plaintiff's cause of action depend on, any act by Defendant Trump, taken in his capacity as President, that gives rise to, or forms the basis of, his liability to Plaintiff, let alone one for which he has even a colorable claim of Presidential immunity.

Although Defendant Trump recognizes that Section 1442 removal is permitted only in order to allow federal officers to assert colorable federal defenses in federal not state court, he

takes a much broader (and, ultimately, indefensible) view of that provision.  According to

Defendant Trump, immunity applies to him because of his status as President, with *no apparent

limits*. In particular, he fails to address in a meaningful way with *any* of the removal

hypotheticals on page 10 of Plaintiff's Memorandum in Support of the Motion to Remand.

Furthermore, none of the relief that Plaintiff seeks would in any way interfere with Defendant

Trump's ability to carry his duties as President; to the contrary, the relief would only affect his

financial interests arising from his personal business activities, which are not protected by

Presidential immunity.

Defendant OPO's opposition is also without merit in arguing that Plaintiff's non-federal

unfair competition claim is a federal cause of action in disguise.  It reaches this conclusion on the

ground that the quotation of Section 37.19 of the lease between Defendant OPO and the General

Services Administration transforms what is otherwise a claim arising under the laws of the

District of Columbia into a claim arising under federal law, although it identifies no applicable

federal substantive law. Whether, as Defendant OPO contends, it is in full compliance with the

lease or not, does not create a federal cause of action or even bear on the validity of Plaintiff's

non-federal claim. Section 1331, defendant putative OPO's jurisdictional hook, requires much

more than a citation to a lease – a contractual agreement – with a federal agency to transform a

non-federal claim into one arising under federal law.  To the extent that Defendant OPO argues

that the relief Plaintiff seeks is barred by federal law, which would be a claim of preemption, that

is an affirmative defense and not the basis for a claim under Section 1331.

## **ARGUMENT**

### I.   **DEFENDANT TRUMP HAS NO COLORABLE FEDERAL DEFENSE RELATED TO THE CONDUCT AT ISSUE HERE.**

The mere fact that Defendant Trump has *raised* a claim of Presidential immunity is not enough to justify removal.  Section 1442 removal cannot be based on the status of the defendant alone, as contrasted with removal under Section 1441(a), and such jurisdiction-granting provisions as Section 1332 (diversity of citizenship) and Sections 1345 & 1346 (United States as party). Thus, as is clear from <u>Mesa v. California</u>, 489 U.S. 121, 133 (1989), the fact that Defendant Trump is a federal officer or even President of the United States is not enough for removal.  He must, in the words of Section 1442(a)(1), be specifically sued "for or relating to any act under color of such office." Moreover, the same "any act" phrase is also included in subsections (3) & (4) of Section 1442(a), which cover removal by officers in the other two branches of the federal government, underscoring the proposition that Section 1442 focuses on the "acts" of federal officers, not their status as such.

In the case principally relied on by Defendant Trump, <u>Nixon v. Fitzgerald</u>, 457 U.S. 73l (1982), the act at issue was giving the direction to fire the plaintiff Fitzgerald, which – as an "act under color of such office" – clearly would have been a basis for removal had the case not been filed in federal court.  The fact that the plaintiff alleged the firing was illegal would have made no difference to removal, nor did it help plaintiff on the merits.  The key question in removal situations is whether there is an act of a federal official regarding which the plaintiff relies to support the complaint and whether the federal officer has a colorable claim that the specific act is subject to a defense of official immunity.

The principal reason that removal by Defendant Trump is improper here is that Trump fails to identify a single act that he has taken as President that forms the basis of Plaintiff's unfair

competition claim in this case, let alone any act taken "under color of [his] office," *i.e.,* an act for which he can claim official immunity.  As discussed in our opening memorandum, Plaintiff's grievance here is that Defendant Trump failed to divest himself of all economic interest in the Hotel *before* he became President at noon on January 20, 2017.  Defendant Trump does not contend that he had any official immunity before he took his oath of office, and thus, on its face, his failure to divest before he became President cannot create immunity.  To be sure, a court could later rule – as a matter of District of Columbia unfair competition law – that the failure to divest is not sufficient to create a claim under District of Columbia law, but such a ruling would not derive from Defendant Trump enjoying any pre-Presidential immunity for actions relating to his private business affairs.

Apparently recognizing the need to identify some act alleged in the Complaint that might create official immunity, Defendant Trump's Opposition grasps at proverbial straws.  Defendant Trump focuses primarily on the allegations in paragraph 20(b), that President Trump exited the motorcade heading to the White House after being sworn in, and paragraph 18, that White House staff and his family have been promoting the Hotel.  Those allegations, and the others in his Memorandum, fail to justify removal.

First, to come within subsection 1442(a)(1), Defendant Trump must for sued "for or relating to [the] act" to which he points.  But Plaintiff does not claim that stepping out of a motorcade after the Inauguration gave rise to a claim of unfair competition; this is fundamentally different, for example, than if the President had stepped out of his motorcade and accidently collided with a well-wisher.  Thus, Plaintiff's claim remains the same, as a matter of District law, without that allegation; hence the required connection between an act of a federal officer and Plaintiff's claim, which is a necessary element of Section 1442 removal, is lacking.  It may be as

an evidentiary matter – whether the admitted fact that he exited his automobile in front of the Trump Hotel would somehow be considered an official act  – it could not be mentioned in a court proceeding.  In that case, a court might exclude it from trial.  But that is a far cry from concluding that the passing reference to this post-inaugural event forms the basis of Plaintiff's claim of unfair competition.

To put this minor matter to rest, Plaintiff is willing to amend its complaint to delete any reference to the inaugural motorcade to enable the Court to focus on what is really at stake. Plaintiff does not disagree that the Court must assess removal on the basis of the facts at the time of removal.  However, as Plaintiff pointed out in its opening memorandum (at 11), there must be some basis in the complaint for federal court subject matter jurisdiction.  While that can be supplied by an official immunity defense of a federal officer, defendant must identify some official federal act in dispute.  If this motorcade exit represents Defendant Trump's closest analogy to an official act, and if the complaint were amended to delete it, there would be no federal defense and no remaining basis for subject matter jurisdiction; thus, remand would be required under Section 1447(c): "If at any time before final judgment, it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

The second allegation, that White House staff and Trump family members have been promoting the Trump Hotel, provides no greater basis for removal, and perhaps less.  For one thing, this allegation does not claim that these promotion activities were undertaken at the urging of Defendant Trump, which would, of course, be inconsistent with his public promises not to mix his presidential duties with his private economic interests.  Since these allegations do not include acts by Defendant Trump, the Court need not question in what capacity they were carried out or whether they were proper, let alone how they relate to the necessary elements of a claim of unfair

competition under District of Columbia law.  And, of course, Plaintiff's action here does not seek to impose liability on White House staff for those actions. Hence, there is no need to consider what immunity, if any, they would have or what the substantive claim against them might be.

Defendant Trump's Memorandum (pages. 6-7, 14) also cites allegations in the Complaint (¶¶ 18, 29) that potential customers of Plaintiff may perceive that they will benefit in their dealings with Defendant Trump as President by patronizing the Hotel and restaurant.  Again, that allegation does not point to any act by Defendant Trump, but only the perceptions or hopes of third parties who are not even part of the Trump Administration.  Again, Plaintiff is not challenging any decision – however appropriate or inappropriate – made by President Trump that might follow from any *quid pro quo* or general appreciation he might have for those who patronize his Hotel.  More importantly, any such Presidential decisions or action, unlike the unfair competition claim here, would be far more amenable to protection through Presidential immunity.

Defendant Trump also cites Paragraph 20(d) of the Complaint that references his promotion of the Hotel with a Member of the House of Representatives.  The complaint did not specify that the promotion took place before President Trump was inaugurated, when he lacked official immunity.  Whether the President's immunity would extend to similar conduct after his inauguration on January 20, 2017, need not be decided.  Finally Defendant Trump suggests that Plaintiff is basing its claim on his Inauguration itself (Defendant Trump's Memorandum, p. 7). Plaintiff agrees that *if* liability were based on the President's swearing-in, that would raise at least a colorable immunity question.   But Plaintiff cites the Inauguration only to demarcate the time at which the unfair competition began.  Despite Defendant Trump's effort to obfuscate the issues, Plaintiff asserts that the critical causal event was Defendant Trump's failure – prior to that

date – to divest (as instructed by the U.S. Office of Government Ethics) or take appropriate steps to prevent the unfair competition from arising once Defendant Trump became President.

Defendant Trump inappropriately places substantial reliance on <u>Jefferson County, Ala v. Acker</u>, 527 U.S. 423 (1999), to support removal.  The operative facts in that case are readily distinguishable.  Jefferson County imposed a licensing fee on certain occupations, including law, and the County construed that to apply to the plaintiffs' occupation – in that case, federal judges.  Under the ordinance, it was "unlawful" for any person to engage in his or her occupation without paying the fee.  The judges contended that the County was seeking to prevent them from carrying out their federal positions by conditioning their right to be federal judges on the payment of the fees.  The County disagreed and sued the judges in the local court system.  The judges removed under Section 1442(a)(3), the judicial analog to the removal provision on which Defendant Trump relies.

Because the propriety of removal was contested and jurisdictional in <u>Acker</u>, the Supreme Court reviewed it, along with the merits and another procedural defense raised by the County.  In upholding removal, as Defendant Trump recognizes (Defendant Trump's Memorandum, p.9), the Court focused on the portion of the law that made the failure to pay "unlawful."  The defendant judges read that provision as creating liability for carrying out their official duties as federal judges without paying the licensing fee. Because that failure was "unlawful," they feared that the County might seek an injunction against them, or perhaps bring criminal charges, if they failed to pay.  No one doubted that deciding cases and issuing orders were "acts" or official duties of federal judges. Moreover, there was no dispute that, if the County had sought to enjoin them from doing what federal judges do until they paid the licensing fees, they would have been entitled to remove that injunction action to federal court (where they almost certainly would have

enjoyed immunity if a state or county tried to prevent them from doing their federal jobs.)  Here, contrary to Defendant Trump's claim (Memo p. 2), Plaintiff is not relying on "D.C. common law [to] directly regulate the President of the United States, as such." Nor does Plaintiff contend that his "Presidency is unlawful" (Defendant Trump's Memorandum, p. 10) based on the District's law of unfair competition. All that Plaintiff asks is that Defendant Trump comply with the laws of the District of Columbia, just as anyone else must do within the territorial limits of the District.

Defendant Trump's basic problem derives from the inability to point to any act that Plaintiff alleges he has taken as President that will give rise to his liability for engaging in unfair competition.  Nor can he show how the injunction that Plaintiff seeks will preclude him from carrying out his duties as President, which might bring him within the holding of Acker.

On the latter point, Defendant Trump seems to read the Complaint as essentially forbidding him from continuing as President so long as he retains an economic interest in the Hotel.  That is not what the Complaint says, nor does it reflect the relief that Plaintiff requests. Paragraph 42 states the obvious: if Defendant Trump resigned as President, or if the case lingered beyond the period during which he was elected to serve as President, Plaintiff's claim would expire.  But the fact that Defendant Trump currently serves in the office does not make his tenure "unlawful" in the manner of the ordinance in Acker.  And, once again, Plaintiff does not suggest that any court, federal or state, could order a President to resign or enjoin him or her from continuing in office based on a claim under a state law.

Another problem with Defendant Trump's immunity claim is his citation to the "outer perimeter" language from Fitzgerald. By definition, all perimeters have areas outside them.  Yet Defendant Trump identifies no act that would, should, or could be taken during his term of office

that would fall outside that perimeter.  His only effort in that regard, in note 3, attempts to respond to Plaintiff's examples of non-removable cases that would be covered by Defendant Trump's misunderstanding of Section 1442(a) in our initial Memorandum (Defendant Trump's Memorandum, p. 10).  As Plaintiff argued there, if Defendant Trump's wife insisted that she would divorce him if he did not resign as President and return to New York, he would have no colorable immunity defense to her divorce action and no basis for removing it to federal court. Nor would that create any different kind of impermissible choice than the kind that Defendant Trump complains he faces (*Id.*, p. 8) if Plaintiff prevails and he must give up his interest in the Hotel or no longer serve as President. The same is true if Defendant Trump failed to pay his lawyers in this case, and they sued him in a local court. He surely could not seek removal and claim immunity, even if all of his attorneys' work in the case related to raising a federal immunity defense.

These are not impermissible choices because Presidents are still subject to all laws of general applicability.  Official immunity only protects Presidents from laws that impede their duties as President, which the law of unfair competition does not do.  Defendant Trump's nonresponsive answer to these and other examples is that:

> Several, if not all, of these examples involve assertions of liability of different types that would *not* depend on the President's occupancy of the Office of the President and could arise whatever job he might hold.

Defendant Trump's Memorandum, p. 8n.3.  While this is correct, the observation leads to a grant, not a denial, of Plaintiff's Motion to Remand. Plaintiff's claim of unfair competition is not tied solely to the status of Defendant Trump as President.  Plaintiff would assert the same claim if Defendant Trump had been elected to Congress, or if the Mayor or a Member of the City Council obtained an ownership interest of the Hotel.  Similarly, if another plaintiff filed a

complaint against the Hotel and Defendant Trump, alleging an attempt to monopolize, the President could not defend on the ground that he was immune, even if he was also the person with the dominant economic interest in the Hotel.

Ultimately, not *everything* an individual does during his or her service as President creates a colorable federal immunity that entitles that individual to remove the case to federal court.  Official immunity does not equal absolute sovereign immunity.  While the President cannot be sued personally for wrongs committed as part of his Presidential duties during his term of office, there are limits to what are Presidential – and not personal – activities.  Indeed, as Exhibit A to Plaintiff's initial Memorandum shows, Defendant Trump, when attempting to comply with federal ethics standards, seeks to draw a clear line between his Presidential duties and his private interest, further emphasizing that he recognizes that not everything he does is covered by Presidential immunity. Thus, Defendant Trump errs in asserting that Presidential immunity bars the Plaintiff's claim because immunity "depends on the President's *status* as President (p. 7)."  Rather, Defendant Trump's immunity requires a Presidential act, not the President's actions as a private citizen, be the basis of Plaintiff's claim. Indeed, if Defendant Trump were correct about the breadth of Presidential immunity, President William Clinton could have prevailed on that basis if Monica Lewinsky had sued him for his sexual advances toward her in the oval office.

Nor does Plaintiff argue that a federal officer must win his or her immunity claim to be entitled to removal under Section 1442(a).  However, the federal officer must point both to an act while in office that is the basis of a Plaintiff's complaint *and* that there is a colorable claim of official immunity for that act because the act relates to the individual's official, not personal, duties.  Defendant Trump has pointed to no act relied on by Plaintiff as a basis for its claim that

he has undertaken while in office.  Nor has Defendant Trump shown how any acts that took or even might have taken regarding the Hotel had anything to do with his official duties, in contrast to his personal, his family's, or his business' economic interests.  Accordingly, the attempted removal by Defendant Trump fails to meet the requirements of Section 1442(a), and remand is required.

## II.    PLAINTIFF'S CLAIM DOES NOT ARISE UNDER FEDERAL LAW

Defendant OPO makes no claim of federal immunity, although it supports that of its co-defendant.  Its argument is that Plaintiff's claim, while expressly relying exclusively on District of Columbia common law, is, in reality, a claim based on federal law.  OPO, however, fails to identify any federal law that provides for injunctive relief (or, for that matter, damages) based on the facts in this case or, more generally, on unfair competition.  That absence raises a red flag.

In the typical case where the Supreme Court has relied on this approach, the plaintiff *could have pled a clear federal cause of action*, but chose not to do so.  In those cases, plaintiffs chose not to plead the federal cause of action, either because of the limits or conditions under such law which the plaintiff wanted to avoid, Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning, 136 S. Ct. 1562, ___ U.S. ___ (2016) (reasons for avoiding federal court unstated, but intent is clear), or because the federal law would not entitle plaintiff to relief based on the relevant facts. Metropolitan Life Ins. Co. v Taylor, 481 U.S. 58 (1987)(common law claims preempted and district court ruled against plaintiff on federal claim).  Instead, Defendant OPO makes two arguments: (A) Plaintiff's claim *must* be a federal claim because it relies in part on Section 37.19 of the lease between OPO and the U.S. General Services Administration ("GSA"), and (B) the relief that Plaintiff seeks is precluded (or preempted) by GSA's (internal) conclusion that OPO is in full compliance with the lease.  Neither argument entitles Defendant OPO to remove this case.

11

### A.  *Section 37.19 Is Not Federal Law*

First, Defendant OPO does not suggest that Plaintiff has a valid claim based on the lease as a whole, or even under Section 37.19, under a third party beneficiary theory.  Indeed, it explains in detail why there is no such claim, and Plaintiff agrees.  Rather, OPO's argument appears to be that the Court will inevitably be required to interpret the lease, and, because the lease is governed by federal law, that must mean that Plaintiff's claim must be governed by federal law, and, in turn, removal under Section 1331 would be proper.  While Plaintiff does not dispute that the lease must be interpreted under federal law, the remainder of OPO's analysis is without merit.

The error of OPO's approach is apparent if one simply asks whether Plaintiff would have stated a federal claim if Section 37.19 were *not* in the lease, and Plaintiff made the same claim of unfair competition.  In other words, would the fact that the GSA lease for the Hotel created the factual basis that gave rise to a claim for unfair competition transform a claim under District of Columbia law into one under federal law?  The answer, of course, is "no."  Moreover, Defendant OPO cites no case that would support that proposition (nor is Plaintiff aware of any such precedent).  Plaintiff's claim might have been marginally weaker had the parties not agreed upon Section 37.19, but that would be because of requirements of District law, not as the result of any federal statute or common law.

Nor does Plaintiff's reference to Section 37.19 in the Complaint alter that conclusion. First, Section 37.19 is not "federal law" within the meaning of Section 1331.  It is not even law - a federal statute enacted by Congress, an administrative regulation, a GSA rule or policy, or any other kind of federal law. The language is simply one of many agreed-upon terms in a negotiated lease between a federal agency and a private company.   Second, plaintiff does not contend that

Section 37.19 provides a legal basis on which it can claim relief, such that proving a violation would entitle it to relief, or that proving compliance with it would entitle Defendant OPO to have plaintiff's claim dismissed on the merits.  Either way, it simply does not matter.  Plaintiff's reference to Section 37.19 cannot turn the claim into one arising under federal law.[1]

Third, Plaintiff cites Section 37.19 in support of its claim of unfair competition for another reason.  That section represents a recognition, by both defendants Trump and OPO, the private parties who negotiated and signed the lease, that it would be unfair to competitors of the Hotel if the Hotel were owned, in whole or significant part, by various elected officials including the President, Members of Congress, the Mayor, members of the Council of the District of Columbia, or even the non-voting Delegate to Congress, Eleanor Holmes Norton.  As Plaintiff will argue when the case reaches the merits, there would be no reason to include all of these officials in the prohibition on receiving benefits from the lease other than to protect competitors of the Hotel.  Indeed the parties to the lease understood, at the time they entered into their contractual agreement, that the Hotel could become the means by which persons interested in the business of either the federal or District government could ingratiate themselves with elected officials by conferring a financial benefit on those officials when they patronize the Hotel. Indeed, there is no doubt that, if the Mayor or a member of the Council had a similar significant beneficial interest in the Hotel, the same principle that Plaintiff relies on here (as to Defendant

---

[1] For the record, and because Defendant OPO makes much in its Opposition of its recent exchange with GSA about whether OPO was in compliance with Section 37.19, Plaintiff notes that, as an Executive branch instrumentality, GSA (and, more specifically, the acting GSA administrator) report(s) directly to President Trump.  Moreover, Plaintiff (like most attorneys and commentators), find GSA's recent analysis of Trump's compliance with Section 37.19 unsupportable.  Among other things, it is fanciful to suggest that, simply because President Trump will receive no money derived from the lease until he completes his service as President, he will receive no "benefits" from the lease as President.

Trump) would apply even if Section 37.19 had not been included in the lease.  Moreover, that principle would apply to other significant commercial properties in the District besides the Hotel if elected District officials had a beneficial interest in them, especially if the property prominently displayed the official's name.

The exhibits submitted by Defendant OPO in its Opposition helpfully reinforce this very conclusion.  Those include what are asserted to be the standard GSA lease forms (for much less complicated transactions than the one for the Hotel) in 1999 (Exhibit D) and the revised version in 2013 (Exhibit E).  Paragraph L in both forms provides as follows:

> L. No member of or delegate to Congress, or Resident Commissioner, shall be admitted to any share or part of the lease agreement, or to any benefit that may arise therefrom;  but this provision shall not be construed to extend to any corporation or company if  the agreement be for the general benefit of such corporation or company.

Several points about the standard lease confirm Plaintiff's understanding of the import of Section 37.19 in the context of its unfair competition claim.  First, the persons covered by paragraph L are not federal Executive Branch officials who might have an ability to control how GSA manages the lease. Members of Congress are included, which might suggest a concern over *indirect* interference by those Members with jurisdiction over GSA, but that is belied by the inclusion of all Members, as well as delegates and resident commissioners, who plainly have no vote or other ability to influence GSA.  Thus, Paragraph L appears to be exactly what Plaintiff contends Section 37.19 is: a common understanding that it is unfair for certain government officials to have beneficial interests in government leases.

Section 37.19 is a more tailored version of this understanding based on the location of the Hotel in downtown Washington D.C.  It adds the President and all elected District of Columbia officials (which includes the Attorney General since 2015) for whom ownership

interests in the Hotel would provide both political and financial benefits of the kind that the common law of unfair competition were designed to prevent.  No court need work through the interstices of the Hotel lease to see the direct relation between the obvious principle underlying Section 37.19 – confirmed by standard lease form Paragraph L– that it is unfair to competitors such as Plaintiff for elected officials to benefit from their financial interests in leases of government property in a location in which their authority runs.

Nor does Grable & Sons Metal Prods., Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308 (2005), relied on heavily by Defendant OPO, undermine this conclusion.  To be sure, in upholding federal question removal there, the Court ruled that there is no requirement under Section 1331 that there be a specific federal cause of action that would support the plaintiff.  However, in that case, the plaintiff's sole claim was that the prior sale of its property to satisfy a federal tax obligation to the Internal Revenue Service had been done in violation of a federal statute governing the terms and conditions of that sale. The Court upheld removal because the only questions in the case, as presented by plaintiff's complaint, involved federal tax law; hence the absence of an express federal cause of action there did not result in the legal issues having to be resolved by state court judges.  Plaintiff's claim here is based on District of Columbia law, and, as shown above, there is no need to interpret or apply any federal law. Grable, therefore, has no bearing on this case, and Defendant OPO's multiple quotations from it must be left to the very different context in which that case arose.

Bender v. Jordan, 623 F. 3d 1128 (D.C. Cir. 2010), is similar to Grable, and thus equally distinguishable.  The claim at issue there was for breach of contract, but the contract was based almost entirely on the rights and obligations created by a rule of a federal agency.  For that reason (and perhaps others which the Court of Appeals did not reach), after *sua sponte* raising

the jurisdictional question, the Court concluded that the federal courts had jurisdiction under Section 1331 because the claims of both parties would be resolved largely based on "a nearly pure issue of federal law." Id. at 1130.  The same reasoning applies to distinguishing District of Columbia v. Group Hospitalization and Medical Services, Inc., 576 F.Supp.2d 51 (D. D.C. 2008), in which the principal disputed issue was the meaning of the federal charter under which defendant operated, even though the claim was nominally based on District of Columbia law.

The other Supreme Court decision significantly relied on by Defendant OPO, Gunn v. Minton, 133 S. Ct 1059 (2013), also does not support removal.  There, a state law legal malpractice claim arose out of defendant's unsuccessful representation of the plaintiff in a patent suit.  Under 28 U.S.C. § 1338, the federal district courts have exclusive jurisdiction for cases arising under patent law, but the legal malpractice claim had been filed in Texas state court. That State's Supreme Court ruled that its courts had no jurisdiction over the malpractice claim, and the U.S. Supreme Court unanimously reversed.  It did so despite concluding that issues of federal patent law were both disputed and necessarily had to be decided in the case. Id. at 1065-66.  Here, as demonstrated above, there is no issue of federal law.  The court need not be familiar with, or apply any, federal law governing the Hotel lease to decide or resolve Plaintiff's unfair competition claim.  Hence, even the dicta in Gunn is irrelevant to the remand question here.

Plaintiff does not ask this Court to rule at this stage that it states a valid claim under District unfair competition law.  It only asks the Court to conclude that the inclusion of Section 37.19 in the Complaint cannot alone not make Plaintiff's a federal claim, rather than one arising under District of Columbia law.

### B.  Preemption Based on the Lease Does Not Satisfy Section 1331.

Defendant OPO's other argument is that, because the relief that Plaintiff seeks is precluded by a lease that is governed by federal law, removal under Section 1331 is proper.

16

Although Defendant OPO neglects to employ the preemption label, this argument is a poorly disguised effort to conceal that fact.

According to OPO, even if Plaintiff states a valid claim for unfair competition under District law, the federal law governing the lease would preclude any court from granting the relief requested (or presumably money damages if that was what Plaintiff had sought).  That is the standard language of preemption.  Plaintiff strenuously disagrees that the lease and/or federal law would preclude granting the injunctive relief that it seeks, but in any event, that issue is not before the Court on this Motion.

Defendant OPO's removal notice ignores crystal clear precedent that preemption, other than field preemption, is only an affirmative defense and not a basis for removal under Section 1441, on which it relies.  Caterpillar, Inc. v Williams, 482 U.S. 386, 393 (1987) explicitly states that " it is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the Plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue."  In Caterpillar, the Court discussed the exception for complete preemption due to the existence of a federal claim, but Defendant OPO does not suggest that the exception applies here. Indeed, even when the federal defense is the preclusive impact of a prior federal court decision, removal on that basis is improper.  Rivet v. Regions Bank of Louisiana, 522 U.S. 470 (1998).

Indeed, Defendant Trump recognized (on page 3 of his Memorandum at the end of the first paragraph under Section A) the distinction between removal by a federal officer defendant, relying on an affirmative defense under Section 1442, on which Defendant Trump alone relies, and removal based on a federal claim, which is the argument that Defendant OPO makes with

respect to the impact of Section 37.19.  The only place in Defendant OPO's Memorandum that the term preemption appears is on page 19, and that refers to the defense that Defendant Trump raises to support his removal under Section 1442, where removal is properly based on affirmative defenses.  Even though Defendant OPO steadfastly refuses to acknowledge its relief-based preemption argument, it is what it is.  Accordingly, Defendant OPO's argument cannot support removal.

The issue before the Court is not whether Defendant OPO has a valid preemption defense, but whether Congress has authorized it to remove this case to federal court based on its assertion of a federal preemption defense.  The answer to that question is plainly no, and Defendant OPO's attempted federal question removal on that basis must also be rejected.

## CONCLUSION

For the foregoing reasons and those stated in Plaintiff's motion and supporting memorandum, the motion to remand this case should be granted.

Dated:  June 7, 2017

Respectfully submitted,

| /s/ | /s/ |
|---|---|
| Scott H. Rome (D.C. Bar #476677) | Mark S. Zaid (D.C. Bar #440532) |
| (*Co-lead counsel*) | (*Co-lead counsel*) |
| Christopher LaFon (D.C. Bar #483740) | Bradley P. Moss (D.C. Bar #975905) |
| THE VERITAS LAW FIRM | MARK S. ZAID, P.C. |
| 1225 19th Street, N.W. | 1250 Connecticut Avenue, N.W. |
| Suite 320 | Suite 200 |
| Washington, D.C. 20036 | Washington, D.C. 20036 |
| (202) 686-7600 | (202) 454-2809 |
| srome@theveritaslawfirm.com | Mark@MarkZaid.com |

/s/
_____
Alan B. Morrison (D.C. Bar #073114)
Lerner Family Associate Dean for
Public Interest and Public Service Law
GEORGE WASHINGTON UNIVERSITY
LAW SCHOOL
2000 H Street, N.W.
Washington, D.C. 20052
(202) 994-7120
abmorrison@law.gwu.edu

*Counsel for Plaintiff K&D, LLC, t/a Cork*

## <u>CERTIFICATE OF SERVICE</u>

   I, Scott Rome, hereby certify that on this 7th day of June, 2017, a copy of the foregoing Plaintiff's Reply Memorandum in Support of Motion to Remand was filed with the Clerk of the Court for the United States District Court for the District of Columbia using the CM/ECF system, which will send notice and accomplish service of such filing to the following users:

Jason R. Scherr
Micheal E. Kenneally
Morgan Lewis & Bochius LLP

Eric Sitarchuk
Morgan Lewis & Bochius LLP

Allyson N. Ho
Morgan Lewis & Bochius LLP

*Counsel for Defendant Donald J. Trump*

Rebecca Woods
Seyfarth Shaw LLP

Ester Slater McDonald
Stephania Steward
Seyfarth Shaw LLP

*Counsel for Defendant Trump Old Post Office, LLC*

           /s/ Scott Rome