## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

K&D, LLC t/a CORK,

            Plaintiff,

    v.

TRUMP OLD POST OFFICE LLC; and
DONALD J. TRUMP,

            Defendants.

Case No. 1:17-cv-00731-RJL

Hon. Richard J. Leon

**ORAL ARGUMENT REQUESTED**

## STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT
## TRUMP OLD POST OFFICE LLC'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 1

FACTUAL BACKGROUND .................................................................................................... 3

    I.     OPO's Lease With the GSA ....................................................................................... 3

    II.    The GSA Determined that OPO Is in Full Compliance with the Lease ................ 4

    III.   The Complaint's Allegations ..................................................................................... 5

LEGAL STANDARD .............................................................................................................. 6

ARGUMENT ............................................................................................................................ 6

    I.     The Complaint Fails to State a Claim Because the Conduct Cork
        Complains of Is Not an "Unlawful Act" Under the D.C.'s Narrow Unfair
        Competition Law. ...................................................................................................... 7

    II.    The Complaint Fails to State a Claim Because Cork Cannot Sue in Tort to
        Enforce the GSA Lease ............................................................................................. 9

          A.   Cork Is Not a Party to the GSA Lease. ....................................... 10

          B.   Cork Is Not an Intended Third-Party Beneficiary of the
              GSA Lease. .................................................................................. 10

          C.   Cork Cannot Convert a Breach of Contract Claim Into a
              Tort Claim. ................................................................................... 12

    III.   The Complaint Fails to State a Claim Because Competition Aided by
        Prominence Is Not Legally Cognizable as Unfair Competition Under D.C.
        Law. .......................................................................................................................... 13

CONCLUSION ......................................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abhe & Svoboda, Inc. v. Chao,*
    508 F.3d 1052 (D.C. Cir. 2007) ............................................................................6

*Al-Aulaqi v. Panetta,*
    35 F. Supp. 3d 56 (D.D.C. 2014) ..........................................................................3

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..............................................................................................6

*B & W Mgmt., Inc. v. Tasea Inv. Co.,*
    451 A.2d 879 (D.C. 1982) ..................................................................................8, 9

*Beckett v. Air Line Pilots Ass'n,*
    995 F.2d 280 (D.C. Cir. 1993) ............................................................................12

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..............................................................................................6

*Bowhead Information Tech. v. Catapult Tech.,*
    377 F. Supp. 2d 166 (D.D.C. 2005) ....................................................................11

*Bus. Equip. Ctr., Ltd. v. DeJur-Amsco Corp.,*
    465 F. Supp. 775 (D.D.C. 1978) ...........................................................................7

*Camarda v. Certified Fin. Planner Bd. of Standards, Inc.,*
    672 F. App'x 28 (D.C. Cir. 2016) .........................................................................8

*DAG Enterprises, Inc. v. Exxon Mobil Corp.,*
    No. CV 00-0182 (CKK), 2001 WL 34778782 (D.D.C. Sept. 30, 2001) .................9

*E.E.O.C. v. St. Francis Xavier Parochial Sch.,*
    117 F.3d 621 (D.C. Cir. 1997) ..............................................................................3

*\*Econ. Research Servs., Inc. v. Resolution Econ., LLC,*
    208 F. Supp. 3d 219 (D.D.C. 2016) ....................................................................7, 9

*Edwards v. Aurora Loan Servs., LLC,*
    791 F. Supp. 2d 144 (D.D.C. 2011) ....................................................................12

*Furash & Co., Inc. v. McClave,*
    130 F. Supp. 2d 48 (D.D.C. 2001) .........................................................................7

*Jahanbein v. The Ndidi Condo. Unit Owners Ass'n, Inc.*,
    85 A.3d 824 (D.C. 2014) ...................................................................................11

*Kaempe v. Myers*,
    367 F.3d 958 (D.C. Cir. 2004) ........................................................................13

*Marshall Cnty. Health Care Auth. v. Shalala*,
    988 F.2d 1221 (D.C. Cir. 1993) ........................................................................6

*Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*,
    998 F.2d 1192 (3rd Cir. 1993) ...........................................................................3

*\*Ray v. Proxmire*,
    581 F.2d 998 (D.C. Cir. 1978) ...........................................2, 7, 8, 9, 13, 14, 15

*Richards v. Duke Univ.*,
    480 F. Supp. 2d 222 (D.D.C. 2007) ...................................................................6

*Rodriguez v. Lab. Corp. of AmericaHoldings*,
    13 F. Supp. 3d 121 (D.D.C. 2014) ...................................................................13

*Scanwell Labs., Inc. v. Thomas*,
    521 F.2d 941 (D.C. Cir. 1975) ...........................................................................7

*Unidisco, Inc. v. Schattner*,
    824 F.2d 965 (Fed. Cir. 1987)............................................................................7

*Ward v. D.C. Dep't of Youth Rehab. Servs.*,
    768 F. Supp. 2d 117 (D.D.C. 2011) ...................................................................3

*Washington Canoe Club v. D.C. Zoning Comm'n*,
    889 A.2d 995 (D.C. 2005) ...............................................................................10

**OTHER AUTHORITIES**

Callmann on Unfair Competition, Trademarks and Monopolies § 16:46, Standing
    to Sue (4th ed., 2014)......................................................................................10

Unfair Competition by Trump International Hotel,
    http://www.endtrumphotelunfaircompetition.com ...............................................5

U.S. General Services Administration, Electronic Reading Room, Old Post Office,
    Contracting Officer Letter (March 23, 2017),
    https://www.gsa.gov/cdnstatic/Contracting_Officer_Letter_March_23__2017_Red
    acted_Version.pdf .............................................................................................3

U.S. General Services Administration, Electronic Reading Room, Old Post Office
    Ground Lease, https://www.gsa.gov/portal/content/305477 .................................3

U.S. General Services Administration, Public Buildings Service, Washington,
D.C. (March 24, 2011), https://www.fbo.gov/spg/GSA/PBS/WPZ/NR-
73002105/listing.html ...................................................................................................3

Wall Street Journal, *D.C. Wine Bar's Lawsuit Targets Trump Hotel Lease*,
WSJ.com (March 9, 2017), https://www.wsj.com/articles/d-c-wine-bars-
lawsuit-targets-trump-hotel-lease-1489086725 ...........................................................5

Washingtonian, *This Is What Happens When You Sue the President* (May 15, 2017),
https://www.washingtonian.com/2017/05/15/this-is-what-happens-when-you-sue-
the-president..................................................................................................................5

* Authorities chiefly relied upon are marked with an asterisk.

Defendant Trump Old Post Office LLC ("OPO"), which operates the Trump International Hotel Washington, D.C. (the "Hotel"), submits this statement of points and authorities in support of its motion to dismiss the Amended Complaint (Dkt. No. 30) of Plaintiff K&D, LLC t/a Cork ("Cork" or "Plaintiff") with prejudice for failure to state a claim.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Rather than seeking redress of a genuine commercial dispute, Plaintiff Cork, owner of a Washington, D.C. wine bar, filed this lawsuit to obtain publicity and advance a political agenda. These motivations are apparent in the press conference Cork's principals held at the National Press Club to announce the suit and on the face of the complaint, which asks this Court to order the President of the United States to *resign* from office.

Cork's complaint is legally meritless.  The complaint alleges a single claim for unfair competition under District of Columbia common law.  Cork's principal allegation is that when Donald J. Trump became President, OPO breached a provision in its lease of the Old Post Office building with the U.S. General Services Administration (GSA).  Cork claims that as a result of this alleged breach, OPO somehow gained "unfair" competitive advantage over Cork's wine bar. The complaint, however, fails to state a valid claim for relief and must be dismissed.

*First*, the Court should dismiss the complaint because Cork fails to allege that OPO has engaged in any specific unlawful act against Cork that could support a legally-cognizable claim for unfair competition under District of Columbia law.  The tort of unfair competition is narrow. District of Columbia law prescribes only limited grounds on which the claim may rest.  Each of those grounds requires an unlawful act.  Cork's complaint fails to allege that OPO engaged in any specific unlawful act against Cork.  And a mere alleged breach of a commercial lease

restriction has never been found sufficient to constitute an unlawful act under the tort of unfair competition.

*Second*, even *if* OPO breached its lease (and it did not), Cork's claim also fails because it lacks standing to insert itself into the contractual relationship between the GSA and OPO.  The GSA determined OPO did not breach its lease and is fully compliant.  A lease restriction inures only to the benefit of the party to whom the obligation runs.  Thus, even if OPO breached a restriction in its lease with the GSA (and it did not), OPO is not answerable for the breach to anyone but the GSA.  Alleged "competitors," such as Cork, who are not party to the lease, have no right to enforce the lease even if they incidentally benefit from a lease restriction.  And a stranger to a contract cannot bring a *tort* claim to address an alleged breach of contract.

*Finally*, as Cork cannot rely on the GSA lease, its claim boils down to a mere gripe that it is somehow "unfair" (in the popular, not legal, sense of the word) for customers to voluntarily patronize the Hotel because of President Trump's celebrity appeal, name, prominence, or office. District of Columbia law is clear that such claim must fail.  The U.S. Court of Appeals for the D.C. Circuit has recognized that "financial success does not become unlawful simply because it is aided by prominence; nor could it be, without locking the famous out of the economy."  *Ray v. Proxmire*, 581 F.2d 998, 1003 (D.C. Cir. 1978).  A business's use of an individual's status in society, fame, or even ability to "open doors" simply does not constitute unfair competition.  *Id*. Thus, Cork's allegation that it is "unfair" for customers to patronize the Hotel because of the President's position or because the Hotel bears the name "Trump" is not legally actionable.

In sum, Cork's complaint fails to state a valid claim for relief.  OPO requests that the Court dismiss the complaint in its entirety.

## FACTUAL BACKGROUND

### I.     OPO's Lease With the GSA

This lawsuit concerns OPO's lease of the historic property located at 1100 Pennsylvania

Avenue NW, Washington, D.C., known as the Old Post Office Building.  *See* Am. Compl., ¶ 7.

In 2011, OPO bid to redevelop and operate the Old Post Office Building as a luxury hotel

in response to a GSA request for proposals.[1]  The GSA selected OPO to redevelop the building.

*See* Am. Compl., ¶ 7.  OPO entered into a 60-year ground lease with the GSA for the Old Post

Office Building ("GSA lease"), the operative lease, and began redevelopment.[2]  *See* Declaration

of Rebecca Woods ("Woods Decl."), Exh. A, pp. 1, 32; Am. Compl., ¶ 9.  In September 2016,

OPO opened Trump International Hotel, Washington, D.C. to the public.[3]  Am. Compl., ¶ 12.

---

[1] *See* Request for Proposals, Redevelopment of Old Post Office, Washington, D.C., March 24, 2011, U.S. General Services Administration, Public Buildings Service, available at: https://www.fbo.gov/spg/GSA/PBS/WPZ/NR-73002105/listing.html.

[2] Relevant excerpts of the GSA lease are attached to Woods Decl. as Exhibit "A."  The entire lease is available on GSA.gov at https://www.gsa.gov/portal/content/305477.  Under Rule 12(b)(6), the Court may consider documents incorporated by reference or relied on in a complaint, even if the defendant produces the documents.  *See Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011); *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997).  The Court may do so without converting the motion to dismiss into one for summary judgment.  *See Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 67-68 (D.D.C. 2014).  Cork's amended complaint incorporates the GSA lease by reference and relies on the lease.  *See* Am. Compl., ¶¶ 2, 9-11, 35-42.  Thus, the Court may consider the lease in ruling on this motion.

[3] Additional facts about the Hotel and GSA lease are contained in a March 23, 2017 determination letter attached in FOIA-redacted form to Woods Decl. as Exhibit "B."  The Court may consider letters from government agencies on a motion to dismiss without converting the motion to one for summary judgment.  *See Al-Aulaqi*, 35 F. Supp. 3d at 68.  Also, "judicial notice may be taken of public records and government documents available from reliable sources."  *Id.* at 67.  The March 23 Letter is an official government agency document provided by the GSA, a reliable source, and is available on GSA.gov at https://www.gsa.gov/cdnstatic/ Contracting_Officer_Letter_March_23__2017_Redacted_Version.pdf.   Thus, the Court may appropriately take judicial notice of the Letter.  *See Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1197 (3rd Cir. 1993) (holding that letter decisions of government agencies properly may be considered on a motion to dismiss).

**II.     The GSA Determined that OPO Is in Full Compliance with the Lease**

On January 20, 2017, Donald J. Trump became the 45th President of the United States.

Am. Compl., ¶ 31.  After President Trump took office, the GSA contacted OPO requesting its

position on the potential application GSA lease Section 37.19.  *See* Woods Decl., Exh. B. pp.

14-18 (GSA's February 10, 2017 letter to OPO).  Section 37.19 provides:

> No member or delegate to Congress, or elected official of the Government of the
> United States or the Government of the District of Columbia, shall be admitted to
> any share or part of this Lease, or to any benefit that may arise therefrom;
> provided, however, that this provision shall not be construed as extending to any
> Person who may be a shareholder or other beneficial owner of any publicly held
> corporation or other entity, if this Lease is for the general benefit of such
> corporation or other entity.

Woods Decl., Exh. A, p. 103.

In response, OPO outlined the compelling reasons, based on well-settled legal principles,

why it is in full compliance with Section 37.19.  *See generally* Woods Decl., Exh. B, pp. 19-34

(OPO's February 17, 2017 and March 20, 2017 letters to GSA).[4]

Thereafter, the GSA informed OPO by letter of its conclusion that OPO did not breach

the lease and is in "full compliance."  Woods Decl., Exh. B, pp. 2-12.  The GSA's Contracting

Officer stated: "Based on my review of the Lease, discussions with Tenant, and documents

submitted by Tenant, I have determined that Tenant is in *full compliance* with Section 37.19 and,

accordingly, the Lease is valid and in full force and effect."  *Id*., p. 2 (emphasis added).  The

GSA also issued an Estoppel Certificate, which states: "Landlord hereby finds that Tenant is in

---

[4] Section 37.19's restriction does not apply because it refers to a future event—the "admitting" of an elected official to the lease.  *See* Woods Decl., Exh. B, pp. 24-29, 31-33 (OPO's February 17 and March 20, 2017 letters to GSA).  Donald J. Trump was a private citizen when "admitted" to the lease and was never "admitted" to the lease as President; he was *already* a beneficial owner of the tenant OPO.  *See id*.  Also, the restriction contains an exception for any person who is a beneficial owner of an entity where the lease is for the benefit of that entity. This exception applies to President Trump who, at most, is a beneficial owner of OPO.  *See id*.

*full compliance* with Section 37.19 and, accordingly, the Lease is valid and in full force and effect as of the date hereof. … Landlord acknowledges that this Estoppel Certificate and the statements therein may be *conclusively relied upon by Tenant*." *Id*., pp. 10-12 (emphases added). The GSA and OPO conclusively determined that Donald J. Trump's assumption of the Office of the President does not constitute a breach of lease Section 37.19. *Id*., pp. 2-12.

## III.   The Complaint's Allegations

Plaintiff Cork operates a restaurant and bar in Washington, D.C. called Cork Wine Bar. Am. Compl., ¶ 3. Cork filed this lawsuit naming both OPO and President Donald J. Trump as defendants.[5] The complaint alleges a single tort claim for unfair competition under District of Columbia common law. *See* Am. Compl., ¶¶ 1, 30-42.

The "unfair competition" alleged in Cork's complaint is vague. Charitably read, however, the complaint appears to assert two theories. First, Cork appears to allege that when Donald J. Trump became President, OPO breached Section 37.19 of the GSA lease. Cork claims OPO thereby gained commercial advantage over the Hotel's competitors, including Cork, and created "unfair competition." *See* Am. Compl., ¶¶ 2, 31-35. Second, Cork appears to allege that customers voluntarily patronize the Hotel because of President Trump's office, prominence, and the customers' "perception" that doing so would be somehow advantageous in dealings with the U.S. government. Cork vaguely speculates this may give OPO's food and beverage venues an

---

[5] Cork's publicity-seeking and political motivations for filing this lawsuit are clear. Cork's principals publicized the suit at the National Press Club. *See D.C. Wine Bar's Lawsuit Targets Trump Hotel Lease*, March 9, 2017, https://www.wsj.com/articles/d-c-wine-bars-lawsuit-targets-trump-hotel-lease-1489086725. Cork and its counsel have also sought publicity through a website, http://www.endtrumphotelunfaircompetition.com. Finally, Cork's owners even admit their business success has not changed since President Trump took office. *See This Is What Happens When You Sue the President*, May 15, 2017, https://www.washingtonian.com/2017/05/15/this-is-what-happens-when-you-sue-the-president ("Business is pretty much the way it's always been"). This case is not a legitimate commercial dispute.

"unfair" advantage over Cork.  *See* Am. Compl., ¶¶ 18-19, 22-23, 29.  Under this second theory, Cork appears to allege it is "unfair" for OPO to even operate a hotel bearing the name "Trump" while Mr. Trump is President.  *See* Am. Compl., ¶¶ 20(c), 34.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint that fails to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[C]onclusory statements" and "naked assertion[s]" are properly ignored in this analysis.  *Id.*  A court also need not accept as true a plaintiff's legal conclusions.  *Id.* at 678-79.  Nor must it "accept asserted inferences or conclusory allegations that are unsupported by facts set forth in plaintiff's complaint."  *Richards v. Duke Univ.,* 480 F. Supp. 2d 222, 235 (D.D.C. 2007); *Marshall Cnty. Health Care Auth. v. Shalala,* 988 F.2d 1221, 1225 (D.C. Cir. 1993).  Factual allegations must raise more than a speculative right to relief.  *Twombly*, 550 U.S. at 555-56.

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice.  *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

## ARGUMENT

Cork's complaint purports to state a single claim for unfair competition under the District of Columbia's common law.  Am. Compl., ¶¶ 1, 40.  The complaint, however, fails to state a valid claim upon which relief may be granted and must be dismissed under Rule 12(b)(6).

I.      **The Complaint Fails to State a Claim Because the Conduct Cork Complains of Is Not an "Unlawful Act" Under the D.C.'s Narrow Unfair Competition Law.**

The Court should dismiss Cork's complaint because it fails to allege that OPO has engaged in any unlawful act that can support a legally-cognizable basis for an unfair competition claim under District of Columbia law.

To encourage economic competition, District of Columbia law provides that the tort of unfair competition is narrow and "limited in scope." *See Econ. Research Servs., Inc. v. Resolution Econ., LLC*, 208 F. Supp. 3d 219, 231 (D.D.C. 2016) (Leon, J.) (noting that "unfair competition is a 'limited' tort given our society's encouragement of 'aggressive economic competition.'"); *Ray v. Proxmire*, 581 F.2d 998, 1002 (D.C. Cir. 1978) (holding that unfair competition is a "limited" tort in D.C.); *see also Scanwell Labs., Inc. v. Thomas*, 521 F.2d 941, 949 (D.C. Cir. 1975) (recognizing that tort of unfair competition in D.C. must be "limited in scope in a free market economy based on free and open competition for business").

Unfair competition claims under District of Columbia common law have been limited to only three categories: (1) passing off one's goods as those of another, (2) engaging in activities designed solely to destroy a rival, and (3) using methods themselves independently illegal. *Ray v. Proxmire*, 581 F.2d at 1002; *Unidisco, Inc. v. Schattner*, 824 F.2d 965, 968 (Fed. Cir. 1987). The tort is not defined through specific elements, but by the description of various recognized *unlawful acts* that would constitute the tort if they resulted in competitive economic damage. *Bus. Equip. Ctr., Ltd. v. DeJur-Amsco Corp.*, 465 F. Supp. 775, 788 (D.D.C. 1978); *Furash & Co., Inc. v. McClave*, 130 F. Supp. 2d 48, 57 (D.D.C. 2001). The recognized unlawful acts that may support a claim for unfair competition at common law in the District of Columbia are: "defamation, disparagement of a competitor's goods or business methods, intimidation of customers or employees, interference with access to the business, threats of groundless suits,

commercial bribery, inducing employees to sabotage, [and] false advertising or deceptive packaging likely to mislead customers into believing goods are those of a competitor." *B & W Mgmt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879, 881 n.3 (D.C. 1982) (citing William Prosser, Handbook of the Law of Torts 956–57 (4th ed. 1971)); *Camarda v. Certified Fin. Planner Bd. of Standards, Inc.*, 672 F. App'x 28, 30 (D.C. Cir. 2016).

Here, Cork's complaint fails to state a claim for relief because it does not allege that OPO engaged in any specific unlawful conduct toward Cork that can support an unfair competition claim.  For example, Cork does not allege, nor could it, that OPO has engaged in any form of defamation, disparagement, infringement, intimidation, bribery, sabotage, false advertising, or any similar kind of tort or crime.  Rather, the complaint depicts regular competition between businesses, in which Cork speculates it may lose customers who voluntarily choose to patronize a newer, more popular venue.  Because Cork's complaint fails to allege that OPO has engaged in unlawful conduct toward Cork, the complaint must be dismissed.

To the extent Cork's claim relies on its allegation that OPO breached a commercial lease restriction in its GSA lease, such allegation does not conceivably fit within *any* of the unlawful acts recognized as actionable under D.C. law.  *See Ray v. Proxmire*, 581 at 1002.  Cork's allegation that OPO breached lease Section 37.19 does not constitute a recognized wrongful business practice.  *See id*.  Indeed, no authority in D.C. holds that breaching a commercial lease restriction, or continuing to do business after such a breach, can form the basis for a claim for relief for unfair competition.  An alleged breach of the GSA lease simply does not rise to the level of actionable, tortious unfair competition.

As outlined above, an unfair competition claim must be tethered to some tortious conduct, such as defaming a competitor's business or infringing on intellectual property.  Cork's

complaint makes no such allegation.  When, as here, a plaintiff fails to allege a defendant has engaged in one of the unlawful acts recognized under D.C. unfair competition law, the claim is not legally cognizable and must be dismissed at the pleading stage.  *See, e.g., DAG Enterprises, Inc. v. Exxon Mobil Corp.*, No. CV 00-0182 (CKK), 2001 WL 34778782, at *3 (D.D.C. Sept. 30, 2001) (dismissing claim because "[a] refusal to deal is not of these acts" constituting unfair competition under D.C. law); *B & W Mgmt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879, 881 n.3 (D.C. 1982) (dismissing unfair competition claim alleging that defendant unfairly used its land in a way that interfered with a competitor's business because this allegation does not constitute a recognized act of unfair competition under D.C. law); *Econ. Research Servs., Inc. v. Resolution Econ., LLC*, 208 F. Supp. 3d 219, 231 (D.D.C. 2016) (dismissing complaint where plaintiff made no "allegations of one or more of the recognized acts [of unfair competition]").

Thus, the Court should dismiss Cork's complaint for failure to state a claim because Cork fails to allege a recognized act of unfair competition, and Cork's allegation that OPO breached the GSA lease cannot support a claim under District of Columbia law.

## II.     The Complaint Fails to State a Claim Because Cork Cannot Sue in Tort to Enforce the GSA Lease.

Even *if* a breach of a commercial lease could support a legally-cognizable claim for unfair competition in D.C. (which it cannot), and even assuming OPO *did* breach the GSA lease (which it did not), Cork's unfair competition claim still fails for independent reasons.  Namely, Cork has no right or standing to assert any claim based on the GSA lease because it is not a party to, or an intended beneficiary of, the lease.[6]  Further still, even if Cork had standing to make a claim, it would be for breach of contract, not a tort claim.

---

[6] Cork's Amended Complaint unquestionably relies on the allegation that OPO breached the GSA lease as a basis for its unfair competition claim.  *See* Am. Compl., ¶¶ 7-11, 35-39, 42.

*(footnote continued on next page)*

9

### A.      Cork Is Not a Party to the GSA Lease.

It is a well-founded principal of contract law that strangers to a contract generally cannot sue to enforce the contract's terms.  *See Washington Canoe Club v. D.C. Zoning Comm'n*, 889 A.2d 995, 1002, n.5 (D.C. 2005) (citing *Marranzano v. Riggs Nat'l Bank of Washington D.C.*, 184 F.2d 349, 350 (D.C. Cir. 1950)).  Moreover, where a contract between two parties—such as a commercial lease—contains a restriction on one of the parties, "the restriction imposed inures only to the benefit of the party *to whom the obligation runs*.  Even though a covenantor may derive a competitive advantage by breach, he will not be answerable for failure to observe his contractual commitment to anyone but *the party to whom he is directly obligated*."  Callmann on Unfair Competition, Trademarks and Monopolies § 16:46, Standing to Sue (4th ed., 2014) (emphasis added).

Here, only OPO and the GSA—*not* Cork—are parties to the lease.  The restriction imposed by Section 37.19 inures to the benefit of the GSA and no other entity.  Thus, if OPO breached the lease (which it did not), it is not answerable for such breach to anyone but the GSA.  Alleged "competitors" who are not party to the lease, including Cork, have no legal right to enforce a lease restriction even if they are incidental, vicarious beneficiaries of the restriction. *See* Callmann, § 16:46.

### B.      Cork Is Not an Intended Third-Party Beneficiary of the GSA Lease.

In addition, Cork's allegation about breach of the GSA lease fails because Cork is not an intended third-party beneficiary of the lease.

---

*(footnote continued from previous page)*

Cork, however, now purports to disavow reliance on an alleged breach of the lease as a basis for its claim.  *See* Plaintiff's now-mooted Memorandum in Opposition to Motion to Dismiss, Dkt. No. 27 at 2, 11.  Nonetheless, because this theory is contained in the Amended Complaint, OPO addresses it in this Motion.

For a plaintiff to sue for breach of a contract to which it is not a party, the plaintiff must prove that it is an intended third-party beneficiary, as evidenced by the intent of the contract.  *See Bowhead Information Tech. v. Catapult Tech.*, 377 F. Supp. 2d 166, 171 (D.D.C. 2005).  Courts must read the contract "as a whole" to determine whether the third party's benefit under the contract is intended or only incidental.  *See Jahanbein v. The Ndidi Condo. Unit Owners Ass'n, Inc.*, 85 A.3d 824, 831 (D.C. 2014) (citing *Western Union Tel. Co. v. Massman Const. Co.*, 402 A.2d 1275, 1277 (D.C.1979)).  Further, "the parties to a contract must directly and unequivocally intend to benefit a third-party to be considered an intended beneficiary … [and t]he parties' mere knowledge or awareness that a contract may benefit a third-party is insufficient, without more, to demonstrate an intent to confer a benefit on the third party."  *Bowhead Information Tech.*, 377 F. Supp. 2d at 171 (internal citations omitted).

Here, Cork unquestionably is not an intended third-party beneficiary of the GSA lease. *First*, far from evidencing a "direct[] and unequivocal[]" intent to benefit Cork or protect it from competition, the GSA lease does the opposite—it *requires* OPO to operate a luxury hotel and restaurant in *direct competition* with any other similar venues in the District of Columbia.[7]  A lease that contemplates, and indeed, expressly requires increased competition among restaurant venues cannot be "directly and unequivocally" designed for the benefit of an alleged restaurant competitor such as Cork.

*Second*, it is a "basic contract principle that third party beneficiaries of a Government contract are generally assumed to be merely *incidental* beneficiaries, and may not enforce the

---

[7] *See* Woods Decl., Exh. A, p. 2, GSA lease at § 1.1, defining "Hotel" as a hotel that "shall include . . . at least one signature restaurant and may include . . . restaurants, specialty retail, various food service, beverage service and retail venues," and p. 21, defining OPO's "Permitted Use" to include operation of a hotel and use of a restaurant.  *See also id.*, p. 40, § 6.4 (requiring OPO to continuously occupy and operate the premises as a first-class hotel).

contract absent clear intent to the contrary."  *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 288 (D.C. Cir. 1993).  "Government contracts by their nature benefit the public, but only in rare circumstances will courts deem individual members of the public to be intended beneficiaries empowered to enforce those contracts in court."  *Edwards v. Aurora Loan Servs., LLC*, 791 F. Supp. 2d 144, 151 (D.D.C. 2011) (dismissing complaint because plaintiff could not show precise language in a government contract establishing a "clear intent" to allow third parties to sue for breach of the contract).

Here, Cork cannot show any provision in the GSA lease establishing a clear intent to permit Cork to sue in court to enforce the lease.  Cork is (at best) an indirect beneficiary who benefits, if at all, on a merely incidental basis.  Cork therefore has no right to enforce the lease.

In short, because OPO and the GSA did not enter into the GSA lease for Cork's benefit, Cork has no right to enforce the lease and has not stated a valid claim for relief.

### C.      Cork Cannot Convert a Breach of Contract Claim Into a Tort Claim.

Even *if* Cork was an intended third-party beneficiary of the GSA lease (and it was not), its claim against OPO would be one for breach of contract—not the tort of unfair competition. Counsel for OPO is aware of no case law that permits a plaintiff to "recast" a breach of contract claim into the tort of unfair competition.  Indeed, to allow Cork's unfair claim to proceed would require this Court to invent a new tort theory, not recognized under D.C. law, that permits businesses to sue in tort to enforce the terms of contracts to which they are not party—even when the parties themselves agree there has been no breach.  This would invite a tidal wave of litigation as businesses find opportunities to meddle in their competitors' affairs by claiming

their competitors have not lived up to contractual obligations.[8]  Such a claim has no legal foundation.

## III.    The Complaint Fails to State a Claim Because Competition Aided by Prominence Is Not Legally Cognizable as Unfair Competition Under D.C. Law.

With no legal basis to rely on the GSA lease, Cork appears to allege that OPO has committed the tort of unfair competition because it is somehow "unfair" for OPO to benefit competitively from President Trump's name, celebrity, and stature.  Cork alleges that (a) more customers are choosing to patronize OPO's hotel because of customers' "perception" that it would be advantageous in any dealings with the U.S. government to do so, and (b) it is "unfair" for OPO to operate a hotel bearing the name "Trump" while President Trump is in office because of the President's prominence and position.  *See* Am. Compl., ¶¶ 20(c), 34.  The law in the District of Columbia is clear such allegations are not actionable.

In *Ray v. Proxmire*, 581 F.2d 998 (D.C. Cir. 1978), the U.S. Court of Appeals for the D.C. Circuit affirmed the dismissal of plaintiff Ray's unfair competition claim under D.C. law. Ray alleged that a tour and hospitality service run by defendant Ellen Proxmire, wife of a sitting United States senator, William Proxmire, unfairly traded on the prestige and contacts she developed as a senator's wife.  *Ray v. Proxmire*, 581 at 1002-03.  Ray also alleged that Proxmire gained customers by using her influence to provide access to public property, including the vice-

---

[8] This sort of meddling is precisely what Cork attempts here.  The GSA and OPO determined OPO has not breached its lease. Woods Decl., Exh. B, pp. 1, 11-12.  This fact alone should foreclose Cork's claim.  At the pleading stage, the court need not "accept as true the complaint's factual allegations insofar as they contradict … matters subject to judicial notice." *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) (affirming dismissal of tort claim where complaint's allegations contradicted by judicially noticeable documents); *see also Rodriguez v. Lab. Corp. of AmericaHoldings*, 13 F. Supp. 3d 121, 127, 133 (D.D.C. 2014) (dismissing claims where plaintiff's allegations of breach of duty contradicted).  Because OPO and the GSA agree OPO is in full compliance with its lease, which is a fact subject to judicial notice, the Court can reject Cork's contrary, threadbare allegation and dismiss the complaint.

presidential mansion, and opportunities to meet wives of governmental officials that other tour companies, such as Ray's, could not offer. *Id*. Ray alleged that Proxmire's business success was because of her fame and ability to "open doors." *Id*.

The trial court dismissed Ray's unfair competition claim, and the D.C. Circuit affirmed the dismissal. The D.C. Circuit noted that, to encourage "aggressive economic competition," the tort of unfair competition is necessarily a limited one, constrained only to recognized categories of unlawful competitive behavior. *Id*. at 1002. The court held that a judge's role "is limited to redress of *legally-cognizable wrongdoing*, and financial success does not become unlawful simply because it is aided by prominence; nor could it be, without locking the famous out of the economy." *Id*. at 1003 (emphasis added). The court further held "simple use of one's status in society" for commercial gain is *not* illegal. *Id*. The court also recognized that many customers and others "will still treat celebrities specially," and notable individuals and those with connections to government "should not be exiled from the business world" just because their status and position might lead others to grant unique opportunities. *Id*. Finally, in dismissing Ray's complaint, the court held that even "using political influence to use public property for private gain" cannot provide a basis for a private unfair competition lawsuit. *Id*. at 1003.

The *Ray v. Proxmire* case is controlling authority and requires dismissal of Cork's unfair competition claim. As in *Ray*, Cork alleges it is "unfair" for customers to voluntarily patronize the Hotel because of President Trump's name, celebrity, prominence, and office. As the D.C. Circuit concluded in *Ray*, however, an individual's status in society, fame, or even ability to "open doors" are not wrongful acts and cannot sustain a claim under the limited tort of unfair competition. *Id*.

Indeed, Cork's allegations of "unfairness" stemming from President Trump's notoriety could be leveled against *any* politician, Hollywood actor, professional athlete, or other person of political or societal influence involved with a business. Such allegations would have applied equally to President Trump when he was only a prominent businessman with the hit television show *The Apprentice* on NBC. The mere possibility that customers will patronize a business to (misguidedly) seek to "curry favor," ingratiate themselves to a celebrity or politician, or in order to "rub shoulders" with influential people does not mean that *the business* has engaged in tortious unfair competition. As in *Ray*, such allegations must be dismissed.

There is no distinction in the law of unfair competition between political celebrity and nonpolitical celebrity. If Cork seeks to claim such a distinction based on the President's status as a federal official, such claim fails on the immunity and preemption grounds argued by OPO's co-defendant President Trump. OPO incorporates by reference the immunity and preemption bases for dismissal made by the President.

In sum, Cork's allegation that it is "unfair" for customers to patronize the Hotel because of the President's celebrity or position, or because the Hotel bears the name "Trump" is not actionable. The complaint must be dismissed for failure to state a claim.

## CONCLUSION

For the reasons set forth above, OPO respectfully requests that the Court dismiss the complaint with prejudice in its entirety.

15

Dated: February 26, 2018

Respectfully submitted,

*/s/ Rebecca Woods*
Rebecca Woods (D.C. Bar No. 468495)
rwoods@seyfarth.com
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, DC  20004
Telephone:  (202) 463-2400
Facsimile:  (202) 641-9200

Esther Slater McDonald (D.C. Bar No. 495034)
emcdonald@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, Georgia 30309
Telephone:  (404) 885-1500
Facsimile:   (404) 892-7056

*Counsel for Defendant*
*Trump Old Post Office, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

       I hereby certify that on this 26th day of February, 2018, copies of the foregoing **DEFENDANT TRUMP OLD POST OFFICE LLC'S MOTION TO DISMISS** and **STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF TRUMP OLD POST OFFICE LLC'S MOTION TO DISMISS** were filed with the Clerk of the Court for the U.S. District Court for the District of Columbia using the CM/ECF system, which will send notice and accomplish service to the following registered CM/ECF users:

Scott H. Rome
Andrew J. Kline
Christopher LaFon
THE VERITAS LAW FIRM
1235 19th Street, N.W., Suite 320
Washington, DC 20036
srome@theveritaslawfirm.com

Mark S. Zaid
Bradley P. Moss
MARK S. ZAID, P.C.
1250 Connecticut Avenue, NW, Suite 200
Washington, DC 20036
mark@markzaid.com

Alan B. Morrison
Steven L. Schooner
GEORGE WASHINGTON UNIVERSITY LAW SCHOOL
2000 H Street, NW
Washington, DC 20052
abmorrison@law.gwu.edu
sschooner@law.gwu.edu

*Counsel for Plaintiff*

Jason R. Scherr
Michael E. Kenneally
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Telephone:  202.373.6709
jr.scherr@morganlewis.com
michael.kenneally@morganlewis.com

Eric W. Sitarchuk
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
eric.sitarchuk@morganlewis.com

Allyson N. Ho
MORGAN, LEWIS & BOCKIUS LLP
1717 Main Street, Suite 3200
Dallas, TX 75201
allyson.ho@morganlewis.com

*Counsel for Defendant Donald J. Trump*

By: */s/ Rebecca Woods*
      Rebecca Woods

17