## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| K&D, LLC t/a CORK, | |
| *Plaintiff*, | |
| v. | Civil Action No. 17-731 (RJL) |
| TRUMP OLD POST OFFICE, LLC, | **ORAL ARGUMENT REQUESTED** |
| and | |
| DONALD J. TRUMP, *individually, and in his personal capacity*, | |
| *Defendants*. | |

### DEFENDANT DONALD J. TRUMP'S MOTION TO DISMISS

As authorized by Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for the reasons set forth in the accompanying Statement of Points and Authorities, Defendant Donald J. Trump respectfully moves to dismiss, with prejudice, the claim asserted against him in Plaintiff's Amended Complaint, Dkt. 30.

Dated: February 26, 2018

Respectfully submitted,

/s/ Jason R. Scherr

Eric W. Sitarchuk
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
T. 215.963.5000
eric.sitarchuk@morganlewis.com

Allyson N. Ho (DC Bar No. 477589)
MORGAN LEWIS & BOCKIUS LLP
1717 Main Street, Suite 3200
Dallas, TX 75201
T. 214.466.4000
allyson.ho@morganlewis.com

Fred F. Fielding (DC Bar No. 99296)
Jason R. Scherr (DC Bar No. 466645)
Michael E. Kenneally (DC Bar No. 1025767)
MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T. 202.739.3000
fred.fielding@morganlewis.com
jr.scherr@morganlewis.com
michael.kenneally@morganlewis.com

**Counsel for Defendant Donald J. Trump**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

K&D, LLC t/a CORK,

        *Plaintiff*,

    v.

TRUMP OLD POST OFFICE, LLC,

    and

DONALD J. TRUMP, *individually, and in his*
*personal capacity*,

        *Defendants*.

Civil Action No. 17-731 (RJL)

**ORAL ARGUMENT REQUESTED**

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT DONALD J. TRUMP'S MOTION TO DISMISS**

**MORGAN, LEWIS & BOCKIUS LLP**

# TABLE OF CONTENTS

**Page**

**INTRODUCTION**.................................................................................................................. 1

**COMPLAINT'S ALLEGATIONS**........................................................................................ 2

**ARGUMENT** ....................................................................................................................... 4

      I.     Federal Law Forecloses Plaintiff's Claim............................................................. 4

            A.     Plaintiff's Claim Is Barred by Absolute Presidential Immunity................ 4

            B.     Plaintiff's Claim Is Preempted by the Supremacy Clause of the United States Constitution. ......................................................................... 7

      II.    The Complaint Fails to State a Claim Under D.C. Law. ....................................... 9

**CONCLUSION** ................................................................................................................... 14

# TABLE OF CITATIONS

**Page(s)**

C<span>ASES</span>

*Al-Aulaqi v. Panetta,*
  35 F. Supp. 3d 56 (D.D.C. 2014) ......................................................................13

*B & W Management v. Tasea Inv. Co.,*
  451 A.2d 879 (D.C. 1983) ...........................................................................10, 11

*Beckett v. Air Line Pilots Ass'n,*
  995 F.2d 280 (D.C. Cir. 1993) .........................................................................13

*Berryman v. Merit Prop. Mgmt., Inc.,*
  62 Cal. Rptr. 3d 177 (Cal. Ct. App. 2007) ......................................................13

*Caltex Plastics, Inc. v. Lockheed Martin Corp.,*
  824 F.3d 1156 (9th Cir. 2016) ..........................................................................13

*Camarda v. Certified Fin. Planner Bd. of Standards, Inc.,*
  672 F. App'x 28 (D.C. Cir. 2016) ...............................................................10, 11

*Clinton v. Jones,*
  520 U.S. 681 (1997) ......................................................................................5, 8

*CSY Liquidating Corp. v. Harris Tr. & Sav. Bank,*
  162 F.3d 929 (7th Cir. 1998) ...........................................................................13

*Doe v. Stephens,*
  851 F.2d 1457 (D.C. Cir. 1988) .........................................................................7

*Don't Tear It Down, Inc. v. Pa. Ave. Dev. Corp.,*
  642 F.2d 527 (D.C. Cir. 1980) ...........................................................................8

*Easaw v. Newport,*
  253 F. Supp. 3d 22 (D.D.C. 2017) ...................................................................12

*Econ. Research Servs., Inc. v. Resolution Econ., LLC,*
  208 F. Supp. 3d 219 (D.D.C. 2016) ...........................................................10, 11

*Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.,*
  944 A.2d 1055 (D.C. 2008) .....................................................................12, 13, 14

*Hancock v. Train,*
  426 U.S. 167 (1976) ...........................................................................................7

# TABLE OF CITATIONS
## (continued)

**Page(s)**

*Jefferson Cty. v. Acker*,
527 U.S. 423 (1999) ................................................................................8

*\*Johnson v. Maryland*,
254 U.S. 51 (1920) ..............................................................................8, 9

*Klayman v. Zuckerberg*,
753 F.3d 1354 (D.C. Cir. 2014) ............................................................7

*McCulloch v. Maryland*,
17 U.S. 316 (1819) ................................................................................7

*\*Nixon v. Fitzgerald*,
457 U.S. 731 (1982) ..............................................................4, 5, 6, 7

*Ohio v. Thomas*,
173 U.S. 276 (1899) ..............................................................................8

*\*Ray v. Proxmire*,
581 F.2d 998 (D.C. Cir. 1978) ........................................................10, 12

*Sperry v. Florida ex rel. Fla. Bar*,
373 U.S. 379 (1963) ..............................................................................9

*U.S. Term Limits, Inc. v. Thornton*,
514 U.S. 779 (1995) ..............................................................................9

*Wankier v. Crown Equip. Corp.*,
353 F.3d 862 (10th Cir. 2003) ............................................................12

**CONSTITUTIONAL PROVISIONS**

U.S. Const. art. II, § 1, cl. 5. ............................................................2, 9

*U.S. Const. art. VI, cl. 2 ..............................................................1, 4, 7, 8

**OTHER AUTHORITIES**

Fed. Rule Civ. P. 12(b)(6) ....................................................................7

Letter from Kevin M. Terry, Contracting Officer, U.S. Gen. Servs. Admin., to
Trump Old Post Office LLC (Mar. 23, 2017), https://www.gsa.gov/cdnstatic/
Contracting_Officer_Letter_March_23__2017_Redacted_Version.pdf ................13

2 *McCormick on Evidence* § 330 (7th ed. 2016) ........................................13

## INTRODUCTION

The premise of this lawsuit is that, as a matter of D.C. law, the common law tort of unfair competition prohibits the President of the United States from owning an interest in a hotel precisely *because* he is the President. And the relief sought in this lawsuit is an order directing the President to rearrange his finances or resign the Presidency. Neither D.C. law nor the Constitution permits this unprecedented assertion of power over the President. On the contrary, the Amended Complaint (Dkt. 30) faces three insuperable obstacles.

*First*, Supreme Court precedent establishes that the President is absolutely immune from claims based on the President's Office. The claim here is just that. The Amended Complaint asserts that the alleged unfair competition started with the President's assumption of office. Am. Compl. ¶ 31. But the Amended Complaint does not allege any post-inaugural acts on which to impose liability. In fact, according to Plaintiff's recent representations in this litigation, "there *is no act* undertaken by defendant Trump since he became President, and on which Cork relies to support its claim of unfair competition." Dkt. 27, at 4 (emphasis added). As Plaintiff disavows any unfair competition claim based on the President's actions after he became President, and admits it had no claim against the President before he became President, Am. Compl. ¶ 31, the claim necessarily depends on the President's swearing-in and continuing occupancy of his Office. Because Plaintiff thus seeks to impose personal liability on the President based on the fact that he is President, the doctrine of absolute presidential immunity bars Plaintiff's claim.

*Second*, Plaintiff's unfair competition is preempted under the Supremacy Clause of the U.S. Constitution. The Amended Complaint's theory of unfair competition proposes that certain conduct—specifically, having ownership interests in a business—is tortious *because* that conduct is by the President. Whatever the precise scope of the doctrine of presidential immunity, there can be no question that the Constitution precludes states and the District of Columbia from

directly regulating federal officers as such—and particularly the President.  As the Supreme Court has explained, a federal office's requirements and duties are governed exclusively by federal law.  In the case of the Presidency, that means the U.S. Constitution.  *See* U.S. Const. art. II, § 1, cl. 5.  Because no state or other sub-federal government may regulate the President *as President*, Plaintiff's effort to impose extra requirements using D.C. common law necessarily fails.

*Third*, the Amended Complaint fails to state a claim for a more basic reason.  Under District law, only certain enumerated categories of actions can constitute unfair competition, and the Amended Complaint fails to allege any such actions.  Furthermore, binding authority rejects Plaintiff's theory that holding a position of political prominence or power can give rise to an unfair competition claim.  And courts also reject Plaintiff's theory that a supposed breach of a contract can support an unfair competition claim if the claimant is neither a party to nor intended beneficiary of that contract.

For all these reasons, the Amended Complaint should be dismissed with prejudice.

## COMPLAINT'S ALLEGATIONS

Donald J. Trump was sworn in as President of the United States on January 20, 2017. Am. Compl. ¶ 31.  Since that date—and precisely because of his new position as the head of the federal government—Plaintiff alleges that President Trump has been in violation of the law of the District of Columbia.  *See id.* ¶¶ 2, 31.

According to Plaintiff, President Trump's inauguration rendered unlawful his preexisting beneficial ownership interests in co-Defendant Trump Old Post Office LLC, which opened Trump International Hotel and its restaurant and bars (collectively, "the Hotel") in the District "[o]n or about September 12, 2016."  *Id.* ¶¶ 12-13.

The Amended Complaint alleges that Plaintiff, which operates a restaurant and bar in the District, has been competing for business with the Hotel since it opened. *Id.* ¶¶ 3, 16. Plaintiff further alleges that it has suffered "and will continue to suffer losses of business" to the Hotel. *Id.* ¶ 41. But Plaintiff does not complain about the President's ownership interest in the Hotel before January 2017. *Id.* ¶ 31. Instead, the Amended Complaint alleges that upon the President's inauguration, his President's ownership interest became an unlawful advantage for the Hotel that qualifies as unfair competition under D.C. law—and will continue to do so for the duration of the President's tenure in office. *Id.*

The Amended Complaint relies on two theories of unfair competition liability, both premised on President Trump's holding Presidential Office. The first theory is that, by taking office, the President violated a provision in the lease between the federal government's General Services Administration (GSA) and the Hotel. *Id.* ¶¶ 2, 8-11, 35-39.[1] The second theory broadly asserts that the Hotel possesses an unfair advantage in attracting business because of the President's visibility and political power. *Id.* ¶¶ 2, 18-23, 29, 33-34, 40. The Amended Complaint does not allege any actions taken by the President since he entered office that contribute, in Plaintiff's view, to the alleged unfair competition. In fact, on the same day that Plaintiff sought leave to file the Amended Complaint, it represented that "there is no act undertaken by defendant Trump since he became President, and on which Cork relies to support its claim of unfair competition." Dkt. 27, at 4.

Instead of seeking damages, the Amended Complaint asks the Court to order extraordinary relief to enjoin the alleged unfair competition. Am. Compl. ¶ 42. Plaintiff alleges

---

[1] The provision states in relevant part that "[n]o . . . elected official of the Government of the United States . . . shall be admitted to any share or part of this Lease, or to any benefit that may arise therefrom." Am. Compl. ¶ 10.

that an injunction could do that by ordering (a) the closure of the Hotel for the duration of the

Trump Presidency; (b) the sale of the Hotel to a buyer outside the Trump family; or (c) President

Trump's resignation as the duly elected President of the United States.  *Id.*

## ARGUMENT

Two distinct federal constitutional doctrines foreclose Plaintiff's unfair competition

claim.  First, absolute presidential immunity precludes personal liability based on the President's

Office.  Second, the Constitution's Supremacy Clause prohibits any local government, including

the District of Columbia, from directly regulating any federal officer—the President most of all.

In addition, Plaintiff's unfair competition claim fails as a matter of black-letter D.C. tort law.

**I.      Federal Law Forecloses Plaintiff's Claim.**

**A.      Plaintiff's Claim Is Barred by Absolute Presidential Immunity.**

The doctrine of absolute presidential immunity protects the Office of the President of the

United States by enabling the occupant of that Office to govern without threat of personal civil

liability stemming from his role as President.  As the Supreme Court explained in *Nixon v.

Fitzgerald*, 457 U.S. 731 (1982), the doctrine ensures that the President can focus on carrying out

the obligations of his Office without the distraction of virtually limitless litigation whose risks he

would personally bear.  That doctrine forecloses this lawsuit.

In *Fitzgerald*, the Court explained that absolute presidential immunity is warranted by

long historical tradition and functional considerations grounded in the President's "unique

position in the constitutional scheme."  *Id.* at 749.  Historically, several of the leading lights at

the Nation's founding (and in the decades thereafter) insisted that the President must be immune

from constant judicial scrutiny so he can concentrate on the task of governing.  *Id.* at 750 n.31.

The passage of time has only heightened these concerns, as the President possesses "supervisory

and policy responsibilities of utmost discretion and sensitivity" concerning "matters likely to

arouse the most intense feeling." *Id.* at 750, 752 (quotation marks omitted).  The President's prominence makes him "an easily identifiable target," yet the public interest demands that he be able "to deal fearlessly and impartially with the duties of his office." *Id.* at 752, 753 (quotation marks omitted).  Presidential immunity guards against "this personal vulnerability" of the President, *id.* at 753, with respect to not just the "particular functions" the President performs, but also his official responsibilities more generally, *id.* at 755-56.

Thus in *Fitzgerald*, the Supreme Court held President Nixon absolutely immune from potential liability arising from his firing of a government whistleblower.  *Id.* at 734-41, 756-57.  The Court pointedly rejected the argument that President Nixon was not entitled to immunity because, according to the whistleblower, the President's decision to fire him violated a federal statute and thus fell outside the lawful bounds of the President's Office.  It was sufficient, in the Court's view, that the whistleblower's firing fell "within the outer perimeter of [the President's] authority"—namely, oversight of the executive branch.  *Id.* at 757.  For that reason, the President was absolutely immune from personal liability based on the firing.  *Id.*

Although the factual circumstances are different, this case implicates the same concerns that warranted absolute presidential immunity in *Fitzgerald*.[2]  Plaintiff is attempting to premise personal liability not on generally applicable laws that would apply to President Trump and others regardless whether he was serving as President, but on a purported legal principle that is triggered only because of President Trump's federal Office.  The Complaint disavows "any legal

---

[2] The doctrine of absolute presidential immunity addressed in *Fitzgerald* is different from the temporary presidential immunity addressed in *Clinton v. Jones*, 520 U.S. 681 (1997).  In *Jones*, President Clinton argued that he was *temporarily* immune, during his time in office, from claims regarding conduct that predated his Presidency.  That notion of temporary presidential immunity is not relevant here because this case, unlike *Jones*, does not involve potential liability for conduct that predated the President election and that is "unrelated to any of [the President's] official duties." *Id.* at 686; *see* Am. Compl. ¶ 31.

basis to complain about" the President's interests in the Hotel before his inauguration.   Am. Compl. ¶ 31.   Instead, it alleges that the President's holdings became unlawful at the moment he "began serving as President," and have remained unlawful ever since.   *Id.*   It follows, then, that Plaintiff is seeking to impose liability on President Trump precisely *because* he became, and remains, the President of the United States.

Given the concerns that animate the doctrine of absolute presidential immunity, that is a sufficient basis for recognizing immunity in this case.   Just as the President should not have to fear that individuals will hold him personally liable for what he ultimately decides to *do* as President, neither should he have to fear personal liability simply because he *is* the President. The concerns animating *Fitzgerald* are at their apex in these circumstances.   Because the President constantly makes decisions on policy "matters likely to arouse the most intense feeling" and is "an easily identifiable target," *Fitzgerald*, 457 U.S. at 752-53, permitting lawsuits that complain only of conduct that would be entirely lawful but for the President's position would be a recipe for politically motivated litigation.   It is precisely "this personal vulnerability" of the President that the doctrine of absolute presidential immunity was designed to counter.   *Id.* at 753.

The doctrine's applicability is also evident because Plaintiff seeks to impose liability for the quintessential presidential act of assuming the Office of the Presidency.   Because Plaintiff concededly has no "legal basis to complain about" the President's pre-inaugural conduct, Am. Compl. ¶ 31, and does not try to impose liability based on the President's post-inaugural conduct, its claim can only be construed as an attempt to impose liability based on the President's swearing-in.   In other words, the President's assumption of office is a necessary condition or element of Plaintiff's claim as Plaintiff conceives of it.   That act, of course, falls

within not just the "outer perimeter" of official responsibility, *Fitzgerald*, 457 U.S. at 757, but

the heartland of it.  The doctrine of absolute presidential immunity precludes any effort, like

Plaintiff's, to impose liability premised upon the assumption of the Presidency itself.[3]

**B.      Plaintiff's Claim Is Preempted by the Supremacy Clause of the United States Constitution.**

Wholly apart from *Fitzgerald* and the doctrine of absolute presidential immunity, which

seeks to shield the President's "personal vulnerability" to legal liability, *Fitzgerald*, 457 U.S. at

753, Plaintiff's claim also fails under the doctrine of preemption, which seeks to preserve the

balance of federal and state power that is the core of our constitutional structure.  The

Constitution makes federal law "the supreme Law of the Land," and "the Judges in every State

[are] bound thereby, any Thing in the Constitution or Laws of any State to the Contrary

notwithstanding."  U.S. Const. art. VI, cl. 2.  The Amended Complaint fails to state a valid claim

for relief because the relief Plaintiff seeks through D.C. unfair competition law would contravene

this federal supremacy.[4]

A consequence of the Constitution's Supremacy Clause is that states may not directly

regulate the federal government or its instruments; that power is reserved to the nation as a

whole.  *See McCulloch v. Maryland*, 17 U.S. 316, 427-29 (1819); *Hancock v. Train*, 426 U.S.

167, 178-79 (1976).  The District of Columbia has no greater power to directly regulate the

federal government than the states possess.  *See Doe v. Stephens*, 851 F.2d 1457, 1465 (D.C. Cir.

---

[3] Plaintiff agrees that the applicability of absolute presidential immunity in this case is not affected by the fact that Plaintiff, unlike the plaintiff in *Fitzgerald*, 457 U.S. at 739, seeks injunctive relief rather than money damages.  *See* Dkt. 27, at 6 n.2 ("Cork recognizes that, since the costs of complying with a court order in this case would affect defendant Trump's personal finances, that part of the *Fitzgerald* rationale would apply.").

[4] Although preemption is an affirmative defense, it is nevertheless properly addressed on a Rule 12(b)(6) motion to dismiss where, as here, the defense is apparent from the face of the complaint. *See, e.g.*, *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014).

1988) (extending this line of Supreme Court precedent to District efforts to regulate the federal government); *Don't Tear It Down, Inc. v. Pa. Ave. Dev. Corp.*, 642 F.2d 527, 534-35 (D.C. Cir. 1980) (same).

For these reasons, neither states nor the District may impose rules that specifically target federal officers or employees and attempt to limit their abilities to carry out their federal responsibilities.  It has been clear for over a century that a "Federal officer [is] not 'subject to the jurisdiction of the State in regard to those very matters of administration which are . . . approved by Federal authority.'"  *Johnson v. Maryland*, 254 U.S. 51, 56 (1920) (quoting *Ohio v. Thomas*, 173 U.S. 276, 283 (1899)).  States and the District may not require that federal officials "desist from performance until they satisfy a state officer" or otherwise "require[] qualifications in addition to those that the [federal] Government has pronounced sufficient."  *Id.* at 57.  At most, States and the District may enforce "*general* rules that might affect incidentally the mode of carrying out [the federal] employment—as, for instance, a statute or ordinance regulating the mode of turning at the corners of streets."  *Id.* at 56 (emphasis added).  As the Supreme Court has most recently articulated the point, states "*of course* cannot make it unlawful to carry out the duties of a federal office without local permission."  *Jefferson Cty. v. Acker*, 527 U.S. 423, 440-41 (1999) (emphasis added) (comma omitted); *cf. Jones*, 520 U.S. at 691 n.13 (noting potential Supremacy Clause concerns about state control over the President).

If this lawsuit succeeds, the District will have done exactly what the Supremacy Clause forbids—and with respect not just to any federal official, but the President himself.  Plaintiff transparently pursues that objective by specifically requesting injunctive relief forcing the President to give up either the Hotel or the Presidency.  Am. Compl. ¶ 42.  That would be a profound infringement on federal supremacy, and much worse than local practices that the

Supreme Court has already proscribed.  The Court has held that the state of Maryland may not restrict a federal postal employee's ability to complete his mail route without obtaining a state license.  *See Johnson*, 254 U.S. at 55-57.  The Court has even held that the state of Florida may not restrict a U.S. Patent Office practitioner's ability to prepare Patent Office applications in Florida without passing the state bar.  *Sperry v. Florida ex rel. Fla. Bar*, 373 U.S. 379, 385 (1963).  It should go without saying, then, that the District may not condition the President's ability to serve in the Office to which he was elected on whether he arranges his personal finances in satisfaction of alleged requirements of D.C. common law.

If there were any doubt about that, it is put to rest by the Supreme Court's landmark decision in *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995).  There the Supreme Court struck down a state constitutional amendment imposing term limits on the state's Representatives and Senators, rejecting arguments that the Tenth Amendment protects states' authority to add qualifications for their own Representatives and Senators.  *Id.* at 783.  While the Justices sharply disagreed over states' power to impose qualifications on their *own* members of Congress, they all agreed that states lack any power to create requirements for the Presidency.  *See id.* at 803-04; *id.* at 861 (Thomas, J., dissenting).  A victory for Plaintiff in this case would effectively overrule the Court's unanimous view in *U.S. Term Limits* by imposing a qualification upon the President— *i.e.*, that he must rearrange his investments or else resign the Office—that cannot be found in the Constitution's articulation of the qualifications for the Presidency, U.S. Const. art. II, § 1, cl. 5, and that states and the District accordingly have no power to prescribe.

## II.    The Complaint Fails to State a Claim Under D.C. Law.

Even if Plaintiff's claim were not foreclosed by the U.S. Constitution in the two ways just described, it would nevertheless be foreclosed by D.C. unfair competition law.  In the District, "unfair competition is a 'limited' tort given our society's encouragement of 'aggressive

economic competition.'" *Econ. Research Servs., Inc. v. Resolution Econ., LLC*, 208 F. Supp. 3d 219, 231 (D.D.C. 2016) (Leon, J.) (quoting *Ray v. Proxmire*, 581 F.2d 998, 1002 (D.C. Cir. 1978) (per curiam)).  As a result, unfair competition in the District "is not defined in terms of specific elements, but by various acts that would constitute the tort if they resulted in damages." *Id.* (quotation marks omitted).

That proposition ultimately comes from *B & W Management v. Tasea Inv. Co.*, 451 A.2d 879, 881 n.3 (D.C. 1983), the most recent substantive discussion of D.C.'s common law of unfair competition by the D.C. Court of Appeals.  Under *B & W Management*, the only sorts of acts that qualify as unfair competition under District law are:

- defamation

- disparagement of a competitor's goods or business methods

- intimidation of customers or employees

- interference with access to the business

- threats of groundless suits

- commercial bribery

- inducing employees to sabotage

- false advertising, and

- deceptive packaging likely to mislead customers into believing goods are those of a competitor.

*Econ. Research*, 208 F. Supp. 3d at 231 (citing *B & W Mgmt.*, 451 A.2d at 881 n.3); *accord Camarda v. Certified Fin. Planner Bd. of Standards, Inc.*, 672 F. App'x 28, 30 (D.C. Cir. 2016) (per curiam) ("The acts that may support a claim for unfair competition at common law are 'defamation, disparagement of a competitor's goods or business methods, intimidation of customers or employees, interference with access to the business, threats of groundless suits,

commercial bribery, inducing employees to sabotage, false advertising or deceptive packaging likely to mislead customers into believing goods are those of a competitor.'" (quoting *B & W Mgmt.*, 451 A.2d at 881 n.3)).

The Amended Complaint does not allege facts that come within any of these enumerated categories. Instead, Plaintiff's conception of unfair competition is that it is unlawful to have ownership interests in a business while holding the Presidency. In Plaintiff's words, "Defendants' operation of the Hotel and the restaurants, while Defendant Donald J. Trump serves as President of the United States, unfairly competes for customers in the relevant marketplace, including potential customers of Cork, impairing Cork's ability to compete with the Hotel on a level playing field." Am. Compl. ¶ 33. Plaintiff's unfair competition claim fails under D.C. law for this reason alone. *See, e.g.*, *Camarda*, 672 F. App'x at 30 ("Appellants have failed to establish that the CFP Board committed any of these acts—or that there was a genuine dispute as to any material fact with respect to such acts—and summary judgment in favor of [the defendant] was therefore appropriate.").[5]

But even if Plaintiff were relieved of its obligation to allege a wrong within these enumerated categories, the Amended Complaint would still fail as a matter of law. Both theories of unfair competition on which Plaintiff's claim is premised have been expressly rejected by the courts.

*First*, the theory that a political figure's prominence or power gives the Hotel an unfair advantage in attracting customers, Am. Compl. ¶¶ 2, 18-23, 29, 33-34, 40, was rejected long ago

---

[5] In addition to these enumerated acts, conduct might also qualify as unfair competition if a defendant's subjective motive was "solely to destroy a rival." *Econ. Research*, 208 F. Supp. 3d at 231 (quotation marks omitted). If a defendant has "legitimate business motivations," however, this potential avenue toward liability is closed. *Id.* Plaintiff's Amended Complaint does not and cannot allege that Defendants acted with the purpose, let alone the sole purpose, of inflicting injury on Plaintiff.

by the D.C. Circuit in *Ray v. Proxmire*, 581 F.2d 998.[6]   In that case, the operator of a tour and

hospitality service sued a competitor who was married to a U.S. Senator, alleging that she and

the Senator were engaged in unfair competition.   *Id.* at 999-1000.   Under the plaintiff's theory,

the defendant-competitor had used "the prestige and contacts enjoyed by a senator's wife . . . to

gain competitive advantages."   *Id.* at 1002.   Specifically, the plaintiff "could not match" the

defendant's "fame and ability to 'open doors'" in the world of D.C. politics, which included

special access to the vice-presidential mansion, State Department entertaining rooms, and the

Capitol—not to mention special access to the families of government officials.   *Id.* at 1003.

Despite the plaintiff's detailed factual allegations that the defendant was deliberately trading on

her husband's political office, the D.C. Circuit held that the alleged conduct was not "legally-

cognizable wrongdoing."   *Id.*   Contrary to the plaintiff's position, "use of one's status in society

is not itself illegal" and "financial success does not become unlawful simply because it is aided

by prominence."   *Id.*   So even accepting the truth of Plaintiff's (false) allegations in this case, as

a matter of law they cannot support an unfair competition claim.

    *Second*, the Amended Complaint's theory that an alleged breach of the GSA lease

constitutes unfair competition founders on the bedrock rule that strangers to a contract may not

impose liability for the contract's breach unless they qualify as intended beneficiaries.   *See, e.g.*,

*Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1064 (D.C. 2008).

They may not do so directly, under a breach of contract theory, or indirectly, by re-casting such a

claim in the guise of some tort, such as breach of trust, conversion, misappropriation, breach of

---

[6] Although *Proxmire* is a decision by the D.C. Circuit, that court's interpretations of D.C. law are binding unless a more recent D.C. Court of Appeals decision "clearly and unmistakably renders inaccurate [the] prior decision by the D.C. Circuit." *Easaw v. Newport*, 253 F. Supp. 3d 22, 35 (D.D.C. 2017); *see also, e.g.*, *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003).   No subsequent D.C. Court of Appeals decision has called *Proxmire* into doubt on this point, let alone clearly and unmistakably.

fiduciary duty, fraud, non-disclosure or negligence. *Id.* at 1070. Courts have likewise held that such claims may not proceed through the tort of tortious interference. *E.g.*, *CSY Liquidating Corp. v. Harris Tr. & Sav. Bank*, 162 F.3d 929, 932-33 (7th Cir. 1998). Unfair competition is not a loophole, either. On the contrary, even courts applying a much more open-ended version of unfair competition have rejected attempts to circumvent this rule using unfair competition, because that "would completely destroy the principle that a third party cannot sue on a contract to which he or she is merely an incidental beneficiary." *E.g.*, *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1161 (9th Cir. 2016) (applying California law) (quotation marks omitted); *Berryman v. Merit Prop. Mgmt., Inc.*, 62 Cal. Rptr. 3d 177, 185 (Cal. Ct. App. 2007).

Under these cases, Plaintiff's claim must fail because Plaintiff is not an intended beneficiary of the GSA lease. It is a "basic contract principle that third party beneficiaries of a Government contract are generally assumed to be merely *incidental* beneficiaries, and may not enforce the contract absent clear intent to the contrary." *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 288 (D.C. Cir. 1993); *Fort Lincoln*, 944 A.2d at 1065. This clear-intent requirement makes eminent sense in the government contracting context; otherwise innumerable members of the public could try to interfere in the government's contractual relationships by asserting a breach even when the government believes, correctly, that no breach has occurred—as in fact happened in this very case. *See* Letter from Kevin M. Terry, Contracting Officer, U.S. Gen. Servs. Admin., to Trump Old Post Office LLC (Mar. 23, 2017), https://www.gsa.gov/cdnstatic/ Contracting_Officer_Letter_March_23__2017_Redacted_Version.pdf ("I have determined that Tenant is in full compliance with Section 37.19[.]").[7] Plaintiff bears the burden here of proving

---

[7] The GSA contracting officer's letter explaining this determination is subject to judicial notice as an official public record and so may be considered on a motion to dismiss. *E.g.*, *Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 67-68 (D.D.C. 2014); *see also* 2 *McCormick on Evidence* § 330 (7th

the required clear intent to confer intended beneficiary status.  *Fort Lincoln*, 944 A.2d at 1065.

Nothing in the Amended Complaint comes close to doing so.

## CONCLUSION

For all these reasons, the Complaint should be dismissed with prejudice.


Dated: February 26, 2018                    Respectfully submitted,

                                            /s/ Jason R. Scherr

                                            Eric W. Sitarchuk
                                            MORGAN LEWIS & BOCKIUS LLP
                                            1701 Market Street
                                            Philadelphia, PA 19103
                                            T. 215.963.5000
                                            eric.sitarchuk@morganlewis.com

                                            Allyson N. Ho (DC Bar No. 477589)
                                            MORGAN LEWIS & BOCKIUS LLP
                                            1717 Main Street, Suite 3200
                                            Dallas, TX 75201
                                            T. 214.466.4000
                                            allyson.ho@morganlewis.com

                                            Fred F. Fielding (DC Bar No. 99296)
                                            Jason R. Scherr (DC Bar No. 466645)
                                            Michael E. Kenneally (DC Bar No. 1025767)
                                            MORGAN LEWIS & BOCKIUS LLP
                                            1111 Pennsylvania Avenue, NW
                                            Washington, DC 20004
                                            T. 202.739.3000
                                            fred.fielding@morganlewis.com
                                            jr.scherr@morganlewis.com
                                            michael.kenneally@morganlewis.com

                                            **Counsel for Defendant Donald J. Trump**

---

ed. 2016) ("[G]overnment . . . websites . . . are among the most commonly relied upon sources."). To be clear, this Court does not *need* to take judicial notice of the GSA's determination to dismiss plaintiff's claim on any grounds discussed in this memorandum. Nor does the Court need to interpret the Lease's provisions to resolve the present motion.

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on this 26th day of February, 2018, copies of the foregoing Defendant Donald J. Trump's Motion to Dismiss and Statement of Points and Authorities in Support of Defendant Donald J. Trump's Motion to Dismiss were served on counsel of record through this Court's ECF filing system.

/s/ Jason R. Scherr
Jason R. Scherr