**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| K&D, LLC t/a CORK, | |
| *Plaintiff*, | |
| v. | Civil Action No. 17-731 (RJL) |
| TRUMP OLD POST OFFICE, LLC, | **ORAL ARGUMENT REQUESTED** |
| and | |
| DONALD J. TRUMP, *individually, and in his personal capacity*, | |
| *Defendants*. | |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
DEFENDANT DONALD J. TRUMP'S MOTION TO DISMISS**

**MORGAN, LEWIS & BOCKIUS LLP**

## TABLE OF CONTENTS

Page

**INTRODUCTION**................................................................................................... 1

**ARGUMENT** ........................................................................................................ 2

     I.     Federal Law Forecloses Plaintiff's Claim............................................... 2

          A.     Plaintiff's Claim Is Barred by Absolute Presidential Immunity................. 2

          B.     Plaintiff's Claim Is Preempted by the Supremacy Clause of the United States Constitution. ........................................................................ 6

     II.     The Complaint Fails to State a Claim Under D.C. Law. ........................................ 9

     III.     There Is No Merit in Plaintiff's Attempt to Relitigate Removal. ......................... 14

**CONCLUSION** ....................................................................................................... 15

# TABLE OF CITATIONS

**Page(s)**

CASES

*B & W Mgmt., Inc. v. Tasea Inv. Co.,*
 451 A.2d 879 (D.C. 1982) .................................................................9, 12, 13, 14

*Better Gov't Bureau, Inc. v. McGraw,*
 904 F. Supp. 540 (S.D. W. Va. 1995) ...............................................................13

*Brown-Brand Realty Co. v. Saks & Co.,*
 214 N.Y.S. 230 (N.Y. Sup. Ct. 1925) ............................................................9, 10

*Bus. Equip. Ctr. v. DeJure-Amsco Corp.,*
 465 F. Supp. 775 (D.D.C. 1978) .......................................................................10

*Camarda v. Certified Fin. Planner Bd. of Standards, Inc.,*
 672 F. App'x 28 (D.C. Cir. 2016) ................................................................11, 14

*Caterpillar Inc. v. Williams,*
 482 U.S. 386 (1987) ..........................................................................................15

*Cavallini v. State Farm Mut. Auto Ins. Co.,*
 44 F.3d 256 (5th Cir. 1995) ..............................................................................15

*Easaw v. Newport,*
 253 F. Supp. 3d 22, 35 (D.D.C. 2017) ..............................................................12

*Econ. Research Servs., Inc. v. Resolution Econ., LLC,*
 208 F. Supp. 3d 219 (D.D.C. 2016) .............................................................10, 14

*Furash & Co. v. McClave,*
 130 F. Supp. 2d 48 (D.D.C. 2001) ....................................................................10

*Gilly v. Hirsh,*
 48 So. 422 (La. 1909) ....................................................................................9, 10

*Grempler v. Multiple Listing Bureau of Harford Cty., Inc.,*
 266 A.2d 1 (Md. 1970) ......................................................................................11

*Hanley-Wood LLC v. Hanley Wood LLC,*
 783 F. Supp. 2d 147 (D.D.C. 2011) ..................................................................10

*Int'l News Serv. v. Associated Press,*
 248 U.S. 215 (1918).........................................................................................11

## TABLE OF CITATIONS
(continued)

**Page(s)**

*Jamison v. Wiley*,
 14 F.3d 222 (4th Cir. 1994) ................................................................15

*Jefferson County v. Acker*,
 527 U.S. 423 (1999) ...........................................................7, 8, 15

*\*Johnson v. Maryland*,
 254 U.S. 51 (1920).............................................................6, 7, 8

*Leslie Miller, Inc. v. Arkansas*,
 352 U.S. 187 (1956) ...............................................................7

*\*Nixon v. Fitzgerald*,
 457 U.S. 731 (1982)...........................................................3, 4, 5

*Pitt v. Dist. of Columbia*,
 491 F.3d 494 (D.C. Cir. 2007) .............................................11

*\*Ray v. Proxmire*,
 581 F.2d 998 (D.C. Cir. 1978) ....................................11, 12, 13

*Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*,
 13 F. Supp. 3d 62 (D.D.C. 2014) .........................................10

*Shamhart v. Morrison Cafeteria Co.*,
 32 So. 2d 727 (Fla. 1947)......................................................10

*Sperry v. Florida ex rel. Fla. Bar*,
 373 U.S. 379 (1963)................................................................7

*U.S. Term Limits, Inc. v. Thornton*,
 514 U.S. 779 (1995)................................................................8

*United States v. Rothmeier*,
 570 A.2d 811 (D.C. 1990) ....................................................13

*Wankier v. Crown Equip. Corp.*,
 353 F.3d 862 (10th Cir. 2003) .............................................12

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I ....................................................................4

U.S. Const. amend. XX, § 1...........................................................3

# TABLE OF CITATIONS
(continued)

**Page(s)**

U.S. Const. art. I, § 4, cl. 1 ....................................................................................8

U.S. Const. art. II, § 1, cl. 8 ...................................................................................3

*U.S. Const. art. VI, cl. 2 ..............................................................................1, 2, 6

**STATUTES**

28 U.S.C. § 1441 ...................................................................................................15

28 U.S.C. § 1442 ...................................................................................................15

50 U.S.C. § 3802(a) ................................................................................................4

50 U.S.C. § 3811(a) ................................................................................................4

**OTHER AUTHORITIES**

Restatement (First) of Torts §§ 711-61 (1938) .....................................................11

Restatement (Second) of Torts div. 9, intro. note (1979) ......................................11

Restatement (Third) of Unfair Competition § 1 cmt. g (1995) .............................11

W. Page Keeton, *Prosser & Keeton on the Law of Torts* § 130 (5th ed. 1984)............10

W. Prosser, *Handbook of the Law of Torts* § 130 (4th ed. 1971) ......................9

## INTRODUCTION

Plaintiff's opposition memorandum (Dkt. 34) fails to overcome the three insurmountable obstacles that Defendants have shown foreclose its claim.

*First*, as a preliminary matter, Plaintiff's claim remains barred by the doctrine of presidential immunity.  An element of Plaintiff's claim, on Plaintiff's own conception of it, is that President Trump holds elected office.  Before he entered office, Plaintiff concedes it had no claim.  Am. Compl. ¶ 31.  After he leaves office, Plaintiff concedes it will have no claim.  Opp'n 15.  Because the office in question here is the Office of the Presidency, an essential element of the claim Plaintiff needs to prove is that President Trump took the oath of office and became President—an act within the heartland of his official responsibility.  Unlike the examples that Plaintiff imagines, this is not a case where only a fortuitous causal connection exists between the President's job and the allegedly tortious conduct.  Here, there is a direct legal connection between the Presidency and Plaintiff's claim as Plaintiff conceives of it.  That is enough to warrant application of the absolute presidential immunity the Supreme Court has recognized.

*Second*, Plaintiff's claim runs afoul of the Supremacy Clause.  U.S. Const. art. VI, cl. 2. Plaintiff's contention is that D.C. law forbids the President from holding his federal office and performing all the duties it entails unless he has first rearranged his finances to a court's satisfaction.  Plaintiff's protests notwithstanding, this conception of D.C. law is not generally applicable.  It applies *only* to those who hold elected office.  And whatever the District's authority to regulate the preconditions for holding D.C.'s elected offices, it has zero power to regulate the holding of federal office, as the Supreme Court has repeatedly recognized.

*Third*, Plaintiff's conception of D.C. unfair competition law fails on its own terms.  To validly plead such a claim, Plaintiff must allege an act falling within specified categories of conduct that constitutes the tort, and it has failed to do so.  Its sole effort to meet this requirement

is its assertion that Defendants have "interfer[ed] with Cork's access to business."  Opp'n 17.

But Plaintiff fundamentally misunderstands that strand of unfair competition law, which is not an

open-ended inquiry into whether the defendant competes unfairly for customers.  *See id.* at 17-

21.  Instead, this strand of the law prohibits affirmative restrictions on customers' ability to

patronize the plaintiff's business, typically through physical obstruction.  Plaintiff alleges

nothing of the sort.  And the D.C. Circuit has already rejected Plaintiff's theory that the

"confluence of ownership and the promise of influence with elected officials" amounts to D.C.

unfair competition. *Id.* at 17.

For all these reasons, the Court should dismiss the Amended Complaint in its entirety.

Given that Plaintiff cannot cure the multiple fatal problems with its allegations, dismissal should

be with prejudice.

## ARGUMENT

### I.     Federal Law Forecloses Plaintiff's Claim.

Although Plaintiff insists on conflating the President's two federal defenses, they are

independent defenses with distinct aims.  Absolute presidential immunity guards against the

threat of personal liability based on the Presidency, while the Supremacy Clause protects the

proper division of power in our federalist constitutional structure.  Each doctrine independently

supports dismissal of Plaintiff's claim.

### A.     Plaintiff's Claim Is Barred by Absolute Presidential Immunity.

Despite Plaintiff's efforts to suggest that its claim has no inherent connection with the

President's official responsibilities, Plaintiff's own characterization of its claim demonstrates the

contrary.  According to Plaintiff, "the gravamen of [its] unfair competition claim is that, once

defendant Trump became President Trump, he and his Hotel were engaging in unfair

competition." Opp'n 5.  In other words, the alleged problem arises by virtue of his assumption

2

of office.   The last action legally necessary to complete the tort of unfair competition (on Plaintiff's view of it) was the President's swearing-in, regardless of what the President later does while in office.   *Id.* ("[T]here is no act that defendant Trump has taken as President of which Cork complains[.]").

The President argued in his motion to dismiss memorandum that presidential immunity bars Plaintiff's claim because this quintessential presidential act, his swearing-in, easily falls within the "outer perimeter"—and indeed the core—of the President's official authority.   Dkt. 32 ("Trump Mem."), at 7 (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 757 (1982)).   The President's assumption of office is the act by which he assumed *all* presidential duties and responsibilities. It is a paradigmatic presidential action under the Constitution, which specifically prescribes how and when the President is to assume his Office.   U.S. Const. art. II, § 1, cl. 8; *id.* amend. XX, § 1. In addition, the rationale for presidential immunity, as articulated in *Fitzgerald*, supports protecting the President from personal liability stemming from his assumption of office or official status.   *See* Trump Mem. 6.

Plaintiff offers no direct response to these arguments.   In fact, Plaintiff just about concedes them.   In its opposition to the President's previous motion to dismiss, Plaintiff grudgingly acknowledged that "liability . . . based on the President's swearing-in . . . would raise at least a colorable immunity question."   Dkt. 27, at 5.   While Plaintiff omits that quasi-concession from its latest filing, it still recognizes that "the President should not have to worry about his personal monetary liability for official decisions within the 'outer perimeter' of his official responsibilities, which might turn out to be . . . unlawful."   Opp'n 8.   So too, here, the President should not have to fear costly liability deriving from his swearing-in and assuming the duties and responsibilities of the Office of the Presidency simply because some plaintiff later

argues that the swearing-in is "unlawful" in conjunction with the President's otherwise lawful business activities.

Plaintiff attempts to sidestep this significant problem by denying that its claim rests on the President's assumption of office and by diverting attention to straw men. These efforts fail.

First, there is no merit in Plaintiff's efforts to backdate the alleged unfair competition to the President's "pre-Presidential inaction." Opp'n 5. While legal liability sometimes arises from a pure omission—failure to register with the Selective Service is one example, *see* 50 U.S.C. §§ 3802(a), 3811(a)—Plaintiff seeks to impose liability for admittedly lawful activity that supposedly becomes unlawful upon, and because of, the President's swearing-in and becoming President. Plaintiff acknowledges that the President was not engaged in unfair competition before the Inauguration. Am. Compl. ¶ 31; *see also* Opp'n 5. Plaintiff's claim thus targets a combination of action and inaction, akin to driving an automobile without having first obtained a license. To be sure, such misconduct can be described in terms of wrongful inaction—*i.e.*, the driver's failure to obtain a license before operating the vehicle—but it is the action, driving the car, that is essential to liability. One need not obtain a license if one never drives, and here there would be no unfair competition, Plaintiff admits, if he were not President. *See* Am. Compl. ¶¶ 31, 42; Opp'n 6, 11. It is the necessary action here—the swearing-in and assuming the duties and responsibilities of the Office of the Presidency—rather than any inaction, that President Trump invokes in support of his immunity defense. *See* Trump Mem. 6-7.

Plaintiff also attempts to avoid immunity by insisting that its theory of liability is not limited to the President, but would also apply to other elected officials. Opp'n 9-10. That makes no difference under the absolute immunity doctrine. The Court recognized immunity in *Fitzgerald* even though the plaintiff there asserted liability under the First Amendment, which

applies to all governmental actors, as well as under other "federal laws of general applicability." 457 U.S. at 740, 748 & nn. 20, 27.  What matters for presidential immunity purposes is not how many officials are purportedly subject to liability, but whether the President is subject to liability for the exercise of his presidential responsibilities, as would be the case here if Plaintiff's claim were to survive.

Plaintiff also advances inapposite hypotheticals and mischaracterizations of the President's arguments.  Given Plaintiff's own admission that President Trump's specific conduct while President has no bearing on the success of Plaintiff's claim, it is curious that Plaintiff spills so much ink addressing whether potential post-Inaugural acts would fall within his official responsibilities.  *See* Opp'n 7-9.  Plaintiff's own concession that this case is not about any particular post-Inaugural acts makes the whole discussion academic, because as demonstrated above the act of assuming office readily falls within the presidential perimeter.[1]

Nor, contrary to Plaintiff's caricature, does the President argue here that "everything he has done, or will do, starting at noon on January 20, 2017, creates an absolute immunity."  Opp'n 6.  Nor does he advance a theory of immunity based on "post-Inaugural inaction."  *Id.*  Again, the President simply observes that an element of Plaintiff's claim is the President's assumption of office, and that absolute presidential immunity forecloses liability based on that presidential act and his presidential status.  The examples Plaintiff recounts—such as failing to honor existing financial obligations—do not share that element.  *See id.* at 7, 9-11.  In the cases imagined by Plaintiff, liability does not depend as a *legal* matter on whether the defendant holds elected office, even if, as with a homestead exemption to real estate tax liability, *id.* at 10, the

---

[1] Plaintiff's discussion of the President's pre-Inaugural commitment to relinquish management authority over his investments and business assets would be irrelevant even without Plaintiff's concession.  *See* Opp'n 7-8.  President Trump said nothing about which of his post-Inaugural actions should be classified as acts "in his personal and not official capacity."  *Id.* at 8.

defendant's official position has a *factual* connection to the actions that would have been unlawful independent of the defendant's official status. Here, by contrast, liability does depend, legally, on the President's assumption of office, and so the doctrine of presidential immunity bars Plaintiff's claim.

> **B.      Plaintiff's Claim Is Preempted by the Supremacy Clause of the United States Constitution.**

Independent of absolute presidential immunity, the Supremacy Clause presents a second basis for dismissal. The President's opening memorandum explained why Plaintiff's claim is foreclosed by the Supreme Court's holding in *Johnson v. Maryland*, 254 U.S. 51 (1920), which Plaintiff studiously avoids in its opposition. Like the Plaintiff here, Maryland unsuccessfully tried to defend states' power to impose obligations on a federal official "before [he] perform[ed] his official duty in obedience to superior command." *Id.* at 55; *cf.* Opp'n 6 (seeking to impose liability based on the President's "failure to divest . . . before he was sworn in" (emphasis omitted)). But the Court held that States may not "require[] qualifications" for an official federal position "in addition to those that the [federal] Government has pronounced sufficient." *Johnson*, 254 U.S. at 57.

The same reasoning forecloses Plaintiff's attempted use of D.C. unfair competition law. Plaintiff wants that law to establish that a person must divest certain ownership interests in for-profit businesses in order to become a federal official. If the person fails to do that, Plaintiff contends, his or her assumption of federal office contravenes D.C. law. That is why, according to Plaintiff's own Amended Complaint, the President supposedly should have to decide whether to resign the Presidency or sell or shutter the Hotel. Am. Compl. ¶ 42.

Here again, Plaintiff's assurance that D.C. tort law regulates both D.C. and federal officials is immaterial. In *Johnson*, the qualification that Maryland sought to impose was a

simple requirement that postal employees obtain a driver's license before performing their official duties, presumably no different than the requirements for all drivers in the state.  254 U.S. at 55.  In *Sperry v. Florida ex rel. Fla. Bar*, 373 U.S. 379 (1963), the law that was held preempted as applied to a U.S. Patent Office practitioner was a general prohibition on the unauthorized practice of law.  *Id.* at 381, 404.  Another Supreme Court case in this vein prohibited a state's effort to apply to a federal contractor a license requirement that applied to all contractors operating within the state.  *Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187, 188 (1956) (per curiam).  So whatever the District's conclusions about its own officials' business holdings, it lacks the power to enforce similar restrictions as a condition for executing a federal office.

There is no legal authority for what Plaintiff seeks to do, and certainly none in *Jefferson County v. Acker*, 527 U.S. 423 (1999), the lone case that Plaintiff mentions on this topic.  Opp'n 10.  That case reaffirmed the basic holding of *Johnson*, that a state "cannot make it unlawful to carry out the duties of a federal office without local permission," but concluded that the law at issue did not do so.  527 U.S. at 440-41.  The law in *Acker* was "a license or privilege tax on persons engaged in *any vocation, occupation, calling or profession* in [the] County" not already paying a license or privilege tax to the County or state of Alabama.  *Id.* at 428 (emphasis added).  It included all elected and appointed officers, including federal ones and the defendant federal judges.  *Id.* at 428-29.  By this time, Congress had specifically authorized state and local taxes on federal employee salaries so long as they did not discriminatorily exact more from federal employees than others.  *Id.* at 436.  The state tax at issue, though denominated a "license tax," fit within that authorization from Congress because it "serve[d] a revenue-raising, not a regulatory, purpose" and did not "in any way regulate[] [the judges] in the performance of their duties."  *Id.* at 440.  In fact, the state's method of enforcement was simply a "collection suit" to obligate the

federal judge defendants to pay the tax owed. *Id.* They were not put to the choice of complying with state obligations or resigning.

Here, by contrast, Plaintiff seeks to use D.C. law to enforce a legal requirement for the Presidency that, at most, only applies to those who hold elected office. There is no revenue-raising purpose or congressional authorization for such a law, and Plaintiff's method of enforcement is not a request for monetary relief but a request for an injunction forcing the President to rearrange his investments to the satisfaction of supposed District law or step down from office. Am. Compl. ¶ 42. *Acker*, *Johnson*, and still other cases preclude regulating federal officers in this way.

Ignoring the lessons from such cases, Plaintiff focuses its efforts on distinguishing *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995). While it is true, of course, that Plaintiff here unlike the state there is not seeking to prospectively restrict placing a federal candidate's name on a ballot, Plaintiff gets the significance of this difference backwards. Under the Constitution, states have the express power to regulate the "Times, Places and Manner of holding Elections" for Congress. U.S. Const. art. I, § 4, cl. 1. Defenders of the state law in *U.S. Term Limits* argued that this express constitutional authority and related case law *supported* limiting incumbents' ballot access. 514 U.S. at 828-29. The Court nonetheless rejected this argument as an "effort to dress eligibility to stand for Congress in ballot access clothing." *Id.* at 829 (citation omitted). The important point was that states could not "handicap[] a class of candidates" by adding to the Constitution's enumerated qualifications for holding congressional office. *Id.* at 831. Neither may the District add to the qualifications for holding presidential office by imposing restrictions on certain candidates' investment holdings.

## II.      The Complaint Fails to State a Claim Under D.C. Law.

Beyond the President's two federal defenses, Plaintiff's Complaint also should be dismissed as a matter of D.C. law.  Plaintiff does not seriously dispute that, under *existing* D.C. law, unfair competition is restricted to a limited set of wrongful acts.  Plaintiff agrees that "[u]nfair competition is . . . defined . . . by various acts that would constitute the tort if they resulted in damages."  Opp'n 17 (emphasis omitted) (quoting *Hanley-Wood LLC v. Hanley Wood LLC*, 783 F. Supp. 2d 147, 153 (D.D.C. 2011)).  That proposition comes from *B & W Management, Inc. v. Tasea Investment Co.*, 451 A.2d 879, 881 n.3 (D.C. 1982), the most recent substantive discussion of D.C.'s common law of unfair competition by the D.C. Court of Appeals.  Plaintiff's claim fails because its allegations here do not amount to any of the specified acts identified as unfair competition under D.C. law as articulated by *B & W Management*.

The only specified act that Plaintiff invokes is "interference with access to business," Opp'n 17, but Plaintiff fundamentally misunderstands what that means.  In *B & W Management*, the D.C. Court of Appeals identified "interference with access to the business" and eight other actions as "unfair competition at common law" based on William Prosser's torts hornbook.  451 A.2d at 881 n.3 (citing W. Prosser, *Handbook of the Law of Torts* § 130, at 956-57 (4th ed. 1971)).  Although the D.C. Court of Appeals used a shorthand description, the book explains that the relevant category consists of "*obstruction of the means of access* to [the plaintiff's] place of business."  Prosser, *supra*, at 956 (emphasis added).  The two cases cited in the treatise as exemplars involved physically interfering with potential customers' efforts to enter the claimant's shop, *Gilly v. Hirsh*, 48 So. 422, 424 (La. 1909), and blocking potential customers' ability to see into the claimant's business through a show window, *Brown-Brand Realty Co. v. Saks & Co.*, 214 N.Y.S. 230, 231-32 (N.Y. Sup. Ct. 1925), *aff'd*, 218 N.Y.S. 706 (N.Y. App.

Div. 1926).[2]  Plaintiff makes no allegations that Defendants have positively restricted anyone's ability to patronize Plaintiff's establishment, and cites no authority for the proposition that the challenge here—namely, that holding elected office is "unfair"—has ever been construed as the kind of "interference with access to the business" that the D.C. Court of Appeals has recognized.

And if Plaintiff were right that "interference with access" could be established whenever the defendant is alleged to have "unfairly compet[ed] for customers in the relevant marketplace," Opp'n 17, unfair competition would no longer be the "'limited' tort" that it is "given our society's encouragement of 'aggressive economic competition.'"  *Econ. Research Servs., Inc. v. Resolution Econ., LLC*, 208 F. Supp. 3d 219, 231 (D.D.C. 2016) (Leon, J.) (quoting *Ray v. Proxmire*, 581 F.2d 998, 1002 (D.C. Cir. 1978)).  Those who lose customers to competitors may often think that the rival acted unfairly, but that is not enough to state a legal claim.  Nor do any of Plaintiff's cited authorities support that expansive conception of D.C. unfair competition law. *See Hanley-Wood*, 783 F. Supp. 2d at 153 (entering default judgment against defendants who did not participate in the litigation based on unspecified allegations of interference with the plaintiff's business); *Furash & Co. v. McClave*, 130 F. Supp. 2d 48, 57 (D.D.C. 2001) (denying summary judgment to one defendant based on allegations that supported "claims for breach of fiduciary duty and interference with contract"); *Bus. Equip. Ctr. v. DeJure-Amsco Corp.*, 465 F. Supp. 775, 788 (D.D.C. 1978) (rejecting unfair competition claim); *Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*, 13 F. Supp. 3d 62, 70-71 (D.D.C. 2014) (same); *Econ. Research*

---

[2] The newest edition of the hornbook adopts the same position as the Fourth Edition cited in *B & W Management*.  *See* W. Page Keeton, *Prosser & Keeton on the Law of Torts* § 130, at 1014-15 & n.96 (5th ed. 1984).  In addition to *Gilly* and *Brown-Brand Realty*, the Fifth Edition cites *Shamhart v. Morrison Cafeteria Co.*, in which the defendant's customers often formed lines outside of the plaintiff's store, "frequently result[ing] in most of the entrances to [the] store being virtually closed to its customers."  32 So. 2d 727, 727 (Fla. 1947).

*Servs.*, 208 F. Supp. 3d at 231 (same); *Camarda v. Certified Fin. Planner Bd. of Standards, Inc.*, 672 F. App'x 28, 30 (D.C. Cir. 2016) (per curiam) (same).

At bottom, Plaintiff seeks not the application of existing D.C. unfair competition law, but its expansion. That is why much of Plaintiff's argument cobbles together out-of-context snippets from two Restatements, a Maryland case that affirmed dismissal of an unfair competition claim, and a century-old Supreme Court case developing the common law of intellectual property. *See* Opp'n 18-19 (discussing *Grempler v. Multiple Listing Bureau of Harford Cty., Inc.*, 266 A.2d 1, 4 (Md. 1970), and *Int'l News Serv. v. Associated Press*, 248 U.S. 215, 236 (1918)). But federal courts no longer have the power to engage in common-law lawmaking as the Court in *International News Service* did—especially not for the purpose of "expanding the scope of [a] tort under District of Columbia law." *Pitt v. Dist. of Columbia*, 491 F.3d 494, 507 (D.C. Cir. 2007). Today, "in considering common law claims, federal courts must apply existing law [and] have no power to alter or expand the scope of D.C. tort law." *Id.*[3]

Even if it were otherwise, Plaintiff's particular attempt to expand existing doctrine is blocked. Plaintiff claims that "it is hard to imagine a competitive advantage that is less fair than permitting a business to market access to, or the opportunity to please, the President and other elected officials—at the expense of area hotels and restaurants with no such political connections." Opp'n 16. But in *Ray v. Proxmire*, 581 F.2d 998, the D.C. Circuit rejected an

---

[3] Plaintiff's reliance on the Restatements is misplaced in any event. No version of the Restatements remotely supports liability on the facts alleged in this case. The Restatement (First) of Torts, §§ 711-61 (1938), discusses liability for passing off, misappropriation of trade secrets, and false advertising. The Restatement (Second) of Torts, div. 9, intro. note (1979), removed any discussion of unfair competition. And the Restatement (Third) of Unfair Competition, § 1 cmt. g (1995), made a point of clarifying that broad judicial formulations of the doctrine are misleading because the case law "is *far more circumscribed* than such rhetoric might indicate, and courts have generally been reluctant to interfere in the competitive process." (emphasis added).

attempt to base an unfair competition claim on the same conception of what is and is not fair. Much like Plaintiff here, the plaintiff in *Proxmire* argued that a U.S. Senator's wife was engaged in unfair competition under D.C. law because the business she owned derived a competitive advantage, which plaintiff "could not match," from her fame, political connections, "and ability to 'open doors.'" *Id.* at 1003. The court held that none of that amounted to a legally cognizable wrong. *Id.* In its opposition, Plaintiff now claims that "it is unclear . . . what constituted the 'unfairness' that the [*Proxmire*] plaintiff claimed violated the District's law on unfair competition." Opp'n 24-25. If that was true there, it is also true here. The *Proxmire* plaintiff complained of the same "confluence of ownership and the promise of influence with elected officials," to borrow Plaintiff's phrasing, Opp'n 17, that Plaintiff alleges now.

Because *Proxmire* rejects Plaintiff's theory of unfair competition, Plaintiff is forced to try to discredit *Proxmire*'s status as precedent. Opp'n 24. But as the President contended in his motion to dismiss, Trump Mem. 12 n.6, the D.C. Circuit's interpretations of D.C. law remain binding on this Court unless a more recent D.C. Court of Appeals decision "clearly and unmistakably renders inaccurate [the] prior decision by the D.C. Circuit." *Easaw v. Newport*, 253 F. Supp. 3d 22, 35 (D.D.C. 2017); *see also, e.g.*, *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003). Plaintiff does not dispute this contention, nor does it identify any subsequent D.C. case law that undermines *Proxmire* on the relevant point. The only intervening authority is *B & W Management*, 451 A.2d at 881 n.3, and, far from expanding the tort of unfair competition beyond what *Proxmire* recognized, that case confirms that the tort is limited to a discrete set of wrongful acts not alleged in this case. *See supra* pp. 9-11. And even if the D.C. Court of Appeals took up the issue today, it would start from the premise that *Proxmire*, like other D.C. Circuit decisions, is "entitled to great respect" even though it is not technically

12

binding on the D.C. Court of Appeals.  *United States v. Rothmeier*, 570 A.2d 811, 813 (D.C. 1990) (citation omitted).

Meanwhile, Plaintiff's central unfair competition authority, *Better Gov't Bureau, Inc. v. McGraw*, 904 F. Supp. 540 (S.D. W. Va. 1995), involves neither D.C. law nor facts remotely similar to this case.  The plaintiff there was a "watchdog" association of businesses, and it alleged that government officials were retaliating against it because of its scrutiny of their official activities.  *Id.* at 543-46.   The court did not analyze the basis of the plaintiff's unfair competition claims in much detail—evidently because defendants had "abandoned" their challenge to the substance of those claims in order to focus on official immunity arguments.  *Id.* at 546 n.6.  But the decision nevertheless reveals that the unfair competition claims, unlike Plaintiff's, were not based on any suggestion that the defendants' political office gave them an improper advantage competing for customers.   Instead, the defendants allegedly used their political offices not to compete with the plaintiff but to prevent it from registering with the state to do business under its existing corporate name; they also successfully intimidated plaintiff's members into resigning their memberships.  *Id.* at 545-46.  Such conduct could potentially amount to one of the recognized species of unfair competition under *B & W Management*, 451 A.2d at 881 n.3, and bears no resemblance to the conduct alleged in this case.

Plaintiff's last line of defense is to argue that *Proxmire* and the other cases casting doubt on Plaintiff's position are distinguishable because of the contract between the OPO and GSA. Despite Plaintiff's apparent recognition that it, a stranger to the contract, cannot premise an unfair competition claim on the contract's alleged breach, *see* Opp'n 2, 21; *cf.* Trump Mem. 12-13, it is hard to construe Plaintiff's argument any other way.  Plaintiff cites no support for the idea that courts should look to specific contracts to divine general principles of fairness for unfair

competition law, and the President knows of none.  Sometimes public policy controls the content of bilateral contracts, but bilateral contracts do not control the content of public policy.  Nor is there anything special about this contract, since the GSA has no jurisdiction over standards of competitive fairness under District law.  Besides, contrary to Plaintiff's speculation, Section 37.19 does not even address supposed unfairness to competitors.  By its terms, it is limited to a single federally owned property and has no broad implications for businesses owned by federal officials, many of which may lease or own private property.  *See* Am. Compl. ¶ 10.  Given these limitations, it cannot plausibly be read, as Plaintiff tries to read it, as expressing a grand general view about when competition from businesses owned by public officials is tortiously unfair to others.

Besides, here *both* contracting parties agree that the contract has not been breached.  Trump Mem. 13.  Insofar as Plaintiff attempts to convert those parties into the arbiters of what qualifies as unfair competition in the District, then it likewise would be bound by those parties' shared view that the President has not violated the relevant standard.  And even if Plaintiff could make some use of the lease *and* could survive *Proxmire*'s rejection of Plaintiff's specific theory of unfair competition, *B & W Management* still would require dismissal because Plaintiff does not allege any conduct recognized as unfair competition under D.C. law.  451 A.2d at 881 n.3; *see also Econ. Research Servs.*, 208 F. Supp. 3d at 231; *Camarda*, 672 F. App'x at 30.

## III.    There Is No Merit in Plaintiff's Attempt to Relitigate Removal.

Although the Court denied Plaintiff's motion to remand on January 2, 2018, Plaintiff still wants to litigate the propriety of removal.  *See* Opp'n 3, 11-12.  Its arguments rest on multiple mistakes.

*First*, it is irrelevant to the propriety of removal that Plaintiff has amended its original complaint to remove certain allegations—ostensibly because it thought they supported the

President's immunity defense—and that the President's pending motion accordingly does not address the removed allegations.  *See, e.g.*, *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 265 (5th Cir. 1995) ("[R]emoval jurisdiction should be determined on the basis of the state court complaint at the time of removal, and . . . a plaintiff cannot defeat removal by amending it."); *Jamison v. Wiley*, 14 F.3d 222, 239 (4th Cir. 1994) ("[T]he jurisdiction of the federal courts over a properly removed action will not be defeated by later developments in the suit." (citation omitted)).

*Second*, it is wrong to suggest that the President's preemption argument was absent from his earlier filings, even assuming that would matter if true.  Opp'n 12.  The President has consistently made this argument throughout this case:  in the notice of removal, Dkt. 1, at ¶ 21; in his first motion to dismiss, Dkt. 8, at 7-9; and in his opposition to remand, Dkt. 17, at 9-11.

*Third*, the federal defense of preemption can support removal under the federal officer removal statute, 28 U.S.C. § 1442.  True, the well-pleaded complaint rule prohibits removal under *§ 1441* in reliance on any federal defense, including preemption.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-93 & n.5 (1987) (addressing removal under § 1441, *not* § 1442).  But the officer-removal statute operates differently, as *Acker* and many other cases explain.  527 U.S. at 430-31.  In fact, *Acker* itself upheld removal on the same basic preemption defense that the President has asserted here.  *See id.* at 432.  And for reasons discussed at length in the President's opposition to remand, the President's defense is an even stronger basis for removal than its counterpart in *Acker*.  *See* Dkt. 17, at 9-13.

## CONCLUSION

The Complaint should be dismissed with prejudice.

Dated: March 19, 2018

Respectfully submitted,

/s/ Jason R. Scherr

Eric W. Sitarchuk
MORGAN LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
T. 215.963.5000
eric.sitarchuk@morganlewis.com

Allyson N. Ho (DC Bar No. 477589)
MORGAN LEWIS & BOCKIUS LLP
1717 Main Street, Suite 3200
Dallas, TX 75201
T. 214.466.4000
allyson.ho@morganlewis.com

Fred F. Fielding (DC Bar No. 99296)
Jason R. Scherr (DC Bar No. 466645)
Michael E. Kenneally (DC Bar No. 1025767)
MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T. 202.739.3000
fred.fielding@morganlewis.com
jr.scherr@morganlewis.com
michael.kenneally@morganlewis.com

**Counsel for Defendant Donald J. Trump**

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on this 19th day of March, 2018, copies of the foregoing Reply Memorandum in Further Support of Defendant Donald J. Trump's Motion to Dismiss was served on counsel of record through this Court's ECF filing system.


/s/ Jason R. Scherr_____
Jason R. Scherr