## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **K&D, LLC t/a CORK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Case No. 17-731 (RJL)** |
| | ) | |
| **TRUMP OLD POST OFFICE, LLC,** | ) | |
| | ) | |
| **and** | ) | **FILED** |
| | ) | |
| **DONALD J. TRUMP,** *individually, and* | ) | **NOV 2 6 2018** |
| *in his personal capacity,* | ) | Clerk, U.S. District & Bankruptcy |
| | ) | Courts for the District of Columbia |
| **Defendants.** | ) | |

## MEMORANDUM OPINION
(November **24**, 2018) [Dkt. ## 31, 32]

Plaintiff K&D, LLC is the owner and operator of Cork Wine Bar (hereinafter, "plaintiff" or "Cork"), a restaurant and bar located in the downtown Washington, D.C. area. Am. Compl. 2 [Dkt. # 30]. On March 9, 2017, Cork brought this action against defendants Trump Old Post Office, LLC ("OPO") and President Donald J. Trump ("President Trump" or "the President"), alleging that defendants are liable in tort for unfair competition under D.C. common law and seeking injunctive relief. *Id.* at ¶¶ 30–42; *see* D.C. Sup. Ct. Compl. 11 [Dkt. # 1-1].[1] OPO, which is owned by a revocable trust that acts

---

[1] Cork filed suit initially in D.C. Superior Court, but defendants timely removed the action to federal court, *see* Notices of Removal [Dkt. ## 1, 4], and on January 2, 2018, I denied Cork's motion to remand. I allowed Cork to file an amended complaint, which it did on February 12, 2018.

for the sole benefit of President Trump, operates a hotel and restaurants under the name Trump International Hotel ("Hotel").  Am. Compl. ¶¶ 2, 5, 12–13.  The Hotel is located within the historic Old Post Office Pavilion at 1100 Pennsylvania Avenue, N.W., which OPO leases from the General Services Administration ("GSA").  *Id* at ¶¶ 7–8.

Pending before the Court are OPO's and the President's motions to dismiss.  *See* Def. Trump Old Post Office LLC's Mot. to Dismiss and Stmt. of Points and Authorities in Support ("OPO Mot. to Dismiss") [Dkt. ## 31, 31-1]; Def. Donald J. Trump's Mot. to Dismiss ("Pres. Trump Mot. to Dismiss") [Dkt. # 32].  Upon consideration of the pleadings and the relevant law, and for the reasons stated below, defendants' motions to dismiss are **GRANTED** and this case is **DISMISSED**.

## BACKGROUND

The crux of Cork's complaint is that since President Trump took office on January 20, 2017, Cork has been damaged by unfair competition resulting from the President's ownership, through OPO, of the Hotel.  Cork alleges that it "competes with the restaurants in the Hotel by providing the same or similar services that are provided by them in the same marketplace."  Am. Compl. ¶ 32.  Specifically, Cork asserts that a large portion of its business involves hosting and catering "receptions and dinners for large groups of lobbyists, as well as for political fundraisers and conventions" attended by individuals and organizations who have business before and/or seek to influence federal officials and United States policy.  *Id.* at ¶ 4, 19, 24–28.

Since the President's election, Cork claims, "many organizations and individuals, including citizens of nations other than the United States, [have] substantially increased

2

their use of the Hotel and its various facilities to the detriment of Cork." *Id.* at ¶ 17. Cork attributes this upswing to an intentional effort by the Hotel, President Trump, and Trump family members and associates "to promote the Hotel to maximize its exposure and income-producing potential." *Id.* at ¶ 20. The Amended Complaint provides several examples of these so-called "promotional activities," including the use of "Trump" name branding as well as former White House Press Secretary Sean Spicer's televised encouragement to visit the Hotel, which he described as "absolutely stunning." *Id.* at ¶ 20(a)–(b). Cork also references press reports documenting the Hotel's patronage by foreign diplomats and lobbyists, purportedly demonstrating the Hotel's unfair advantage. *Id.* at ¶¶ 21–23.

In addition, Cork emphasizes Section 37.19 of OPO's lease with the GSA, which prohibits any elected United States or D.C. official from being "admitted to any share or part of this Lease, or to any benefit that may arise therefrom," unless the official is "a shareholder or other beneficial owner of any publicly held corporation or other entity, if this Lease is for the general benefit of such" entity. *Id.* at ¶ 10. According to Cork, President Trump's beneficial ownership of the Hotel through OPO violates Section 37.19, placing OPO in default. *Id.* at ¶¶ 35, 38. The parties dispute the importance of this alleged breach; defendants contend that it is fundamental to Cork's unfair competition claim, *see* OPO Mot. to Dismiss 9–13; Pres. Trump Mot. to Dismiss 12–13, while Cork describes it as an ancillary illustration of D.C.'s "understanding of fair competition norms," *see* Pl.'s Mem. of Points and Authorities in Opp'n to February 2018 Mots. of Defs. to Dismiss ("Pl.'s Opp'n") 24 [Dkt. # 34]. In either case, after President Trump took office, the GSA

determined that his assumption of the Presidency does *not* constitute a breach of Section 37.19 and that OPO remains in compliance with the lease. *See* OPO Mot. to Dismiss 4–5.

On February 26, 2018, defendants moved to dismiss Cork's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). Defendants contend that Cork has failed to state an unfair competition claim under D.C. common law because: (1) the allegedly tortious conduct does not constitute an "unlawful act" under D.C.'s narrow unfair competition law; (2) our Circuit Court precedent forecloses unfair competition claims predicated on the competitive advantage derived from a public figure's prominence; and (3) Cork cannot sue in tort to enforce a contract (the GSA lease) to which it is not a party. OPO Mot. to Dismiss 7–15; Pres. Trump Mot. to Dismiss 9–14. President Trump's defense rests on the additional federal law grounds that, as President, he is entitled to absolute immunity from Cork's lawsuit, and that Cork's claim is preempted under the Constitution's Supremacy Clause, which precludes D.C. from directly regulating federal officials. Pres. Trump Mot. to Dismiss 4–9. Cork opposed defendants' motions to dismiss on March 12, 2018, *see* [Dkt. # 34], and OPO and the President filed their reply briefs on March 19, 2018, *see* [Dkt. ## 35–36]. On September 25, 2018, the parties presented their oral argument on the motions to dismiss.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "does not need detailed factual allegations," but it does

need "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations and internal quotations marks omitted). A facially plausible claim requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The Court assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor[.]" *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014). The Court "need not, however, accept inferences drawn by a plaintiff if such inferences are unsupported by the facts set out in the complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016) (per curiam) (alterations and internal quotation marks omitted). Nor must it "accept legal conclusions couched as factual allegations." *Id.* (citing *Iqbal*, 556 U.S. at 678). In deciding a Rule 12(b)(6) motion to dismiss, the Court may consider not only the factual allegations in the complaint, but also any "documents attached to or incorporated in the complaint, matters of which courts may take judicial notice, and documents appended to a motion to dismiss whose authenticity is not disputed, if they are referred to in the complaint and integral to a claim." *Harris v. Amalgamated Transit Union Local 689*, 825 F.Supp.2d 82, 85 (D.D.C. 2011).

## ANALYSIS

While appearing at first blush to be just another unfair competition action, there are constitutional questions of profound weight and import lurking within the contours of this case. Fortunately, however, the pending motions can be resolved without opening that Pandora's box of novel issues. Thus, for the reasons set forth below, I have concluded on

the merits that Cork has failed to state a claim of unfair competition under D.C. law and

that defendants OPO's and President Trump's motions to dismiss must be **GRANTED**.[2]

## I.     Unfair Competition

Reflecting "our society's encouragement of 'aggressive economic competition,'"

the tort of unfair competition is actionable at D.C. common law only in "limited"

circumstances. *Econ. Research Servs., Inc. v. Resolution Econs., LLC*, 208 F.Supp.3d 219,

231 (2016) (quoting *Ray v. Proxmire*, 581 F.2d 998, 1002 (D.C. Cir. 1978)); *see also*

*Scanwell Labs., Inc. v. Thomas*, 521 F.2d 941, 949 (D.C. Cir. 1975) (tort of unfair

competition must be "limited in scope in a free market economy based on free and open

competition for business").   The law does not enumerate "specific elements" which, if

established, make out a cause of action for unfair competition. *Camarda v. Certified Fin.*

*Planner Bd. of Standards, Inc.*, 672 Fed.Appx. 28, 30 (Mem) (D.C. Cir. 2016) (quoting

*Furash & Co., Inc. v. McClave*, 130 F.Supp.2d 48, 57 (D.D.C. 2001)).   Instead, the claim

is defined "by the description of various acts that would constitute the tort if they resulted

in damage." *Id.*  These acts include "defamation, disparagement of a competitor's goods

---

[2] I therefore need not reach the federal immunity and preemption defenses that
President Trump raises in his motion to dismiss.  I note, however, that during the oral
argument the parties agreed that neither absolute presidential immunity nor federal
preemption are threshold issues that *must* be decided before reaching the merits. *See, e.g.*,
*In re Sealed Case No. 99-3091*, 192 F.3d 995, 1000 (D.C. Cir. 1999) (issue of first
impression need not be decided when "there is another ground upon which [the court] can
dispose of th[e] case that does not raise constitutional concerns"); *United States ex rel.*
*Long v. SCS Bus. & Tech. Inst., Inc.*, 173 F.3d 890, 894 (D.C. Cir. 1999) ("a less than pure
jurisdictional question need not be decided before a merits question"); *Horne v. Coughlin*,
191 F.3d 244, 246 (2d Cir. 1999) ("[T]he Supreme Court has for generations warned
against reaching out to adjudicate constitutional matters unnecessarily.").

or business methods, intimidation of customers or employees, interference with access to the business, threats of groundless suits, commercial bribery, inducing employees to sabotage, [and] false advertising or deceptive packaging likely to mislead customers into believing goods are those of a competitor.'" *B & W Mgmt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879, 881 n.3 (D.C. 1982) (citing William Prosser, Handbook of the Law of Torts 956–57 (4th ed. 1971)).

The Amended Complaint, as defendants amply point out in their papers, does not identify any of the foregoing wrongful acts. Instead, Cork alleges that "it has been damaged by the unfair *advantage* that the Hotel has exploited because of its ownership by President Trump." Am. Compl. ¶ 31 (emphasis added). According to Cork, when the President took office, it and the Hotel ceased to compete "on a level playing field" due to President Trump's elevated official profile, an imbalance exacerbated by the deliberate efforts of White House personnel and others to promote and market the Hotel in order "to maximize its exposure and income-producing potential." *Id.* at ¶¶ 20, 33. After defendants moved to dismiss, however, Cork apparently recognized that while it may view President Trump's "failure to divest his ownership interest in the Hotel" as the "heart" of its complaint, it had to identify "a sufficiently discrete course of [wrongful] conduct" to support its theory of legal liability. Pl.'s Opp'n 16–17. To that end, Cork now emphasizes the Amended Complaint's passing characterization of defendants' alleged wrongdoing as "interfer[ence] with Cork's access to business." *Id.* at 17, 20 (citing Am. Compl. ¶ 33, which, in fact, alleges only that President Trump's ownership of the Hotel while President has "impair[ed]" Cork's "ability to compete with the Hotel"). Neither the allegations in

the Amended Complaint, nor the quasi-revisionist gloss placed on them in Cork's briefing, are sufficient, however, to state a claim for unfair competition. How so?

While there is no question that "interference with access to the business" is conduct that may support an unfair competition claim under D.C. law, *see B & W Mgmt., Inc.*, 451 A.2d at 881 n.3, "interference" in this context does not simply mean conduct that redounds to the detriment of the business of another; it means to interpose and hinder or impede one's access to business in a manner that is tortious. *See* Pl.'s Opp'n 17–18 ("a party may state a viable claim for unfair competition by alleging *tortious* interference with advantageous business relations" (emphasis added)); *Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 935 F. Supp.2d 101, 120 (D.D.C. 2013) (same). Here, Cork does not allege that defendants interfered with or hindered its business in a tortious or otherwise independently wrongful way. Cork does not, for example, accuse OPO or President Trump of acting to dissuade potential customers from patronizing Cork or somehow obstructing entry to Cork's location. *See* Complaint ¶¶ 70–78, *Hanley-Wood LLC v. Hanley Wood LLC*, 783 F. Supp. 2d 147, 153 (D.D.C. 2011) (1:10-cv-01167-JEB) (unfair competition claim stated where plaintiff alleged, *inter alia*, that defendant disparaged plaintiff's business methods to third parties and intimidated plaintiff's employees and business partners); Prosser, Handbook of the Law of Torts, at 956 ("interference with access to the business" means "obstruct[ing] . . . the means of access to the place of business").

Instead, Cork's complaint, at its core, is that defendants are acting to realize and maximize the competitive advantage and financial benefits available to them as a result of President Trump's heightened notoriety since taking office. To Cork, these efforts are

8

distasteful and unseemly, if not unethical.  Indeed, they may even have cost Cork some money (although causation is far from clear on the face of the Amended Complaint).  But even if Cork's offense is well taken, its objection is not to a legally redressable wrong.  Its objection is to "the process known as competition, which though painful, fierce, frequently ruthless, sometimes Darwinian in its pitilessness, is the cornerstone of our highly successful economic system." *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862, 865 (7th Cir. 1999).

Unfortunately for Cork, "[c]ompetition is not a tort." *Id.*  Nor should it be.  To hold actionable Cork's allegations in this case, I would be condemning a broad swath of legitimate business conduct.  *See Econ. Research Servs.*, 208 F.Supp.3d at 231 (the presence of "legitimate business motives" relieves a defendant of unfair competition liability for "engaging in activities designed solely to destroy a rival").  I would be foreclosing all manner of prominent people—from pop singers to celebrity chefs to professional athletes—from taking equity in the companies they promote.[3]  Indeed, I would be reading the "unfair" right out of "unfair competition."  This I cannot do!

Moreover, even if I were inclined in Cork's favor, I would still be bound by our Circuit Court's decision in *Ray v. Proxmire*, 581 F.2d 998 (D.C. Cir. 1978).  In that case, Ray alleged, *inter alia*, that Proxmire's tour and hospitality service unfairly competed with Ray's similar business by trading on the prestige and contacts that Proxmire had as the wife

---

[3] *See, e.g.*, The Telegraph, *Superstars don't just endorse a brand . . . now they want to own the business too*, July 9, 2016, *available at* https://www.telegraph.co.uk/business/2016/07/09/superstars-dont-just-endorse-a-brand-now-they-want-to-own-the-bu/.

of the very senior sitting United States Senator from Wisconsin: William Proxmire. *Id.* at 1002–03.   Ray claimed that Proxmire secured customers by using her influence and prominence to provide tourists with access and opportunities—"special tours" to "places normally inaccessible to other groups" like the vice-presidential mansion and Senate office buildings—that Ray's company simply could not offer. *Id.*   The district court dismissed Ray's unfair competition claim with prejudice, and our Circuit Court affirmed.   In our Circuit Court's view, Ray's claim ran headlong into "the insuperable difficulty . . . that simple use of one's status in society is not itself illegal." *Id.* at 1003.   Thus, while as a normative matter "personal gain should flow from individual ability and effort not merely from perceived rank," the judicial role "is limited to redress of legally-cognizable wrongdoing, and financial success does not become unlawful simply because it is aided by prominence; nor could it be, without locking the famous out of the economy." *Id.*   This case is no different.   "[H]owever reprehensible it might be through political influence to use public [office] for private gain, that evil cannot provide a basis for" Cork's unfair competition claim here. *Id.*

Faced with the foregoing precedential roadblocks, Cork responds that the common-law tort of unfair competition is "constantly evolving" and "has evolved considerably since" 1978, when our Circuit decided *Ray*. Pl.'s Opp'n 18, 24.   That the doctrine is "evolving" in a broad sense is not terribly illuminating, as the common law by its very nature changes over time. *See, e.g., Hamdan v. Rumsfeld*, 548 U.S. 557, 691 (2006) (Thomas, J., dissenting) ("the nature of the common law" is "by definition, evolv[ing] and develop[ing] over time"); *Al Bahlul v. United States*, 767 F.3d 1, 57 (D.C. Cir. 2014)

(Brown, J., concurring in part and dissenting in part) (describing "all common law" as "an evolving process"). To be sure, the tort of unfair competition in D.C. is somewhat unique in that it is defined not by "specific elements" but by reference to a non-exhaustive list of wrongful conduct. *See Camarda*, 672 Fed. Appx. at 30; *B & W Mgmt., Inc.*, 451 A.2d at 881 n.3. But, while the contours of D.C.'s unfair competition law may not be strictly and finally settled, it is plain that they do not extend to the allegations in the Amended Complaint. *Ray* says as much, and its reasoning is sound. Cork cites no authorities suggesting that *Ray* is no longer good law, and its attempts to distinguish *Ray* on the facts fall short. *See* Pl.'s Opp'n 24–26. "Where the District of Columbia Court of Appeals has not addressed the issue, [the Court] will not expand the scope of the tort of unfair competition recognized in existing case law." *Unidisco, Inc. v. Schattner*, 824 F.2d 965, 968–69 (Fed. Cir. 1987).

Finally, the parties spill a great deal of ink over the significance *vel non* of Section 37.19 of OPO's lease with GSA. Depending on who you ask, OPO's alleged breach of Section 37.19 is either an indispensable component of Cork's claim, *see* OPO Mot. to Dismiss 9–13; Pres. Trump Mot. to Dismiss 12–13, or a nonessential yet illustrative example of D.C.'s "understanding of fair competition norms," Pl.'s Opp'n 24. There is no need, however, to resolve this issue under these circumstances. Even assuming Cork's complaint does not turn on OPO's alleged breach of the lease, I still find that Cork has failed to state a claim for unfair competition under D.C. law.

## CONCLUSION

Thus, for all of the foregoing reasons, defendants' motions to dismiss are **GRANTED** and this case is **DISMISSED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued herewith.

RICHARD LEON
United States District Judge